Rob Bonta
Attorney General of California
Mark R. Beckington
Supervising Deputy Attorney General
Christina R.B. López
Deputy Attorney General
Carolyn Downs
Deputy Attorney General
Todd Grabarsky
Deputy Attorney General
State Bar No. 286999
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6044
  Fax:  (916) 731-2124
  E-mail:  Todd.Grabarsky@doj.ca.gov
*Attorneys for Governor Gavin Newsom and
Attorney General Rob Bonta in their official
capacities*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADAM RICHARDS, et al.,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**GAVIN NEWSOM, in his official capacity as Governor of California, et al.,**<br><br>Defendants. | Case No.: 8:23-cv-02413 JVS (KESx)<br><br>**DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND OPPOSITION TO PRELIMINARY INJUNCTION**<br><br>Date:        January 16, 2024<br>Time:        9:00 a.m.<br>Courtroom:   10C<br>Judge:       The Honorable James V. Selna<br>Action Filed: 12/19/2023 |

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................. 1

Background .................................................................................................. 2

Legal Standard ............................................................................................ 3

Argument ..................................................................................................... 4

    I.      Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims ...... 4

          A.     First Amendment Claim ................................................................ 4

               1.     Section 26806 Does Not Objectively Chill First Amendment Activity ........................................................ 4

               2.     Plaintiffs' Remaining First Amendment Arguments Fail ............................................................................................ 6

          B.     Second Amendment Claim ........................................................... 8

               1.     Section 26806 Does Not Implicate the Plain Text of the Second Amendment ........................................................ 8

                    a.     Section 26806 Is a Reasonable Regulation of Commercial Firearms Sales that Does Not Constrain Conduct Covered by the Second Amendment's Text ................................................ 8

                    b.     Plaintiffs Have Not Demonstrated that Section 26806 Objectively Chills the Exercise of Second Amendment Rights .............. 12

               2.     In the Alternative, Section 26806 Is Consistent with the History and Tradition of Regulating Commercial Firearm Sales ............................................ 13

          C.     Fourth Amendment Claim .......................................................... 16

          D.     Equal Protection Clause Claim ................................................... 19

          E.     Claim Based on the California Constitution's Right to Privacy ....................................................................................... 19

    II.     Plaintiffs Fail to Show Irreparable Harm ........................................... 21

    III.    The Balance of Equities Weighs Against an Injunction ..................... 22

Conclusion ................................................................................................. 22

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Antonyuk v. Chiumento*
 __F.4th__, 2023 WL 8518003 (2d Cir. Dec. 8, 2023) ......................................... 6

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
 729 F.3d 937 (9th Cir. 2013) .............................................................................. 3

*B&L Prods., Inc. v. Newsom*
 661 F. Supp. 3d 999 (S.D. Cal. 2023) ............................................................. 12

*Carrico v. City & Cnty. of San Francisco*
 656 F.3d 1002 (9th Cir. 2011) ............................................................................ 4

*CBS Inc. v. Block*
 42 Cal. 3d 646 (1986) ......................................................................... 6, 12, 13

*Coal. for Econ. Equity v. Wilson*
 122 F.3d 718 (9th Cir. 1997) ............................................................................ 22

*Def. Distributed v. Bonta*
 2022 WL 15524977 (C.D. Cal. Oct. 21, 2022) .................................................. 9

*District of Columbia v. Heller*
 554 U.S. 570 (2008) ............................................................................. 8, 9, 10

*Doe v. 2TheMart.com Inc.*
 140 F. Supp. 2d 1088 (W.D. Wash. 2001) ......................................................... 6

*Doe v. Bonta*
 650 F. Supp. 3d 1062 (S.D. Cal. 2023) ..................................................... 12, 13

*Doe v. Harris*
 772 F.3d 563 (9th Cir. 2014) .............................................................................. 5

*Doe v. Regents of the Univ. of Cal.*
 891 F.3d 1147 (9th Cir. 2018) .......................................................................... 20

*Donovan v. Dewey*
 452 U.S. 594 (1981) ......................................................................................... 18

ii

# TABLE OF AUTHORITIES
## (continued)

Page

*Drakes Bay Oyster Co. v. Jewell*
   747 F.3d 1073 (9th Cir. 2014)....................................................................3

*Florida v. Jardines*
   569 U.S. 1 (2013) ......................................................................................18

*Gazzola v. Hochul*
   645 F. Supp. 3d 37 (N.D.N.Y. 2022) .......................................................21

*Gazzola v. Hochul*
   88 F.4th 186 (2d Cir. 2023) ..........................................................9, 11, 12

*Granata v. Campbell*
   No. 22-1478, 2023 WL 1794480, (1st Cir. Jan. 30, 2023).......................16

*Hill v. NCAA*
   7 Cal.4th 1 (1994).....................................................................................20

*Humanitarian L. Project v. U.S. Treasury Dep't*
   578 F.3d 1133 (9th Cir. 2009) ...................................................................4

*Interpipe Contracting, Inc. v. Becerra*
   898 F.3d 879 (9th Cir. 2018) .....................................................................4

*Katz v. United States*
   389 U.S. 347 (1967) .................................................................................16

*Laird v. Tatum*
   408 U.S. 1 (1972) .......................................................................................5

*Legi-Tech, Inc. v. Keiper*
   601 F. Supp. 371 (N.D.N.Y. 1984) ...........................................................4

*Maryland v. King*
   567 U.S. 1301 (2012) ...............................................................................22

*McDonald v. City of Chicago*
   561 U.S. 742 (2010).............................................................................8, 10

*McIntyre v. Ohio Elections Comm'n*
   514 U.S. 334 (1995) ...................................................................................6

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

4

*Mendocino Envtl. Ctr. v. Mendocino County*
  192 F.3d 1283 (9th Cir. 1999)........................................................4, 13

5

6

*Munaf v. Geren*
  553 U.S. 674 (2008) ...............................................................................3

7

8

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
  142 S. Ct. 2111 (2022) ..................................................................*passim*

9

*Nordyke v. King*
  681 F.3d 1041 (9th Cir. 2012)..............................................................19

10

11

*Pennhurst State Sch. & Hosp. v. Halderman*
  465 U.S. 89 (1984) ...............................................................................20

12

13

*Riley v. California*
  573 U.S. 373 (2014) .............................................................................19

14

15

*Rocky Mountain Gun Owners v. Polis*
  2023 WL 5017253 (D. Colo. Aug. 7, 2023).......................................12

16

17

*Rocky Mountain Gun Owners v. Polis*
  2023 WL 8446495 (D. Colo. Nov. 13, 2023) ................................9, 14

18

19

*S.F. Apartment Ass'n v. City & Cnty. of San Francisco*
  881 F.3d 1169 (9th Cir. 2018)................................................................7

20

21

*San Diego Cnty. Gun Rights Comm. v. Reno*
  98 F.3d 1121 (9th Cir. 1996)..........................................................12, 14

22

*Silveira v. Lockyer*
  312 F.3d 1052 (9th Cir. 2002), (Jan. 27, 2003)......................6, 12, 13

23

24

*Speech First, Inc. v. Sands*
  69 F.4th 184 (4th Cir. 2023)............................................................4, 12

25

26

*Teixeira v. County of Alameda*
  822 F.3d 1047 (9th Cir. 2016)..............................................................19

27

28

*Teixeira v. County of Alameda*
  873 F.3d 670 (9th Cir. 2017)........................................................*passim*

1
2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

*United States v. 4,432 Mastercases of Cigarettes*
4      448 F.3d 1168 (9th Cir. 2006) .................................................................. 17

5

*United States v. Alaniz*
6      69 F.4th 1124 (9th Cir. 2023) ............................................................... 8, 9

7

*United States v. Argent Chem. Labs., Inc.*
8      93 F.3d 572 (1996) .................................................................................. 17

9

*United States v. Biswell*
       406 U.S. 311 (1972) .......................................................................... 17, 18
10

*United States v. Holton*
11     639 F. Supp. 3d 704 (N.D. Tex. 2022) .................................................... 14

12

*United States v. James*
13     2023 WL 3996075 (D.V.I. June 14, 2023) ................................................ 9

14

*United States v. Jones*
15     565 U.S. 400 (2012) ................................................................................ 18

16

*United States v. King*
17     2023 WL 4873648 (E.D. Pa. July 31, 2023) ............................................. 9

18

*United States v. Serrano*
19     651 F. Supp. 3d 1192 (S.D. Cal. 2023) ................................................... 14

20

*United States v. Tilotta*
       2022 WL 3924282 (S.D. Cal. Aug. 30, 2022) .......................................... 9
21

*Verdun v. City of San Diego*
22     51 F.4th 1033 (9th Cir. 2022) ........................................................... 17, 18

23

*Whalen v. McMullen*
24     907 F.3d 1139 (9th Cir. 2018) ................................................................ 18

25

*Winter v. Nat. Res. Def. Council, Inc.*
26     555 U.S. 7 (2008) ...................................................................................... 3

27

*Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*
28     471 U.S. 626 (1985) .................................................................................. 7

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

**STATUTES**

4

18 U.S.C.

5

§ 923(a) ........................................................................... 17

6

§ 923(c) ........................................................................... 18

7

California Civil Code

§ 1798.53 ........................................................................... 5

8

9

California Penal Code

§ 26700 ........................................................................... 17

10

§ 26705 ........................................................................... 17

§ 26710 ........................................................................... 17

11

§ 26715 ........................................................................... 17

12

§ 26806 ........................................................................... *passim*

13

§ 26835 ........................................................................... 18

§ 26850 ........................................................................... 18

14

§ 26853 ........................................................................... 18

§ 26856 ........................................................................... 18

15

§ 26859 ........................................................................... 18

16

§ 26860 ........................................................................... 18

§ 26883 ........................................................................... 17

17

§ 26885 ........................................................................... 17

18

§ 26892 ........................................................................... 17

§ 26910 ........................................................................... 17

19

§ 28160 ........................................................................... 18

20

§ 28175 ........................................................................... 18

§ 28180 ........................................................................... 18

21

§ 28205 ........................................................................... 18

22

§ 28210 ........................................................................... 18

§ 28215 ........................................................................... 18

23

24

**CONSTITUTIONAL PROVISIONS**

25

U.S. Constitution

First Amendment ........................................................4, 5, 6, 19

26

Second Amendment....................................................*passim*

27

Fourth Amendment ................................................1, 16, 18, 19

28

Eleventh Amendment ............................................1, 3, 19

**TABLE OF AUTHORITIES**
**(continued)**

Page

California Constitution,
   Article 1 § 1 .................................................................................... 20

**OTHER AUTHORITIES**

11 C.C.R
   § 4022 ............................................................................................ 18
   § 4032.5 ......................................................................................... 17
   § 4037 ............................................................................................ 17

# INTRODUCTION

California Penal Code section 26806 requires licensed firearm dealers to maintain digital surveillance systems, which will assist law enforcement in combatting firearms trafficking, thefts, straw purchases, and other gun crimes. Far from creating an "Orwellian" regime as Plaintiffs contend, the law requires monitoring only of certain publicly accessible areas of firearm dealers' business premises and forbids the release or use of the recordings except under limited circumstances, such as pursuant to a warrant or court order, or as part of an administrative inspection for which no warrant is otherwise required. This is a reasonable regulation on the commercial sale of arms, and just one of many in an industry that is already heavily regulated.

More than a year after section 26806's enactment and on the eve of it taking effect, Plaintiffs sued and moved to preliminarily enjoin it. But Plaintiffs are not likely to succeed on the merits of their claims. The law neither punishes nor restricts speech or association in any way, and Plaintiffs present no evidence demonstrating a likelihood that it will chill or suppress First Amendment-protected activity. Nor does section 26806 meaningfully constrain conduct within the scope of the Second Amendment's plain text, which does not cover the commercial sale of arms. Plaintiffs' Fourth Amendment claim also fails because section 26806 operates in a highly regulated industry in which there is little reasonable expectation of privacy. And the law's strict protections of the recordings effectively mitigate any privacy or other concerns dealers and customers might have. Plaintiffs' state constitutional privacy claim is barred by the Eleventh Amendment, but nevertheless would fail for similar reasons.

In addition to failing to show a likelihood of success on the merits, Plaintiffs have not shown any irreparable harm. Despite having more than a year to prepare a record, they present no evidence demonstrating that section 26806 is cost-prohibitive or will meaningfully burden individuals' ability to acquire firearms.

Any harm Plaintiffs might be able to show is far outweighed by the irreparable harm to the State and the public if the law—which is critical to preventing illegal arms trafficking, unlawful transfers, and other gun crimes—were enjoined.

The Court should deny Plaintiffs' request for a preliminary injunction.

## BACKGROUND

On September 30, 2022, the Governor signed into law Senate Bill No. 1384. *See* 2021 Cal. Senate Bill No. 1384, Reg. Sess. 2021-2022.[1]  Among other things, SB 1384 added section 26806 to the California Penal Code, which requires licensed firearm dealers to maintain a digital video-audio surveillance system on their premises.  This requirement assists law enforcement in combatting and deterring firearms trafficking, thefts, straw purchases, and other gun crimes, and provides key evidence in prosecuting them.  *See* Defs.' Request for Judicial Notice (RJN) Exs. A, B.

Section 26806 requires dealers to record "[i]nterior views of all entries and exits to the premises," "[a]ll areas where firearms are displayed," and "[a]ll points of sale, sufficient to identify the parties involved in the transaction."  Cal. Pen. Code. § 26806(a)(3).  The system must record continuously 24 hours a day, and dealers must safely and securely store recordings for at least one year.  *Id.* § 26806(a)(4)-(8).  The law forbids dealers from using, sharing, allowing access to, or otherwise releasing the recordings except in very limited circumstances: dealers must allow access to the recordings pursuant to a search warrant or court order or as part of an inspection by the Department of Justice (DOJ) or licensing authority for which no warrant is otherwise required; and dealers may allow access in response to an insurance claim or as part of the civil discovery process.  *Id.* § 26806(b)(1)-(3).  In addition, dealers must post a sign in a conspicuous place at each entrance

---

[1] *Available at* https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=202120220SB1384.

1  notifying patrons that the premises are under surveillance. *Id.* § 26806(c).  Section

2  26806 went into effect on January 1, 2024.  *Id.* § 26806(a).

3      Nearly fifteen months after section 26806's enactment, Plaintiffs sued the

4  Governor and Attorney General to enjoin it.[2]  Plaintiffs bring claims under the First,

5  Second, Fourth, Fifth, and Fourteenth Amendments to the United States

6  Constitution, as well as the California Constitution's privacy provision and other

7  state laws.  Compl. (ECF No. 1).

8      Just a few days before the law's effective date, Plaintiffs filed an Ex Parte

9  Application and Application for Temporary Restraining Order and Issuance of

10  Preliminary Injunction ("TRO-PI," ECF No. 11) seeking to enjoin section 26806 on

11  some, but not all, of the grounds for relief articulated in the Complaint.  The Court

12  denied the TRO, but it issued an order to show cause regarding the preliminary

13  injunction request (ECF No. 15).

14                          **LEGAL STANDARD**

15      "A preliminary injunction is an 'extraordinary and drastic remedy[.]'"  *Munaf*

16  *v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted).  The party seeking a

17  preliminary injunction must make a "clear showing" that it is likely to succeed on

18  the merits; it would likely suffer irreparable harm absent an injunction; the balance

19  of equities tips in its favor; and an injunction is in the public interest.  *Winter v. Nat.*

20  *Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The balancing of the equities and

21  the public interest factors merge when a government official is a defendant.  *Drakes*

22  *Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

23

24

25

26  _____
    [2] Governor Newsom is immune from suit under the Eleventh Amendment

27  because he does not have a direct connection to the law's enforcement, but rather
    only a "generalized duty to enforce state law."  *Ass'n des Eleveurs de Canards et*

28  *d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013).  Plaintiffs cannot
    demonstrate otherwise.

1

**ARGUMENT**

2

**I.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS**

3

4

    **A.   First Amendment Claim**

5

        **1.   Section 26806 Does Not Objectively Chill First Amendment Activity**

6

    For their First Amendment claim, Plaintiffs primarily argue that section 26806

7

"chills" association and speech based on their "fear of pervasive government

8

monitoring."  TRO-PI Mem. ("Mem.") (ECF No. 11-1) 4-5.  But Plaintiffs cannot

9

succeed on this claim because section 26806 does not proscribe any association or

10

speech, nor does it "chill or silence a person of ordinary firmness from future First

11

Amendment activities."  *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d

12

1283, 1300 (9th Cir. 1999) (quotation marks omitted); *see also Speech First, Inc. v.*

13

*Sands*, 69 F.4th 184, 192 (4th Cir. 2023) (requiring organizational plaintiff to show

14

that "its members' asserted self-censorship" was "objectively reasonable").

15

    By its plain terms, section 26806 "does not proscribe or even regulate speech."

16

*Legi-Tech, Inc. v. Keiper*, 601 F. Supp. 371, 379 (N.D.N.Y. 1984); *see also*

17

*Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 896 (9th Cir. 2018) (rejecting

18

First Amendment challenge to statute that "d[id] not regulate [] speech").  The law

19

requires firearms dealers to maintain digital surveillance recording systems, and it

20

imposes consequences upon dealers who fail to comply.  But nothing about the law

21

proscribes, regulates, or punishes any sort of speech or association or says anything

22

about the content of the recordings themselves.  Because it does not target—let

23

alone punish—any association or speech that appears on the recordings, Plaintiffs'

24

allegations that section 26806 chills their First Amendment rights are not

25

objectively reasonable and cannot support their pre-enforcement challenge.  *See*

26

*Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1005 (9th Cir. 2011);

27

*Humanitarian L. Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1138 (9th Cir.

28

2009).

That the law tightly limits the use or release of the recordings further demonstrates the unreasonableness of Plaintiffs' "chilling" assertions. Section 26806(b) forbids the use or disclosure of the surveillance recordings except in extremely limited circumstances, such as pursuant to a warrant or other court order, or for licensure inspection purposes for which a warrant is not otherwise required. There are also remedies if the recordings are unlawfully used, shared, or made public. *E.g.*, Cal. Civ. Code § 1798.53. These protections show that Plaintiffs' alleged "fear of pervasive governmental monitoring," Mem. 5, is objectively *un*reasonable. *See Doe v. Harris*, 772 F.3d 563, 580 & n.7 (9th Cir. 2014) (distinguishing between statute that might chill speech because it lacked "any constraining principle" and statute that "limited [the] purposes for which [information] could be shared" and so included "sufficient restrictions so as not to unnecessarily chill [] speech" (quotation marks omitted)); *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."). Plaintiffs' contention that section 26806 imposes "a requirement to let the government listen to one's current speech in order to obtain a firearm," Mem. 6, is similarly baseless, since the government plainly is not listening to transactions and can access the recordings in only limited circumstances.

Section 26806 is not the only law of its kind; a similar law in Illinois has been in effect since 2021. 430 Ill. Comp. Stat. Ann. 68/5-50. Ostensibly, if increased surveillance of firearms dealers' premises actually chilled association or speech, there would be evidence of such an effect in that state. Plaintiffs have adduced no such thing. Despite having more than a year to assemble a record, Plaintiffs rely entirely on threadbare, conclusory statements about their subjective "fear of pervasive governmental monitoring." Mem. 5. This cannot support a First Amendment "chilling" claim.

### 2.    Plaintiffs' Remaining First Amendment Arguments Fail

Plaintiffs complain that section 26806 violates their right to speak anonymously, but they cite no authority for applying that right to the conduct in which they allegedly wish to engage—discussions at businesses open to the public. Mem. 5-6. All of the cases Plaintiffs cite involve content published pseudonymously or anonymously, untethered from the individual's face and voice. *See Antonyuk v. Chiumento*, __F.4th__, 2023 WL 8518003, at *37 (2d Cir. Dec. 8, 2023) ("*pseudonymous* social media handles" wherein "the poster's identity is not immediately apparent"); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) (anonymous leaflets); *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001) (messages posted anonymously on the internet). As explained above, section 26806 forbids public disclosure of the recordings. And, extending any right there might be to speak anonymously to the circumstances of this case makes no sense; there is nothing pseudonymous or anonymous about appearing in public and engaging in a face-to-face business interaction. This is especially true for firearms purchases, which take place in a highly regulated industry in which there is little reasonable expectation of privacy. *See infra* pp. 17-18. Indeed, identity verification is a feature of firearm purchases, *see id.*, and, information relating to someone's status as a firearm purchaser has long been subject to public disclosure, *Silveira v. Lockyer*, 312 F.3d 1052, 1092 (9th Cir. 2002), *as amended* (Jan. 27, 2003), *abrogated on other grounds by Heller*, 554 U.S. 570; *CBS Inc. v. Block*, 42 Cal. 3d 646, 649 (1986). So, any assertions of an interest in anonymous gun ownership lack both legal and historical support.

Plaintiffs' contention that section 26806 "punishes" individuals "with a favorable view of the Second Amendment" also fails. Mem. 5. Again, section 26806 does not punish individuals at all; it uniformly requires businesses in a particular, highly regulated industry to take specific security measures. Nothing in section 26806 turns on the content or viewpoint expressed by or at those businesses.

Section 26806 also does not require anyone to disclose their protected group affiliation, beyond what is inherently disclosed by appearing in public and purchasing a firearm.  Mem. 4.  This is not a case where the State seeks the names and addresses of all members of a given advocacy group, like some of the institutional Plaintiffs.  Indeed, the State does not collect any information from the recordings, except in the extremely limited circumstances outlined in section 26806(b).  Even then, the information is only available because an individual appeared in-person to conduct a commercial transaction in a public place—not based on the individual's association with any particular viewpoint or advocacy group.

Finally, the signage required by section 26806(c) does not constitute compelled speech.  The government is permitted to require businesses to disclose "purely factual and uncontroversial information about the terms under which [] services will be available."  *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 651 (1985).  And the government "may compel truthful disclosure in commercial speech as long as the compelled disclosure is 'reasonably related' to a substantial governmental interest."  *S.F. Apartment Ass'n v. City & Cnty. of San Francisco*, 881 F.3d 1169, 1177 (9th Cir. 2018) (quotation marks omitted).  Section 26806(c) fits these standards.  It requires signage disclosing the purely factual information that surveillance is underway.  This is "reasonably related to the State's interest in preventing deception of consumers," *Zauderer*, 471 U.S. at 651, and it also helps avoid concerns among customers who would likely complain if they were *not* informed of recording on the premises.  And while Plaintiffs protest that the required signage "omits any mention of section 26806 being the source of" the surveillance, Mem. 6, there is nothing stopping dealers from informing their customers of this fact.

**B.**   **Second Amendment Claim**

   **1.**   **Section 26806 Does Not Implicate the Plain Text of the Second Amendment**

         **a.**   **Section 26806 Is a Reasonable Regulation of Commercial Firearms Sales that Does Not Constrain Conduct Covered by the Second Amendment's Text**

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court clarified the analysis required for Second Amendment claims. Courts must first determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 2129-30. If so, "the Constitution presumptively protects that conduct," and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130. In clarifying this standard, the Court was careful to note that *Bruen* did not purport to overturn or call into question any aspect of the Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008). To the contrary, the Court described the analytical approach articulated in *Bruen* as the same "test … set forth in *Heller*." *Bruen*, 142 S. Ct. at 2131; *accord. United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023).

*Bruen* reaffirmed that the Second Amendment is not a "regulatory straightjacket." 142 S. Ct. at 2133. It does not prevent states from adopting a "'variety' of gun regulations," *id.* at 2162 (Kavanaugh, J., concurring), or "experiment[ing] with reasonable firearms regulations" to address threats to the public, *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010) (plurality opinion). Indeed, "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful." *Heller*, 554 U.S. at 626-27 & n.26; *see also McDonald*, 561 U.S. at 786; *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring).

*Bruen*'s first step "involves a threshold inquiry" that "requires a textual analysis, determining whether," *inter alia*, "the 'proposed course of conduct' falls within the Second Amendment"—*i.e.*, whether the regulation at issue prevents any

8

"people" from "keep[ing]" or "bear[ing]" "Arms" for lawful purposes.  U.S. Const. amend. II; *Bruen*, 142 S. Ct. at 2134-35; *Alaniz*, 69 F.4th at 1128.  It is a plaintiff's burden to demonstrate that the plain text covers the proposed course of conduct.  *Bruen*, 142 S. Ct. at 2134-35; *Gazzola v. Hochul*, 88 F.4th 186, 195 (2d Cir. 2023); *Def. Distributed v. Bonta*, 2022 WL 15524977, at *4 (C.D. Cal. Oct. 21, 2022), *adopted*, 2022 WL 15524983 (C.D. Cal. Oct. 24, 2022).

Plaintiffs have not met their burden here and their Second Amendment claim fails at *Bruen*'s first step.  Section 26806 is a presumptively lawful regulation on the commercial sale of arms, an activity outside the scope of the Second Amendment's text as originally understood.  *See Bruen*, 142 S. Ct. at 2126; *see also Rocky Mountain Gun Owners v. Polis*, 2023 WL 8446495, at *11 (D. Colo. Nov. 13, 2023) ("Because it imposes a condition on the commercial sale of a firearm, the Act is presumptively lawful[.]"); *United States v. King*, 2023 WL 4873648, at *3 (E.D. Pa. July 31, 2023) ("[T]he Second Amendment's plain text does not cover the commercial sale of firearms."); *United States v. James*, 2023 WL 3996075, at *7 (D.V.I. June 14, 2023) ("[L]aws imposing conditions and qualifications on the commercial sale of firearms fall outside the plain text of the Second Amendment because these laws primarily impact manufacturers, sellers, or transferers and do not criminalize possession of the firearm.").  Plaintiffs do not even attempt to demonstrate that the law actually regulates or infringes upon individuals' ability to "keep and bear Arms."  Nor do they attempt to explain how the meanings of "keep" and "bear" as used in the Second Amendment—which mean to "have" and "carry" weapons for the purpose of "confrontation," *Heller*, 554 U.S. at 583-84—include the commercial sale of firearms.  "'Have and carry' is not synonymous with 'sell or transfer.'"  *See United States v. Tilotta*, 2022 WL 3924282, at *5 (S.D. Cal. Aug. 30, 2022).

Section 26806 does not implicate the Second Amendment's plain text.  It does not regulate an individual's possession or use of arms or any related conduct, and

thus it does not impact whether law-abiding individuals in California can "keep and bear Arms."  The only activity the law does regulate is the way dealers monitor and record the sales of firearms on their premises.  Defined at the proper level of specificity, then, Plaintiffs' "proposed course of conduct" is preventing the audio-visual recording of firearms sales.  The Second Amendment says nothing about that.

Plaintiffs nonetheless contend that section 26806 "interferes with (and thus infringes)" the Second Amendment's text by "conditioning the exercise of the right to acquire (and sell) firearms" on surveillance recordings.  Mem. 8.  But this argument is untethered from *Bruen*, *McDonald*, and *Heller*, which addressed laws that *directly prohibited* the plaintiffs' possession of firearms.  Accepting Plaintiffs' theory would eviscerate *Bruen*'s first-step textual analysis, which does not ask whether the challenged law has *any* tangential effect on *anything* to do with firearms.  Were it otherwise, virtually all generally applicable zoning regulations (which may prevent selling firearms in residential neighborhoods), sales taxes (which increase the cost of firearms), and other laws with some theoretical downstream consequence on the availability of firearms would be subject to *Bruen*'s second stage historical analysis.  *Bruen* itself rejected this possibility when it explained that regulations that "do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right[s]" remain constitutional.  142 S. Ct. at 2138 n.9.  And Plaintiffs' view cannot be squared with the Supreme Court's repeated assurance that "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful."  *Heller*, 554 U.S. at 626-27 & n.26; *McDonald*, 561 U.S. at 786; *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring).

That regulations on the commercial sale of firearms do not implicate the Second Amendment's text is consistent with binding precedent.  *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) (en banc).  In *Teixeira*, the Ninth Circuit

1  upheld a county zoning ordinance that imposed certain restrictions on where a gun

2  store could be located.  873 F.3d at 673-74.  It conducted a "full textual and

3  historical review" of the Second Amendment and concluded there is no

4  "independent right to sell or trade weapons" and that "[n]othing in the specific

5  language of the Amendment suggests that sellers fall within the scope of its

6  protection." *Id.* at 683.  The Court also found that, whatever the scope of the right,

7  the plaintiffs failed to demonstrate that the law "meaningfully constrained"

8  individuals' ability to acquire firearms because access to them remained readily

9  available. *Id.* at 678-80; *see also Gazzola*, 88 F.4th at 196-97 (discussing *Teixeira*).

10 *Teixeira* thus forecloses any Second Amendment claim based on a supposed right

11 to sell firearms.

12     To the extent that Plaintiffs assert that section 26806 is cost-prohibitive and

13 will cause some licensed firearms dealers to go out of business, *e.g.*, Decl. of Alan

14 Gottlieb ISO TRO-PI ¶ 10, this argument solely concerns the sale of arms, which

15 does not implicate the Second Amendment's text.  Moreover, this claim is entirely

16 speculative and devoid of evidence demonstrating that section 26806 will limit the

17 availability of firearms to such an extent that individuals will be "meaningfully

18 constrained" in their ability to acquire, and thus possess, arms or otherwise exercise

19 their Second Amendment rights. *Teixeira*, 873 F.3d at 677-80; *Gazzola*, 88 F.4th at

20 195-99.  Plaintiffs have not shown that the similar Illinois law referenced above,

21 430 Ill. Comp. Stat. Ann. 68/5-50, overly burdens firearms dealers in that state or

22 has led to the widespread unavailability of firearms there.  Despite having more

23 than a year to assemble a record, Plaintiffs merely speculate that the law is "cost-

24 prohibitive" and offer no supporting evidence.

25     The Second Circuit recently affirmed the denial of a preliminary injunction

26 against enforcement of a New York law regulating the commercial sale of arms

27 based on a similarly sparse evidentiary record. *Gazzola*, 88 F.4th 186.  Like section

28 26806, the New York law imposes on dealers financial costs and other burdens by

1    requiring them to maintain a host of security measures and provide law

2    enforcement with full access to their premises for inspections.  *Id.* at 192.  In

3    affirming denial of the injunction, the Second Circuit pointed to the plaintiffs' lack

4    of evidence—"even less evidence here than in *Teixeira*"—that the law will lead to

5    widespread closures of firearms dealers such that individuals will be "meaningfully

6    constrained – or, for that matter, constrained at all – in acquiring firearms and

7    ammunition."  *Id.* at 197-98.  Other courts have also upheld costly regulations on

8    the commercial sale of arms for similar lack of evidence.  *E.g.*, *Doe v. Bonta*, 650 F.

9    Supp. 3d 1062, 1071 (S.D. Cal. 2023); *B&L Prods., Inc. v. Newsom*, 661 F. Supp.

10   3d 999, 1007-08 (S.D. Cal. 2023).  This Court should follow suit and reject

11   Plaintiffs' speculative and unsupported notion that section 26806 meaningfully

12   constrains and infringes upon conduct protected by the Second Amendment.

### b.   Plaintiffs Have Not Demonstrated that Section 26806 Objectively Chills the Exercise of Second Amendment Rights

15   Plaintiffs also contend that section 26806 implicates the Second Amendment's

16   text because it "will chill the purchase of firearms in California."  Mem. 8.

17   Plaintiffs rely entirely on cases explicating the doctrine of chilling *First*

18   Amendment rights, *id.*, and they provide no binding authority demonstrating that

19   this doctrine has been imported into the Second Amendment context.  In fact, the

20   Ninth Circuit has rejected a similar Second Amendment "chilling" argument.  *San*

21   *Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1129-30 (9th Cir. 1996),

22   *abrogated on other grounds by Heller*, 554 U.S. 570; *see also Rocky Mountain Gun*

23   *Owners v. Polis*, 2023 WL 5017253, at *4 n.5 (D. Colo. Aug. 7, 2023).  Moreover,

24   as noted above, someone's status as a firearm purchaser has long been subject to

25   public disclosure.  *Silveira*, 312 F.3d at 1092; *CBS*, 42 Cal. 3d at 649.

26   In any event, Plaintiffs' argument fails on its own terms because they have

27   produced no evidence demonstrating that section 26806 would in fact "chill … a

28   person of ordinary firmness from future [Second] Amendment activities."

*Mendocino Envtl. Ctr.*, 192 F.3d at 1300; *see also Doe v. Bonta*, 650 F. Supp. 3d at 1072 (the test for the chilling of a constitutional right "is an objective one").  As set forth above, the law forbids the use or disclosure of the surveillance recordings except in extremely limited circumstances, and there are remedies for unlawful disclosure.  *See supra* pp. 2, 5.  Moreover, any risks posed by section 26806 are not meaningfully different from "the risks posed by many other California laws that compel citizens to furnish publicly available personal information" such as property title and land ownership registries, electoral rolls, and court documents.  *Doe v. Bonta*, 650 F. Supp. 3d at 1073-74.  This is true even in the Second Amendment context, as CCW permits have long been subject to public disclosure.  *Id.*; *Silveira*, 312 F.3d at 1092; *CBS*, 42 Cal. 3d at 649.  If anything, section 26806 is far *less* intrusive than these examples because it *forbids* public disclosure.  Instead of identifying evidence to rebut these protections or demonstrating widespread objective fear among potential firearm purchasers significant enough to chill the exercise of Second Amendment rights—despite having more than a year to produce such evidence—Plaintiffs merely rely on subjective, speculative fears.  This cannot support Plaintiffs' "chilling" theory.

### 2.   In the Alternative, Section 26806 Is Consistent with the History and Tradition of Regulating Commercial Firearm Sales

For the reasons explained above, Plaintiffs' challenge fails *Bruen*'s first-step textual analysis, and there is no need to proceed to *Bruen*'s history-and-tradition analysis.  But even under *Bruen*'s second step, section 26806 is justified because it is consistent with "the historical tradition that delimits the outer bounds of the right to keep and bear arms."  *Bruen*, 142 S. Ct. at 2127.  The government can justify a regulation by establishing that it falls within a historical tradition of laws that are "relevantly similar," in the sense that they "impose a comparable burden on the right of armed self-defense" that "is comparably justified."  *Id.* at 2132-33.  There is no need to identify "a historical *twin*" or "a dead ringer" for purposes of that

"analogical inquiry." *Id*.  And when the challenged regulation "implicat[es] unprecedented societal concerns or dramatic technological changes," that "may require a more nuanced approach." *Id.* at 2132.

Here, that "more nuanced approach" is necessary because the type of digital video-audio surveillance required under section 26806 was not possible during the Founding or Reconstruction due to obvious technological limitations.  Ignoring the nuance prescribed by *Bruen*, Plaintiffs insist that such surveillance measures can be justified only by "widespread Founding-era regulations requiring every gunsmith to employ a sketch artist to reproduce or otherwise describe each patron's appearance, and a reporter to write down the conversations that took place during those transactions."  Mem. 9.  This absurd argument requires "a historical *twin*" or "dead ringer," which the Supreme Court explicitly rejected.  *Bruen*, 142 S. Ct. at 2132-33; *Rocky Mountain Gun Owners*, 2023 WL 8446495, at *19.

Under the requisite nuanced approach, section 26806 fits squarely within the well-established tradition of regulating the commercial sale of firearms.  Since the dawn of American history, government has imposed widespread regulations on the commercial sale of arms to promote public safety and security.  *United States v. Serrano*, 651 F. Supp. 3d 1192, 1211-12 (S.D. Cal. 2023); *United States v. Holton*, 639 F. Supp. 3d 704, 711-12 (N.D. Tex. 2022); *see also* Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 L. & Contemp. Probs. 55, 76-77, 80 (2017).  Colonial governments "substantially controlled the firearms trade" by "provid[ing] and stor[ing] guns, controll[ing] the conditions of trade, and financially support[ing] private firearms manufacturers." *Teixeira*, 873 F.3d at 685.  For example, the Virginia Colony required the recording "'of arms and munitions'" accompanying new arrivals to the colony, and later confiscated "'all ammunition, powder and arms, other than for private use.'"  Spitzer, 80 L. & Contemp. Probs. At 76 (citing Virginia laws from 1631 and 1651).  And New York

14

similarly prohibited private individuals from "illegally trading guns, gunpowder, and lead." *Id.* (citing 1652 N.Y. Laws 128).

After the Founding and through Reconstruction, states continued to heavily regulate the commercial sale and storage of arms, ammunition, and gunpowder, which were being manufactured by a rapidly growing industry. *See* William J. Novak, *The People's Welfare, Law and Regulation in Nineteenth Century America* 60-67, 84-92 (1996). Between 1780 and 1835, Massachusetts passed regulations that closely specified and controlled the way numerous products were manufactured and sold, including gunpowder and firearms. *Id.* at 88. Maryland, South Carolina, Michigan, and Ohio enacted similar legal schemes. *Id.* Numerous states enacted series of statutes requiring licenses to trade in various industries, including firearms. *Id.* at 90-91. Like section 26806, many of these and other laws required commercial dealers to take safety and security measures as well as permit inspection by government authorities. *E.g.*, 1825 N.H. Laws 74, chap. 61, § 5 (regulating the sale of gunpowder); 1814 Mass. Acts 464-65, ch. 192, § 2 (requiring inspection of musket barrels and pistol barrels); 1821 Me. Laws 99, chap. 25, § 5 (power to inspect storage of gunpowder); 1811 N.J. Laws 300, § 1 (limitations on gunpowder factory locations); 1820 N.H. Laws 274-76, ch. 25, §§ 1-9 (duty of inspectors, quality control, and storage specifications for gunpowder); 1865 Vt. Acts & Resolves 213, ch. 141, § 10 (1847 law granting fire-wardens authority to inspect manufacturing and storage). States also delegated this regulatory authority over the firearms industry to localities. *See, e.g.*, 1845 Iowa Laws 119, ch. 123, § 12; 1826 Conn. Pub. Acts 107, ch. 25, § 3; 1836 Conn. Acts 105, ch. 1, § 20; 1847 Ind. Acts 93, ch. 61, § 8, pt. 4.[3] There were also numerous inspection laws that required government officials to test the integrity and quality of any firearm or

---

[3] The historical laws cited in this brief are available at internet databases such as HeinOnline (https://heinonline.org) or the Duke Center for Firearms Law's Repository of Historical Gun Laws (https://firearmslaw.duke.edu/repository-of-historical-gun-laws). If the Court requests scans of the actual laws, Defendants respectfully request additional time to prepare a compendium of historical laws.

gunpowder sold to the public.  *See* Br. of Defs.-Appellees, *Granata v. Campbell*, No. 22-1478 (1st Cir. Jan. 30, 2023), 2023 WL 1794480, at *39-42.  And numerous historical laws have imposed financial burdens on commercial traders of arms.  *E.g.*, *Laws [et al.] of the City of New York* 19 (1763) (fee for the transportation of gunpowder); 1776 N.J. Acts 6-7, § 6 (fee for inspection of gunpowder for sale); 1820 N.H. Laws 275, ch. 25 § 7 (same).

States also enacted laws that required the taking of information from firearm sellers and buyers.  Aside from the Virginia Colony's recording requirement referenced above, Massachusetts and Maine prohibited the sale of any musket or pistol unless it was approved, marked, and stamped.  1814 Mass. Acts 464, ch. 192, § 2; 1821 Laws of the State of Maine 685-86, vol. 2, § 3.  Post-Reconstruction, Illinois created a system of recordkeeping and registration for all sales of deadly weapons that was open to the public. 1881 Ill. Laws 73-74, § 3.  And New York and Colorado later imposed similar recording and registration requirements.  1911 N.Y. Laws 444-45, ch. 196, § 2; 1911 Colo. Sess. Laws 408-09, ch. 136, § 3; *see also* National Firearms Act of 1934, 48 Stat. 1236; Federal Firearms Act of 1938, 52 Stat. 1250.

Section 26806 fits squarely within this well-established tradition of regulating firearms commerce, using new technology in furtherance of similar goals.  Like these historical laws, it imposes operational burdens on firearms sellers to promote public safety and combat firearm crimes.  Therefore, the law satisfies *Bruen*'s historical analysis test.[4]

**C.    Fourth Amendment Claim**

Although the Fourth Amendment protects against unreasonable searches of places and things over which a person has a reasonable expectation of privacy, *Katz*

---

[4] If the Court is prepared to rule against Defendants on this claim based on the existing record, Defendants respectfully request additional time to supplement the record.  Despite working diligently over the past ten days, there remain areas relevant to *Bruen*'s text-and-history standard that Defendants have not yet been able to explore fully, which will likely involve retaining historians and other experts.

*v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J. concurring), operators of closely regulated industries have a "diminished expectation of privacy." *United States v. Argent Chem. Labs., Inc.*, 93 F.3d 572, 575 (1996). Thus, "warrantless searches and seizures on commercial property used in 'closely regulated' industries are constitutionally permissible." *Id.*; *see also United States v. 4,432 Mastercases of Cigarettes*, 448 F.3d 1168, 1176 (9th Cir. 2006).

Binding precedent makes clear that firearms dealers are a closely regulated industry subject to extensive federal and state regulations and licensing schemes. *United States v. Biswell*, 406 U.S. 311, 316 (1972); *see also Verdun v. City of San Diego*, 51 F.4th 1033, 1039 (9th Cir. 2022), *cert. denied*, 144 S. Ct. 73 (2023). Prospective dealers must obtain numerous licenses—federal, state, and local— before becoming a licensed firearms dealer. These include a valid federal firearms license from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Cal. Pen. Code § 26700(a); any regulatory or business license required by local government, § 26700(b); a valid seller's permit issued by the state Department of Tax and Fee Administration, § 26700(c); a Certificate of Eligibility from DOJ demonstrating the applicant is not prohibited from acquiring or possessing firearms, §§ 26700(d), 26710; and an annual license granted by local licensing authorities, §§ 26700(e), 26705. The applicant must also be listed on DOJ's centralized list of persons licensed to sell firearms. *Id.* §§ 26700(f), 26715. The processes for obtaining a DOJ Certificate of Eligibility and an ATF license require the applicant to submit fingerprints. 11 C.C.R. § 4032.5; 18 U.S.C. § 923(a). ATF also requires a photograph of the applicant. *Id.* If a license is granted, the dealer must regularly renew that license to remain active. 11 C.C.R. § 4037.

When in operation, licensed dealers must comply with a host of regulations governing nearly all aspects of firearms sales. *See, e.g.*, Cal. Pen. Code. § 26885 (reporting loss and theft); § 26892 (procedure and reporting requirements for temporary transfer and storage of firearm); § 26910 (report to DOJ if firearm not

delivered within statutory time period); § 26835 (posting warnings and notices); §§ 26850, 26853, 26856, 26859, 26860 (safe handling demonstrations upon transfer); § 26883 (restriction on restocking or return-related fees).  Licensed dealers must obtain personal information from potential purchasers for recording and background-check purposes.  *E.g.*, *id.* §§ 28160, 28175, 28180, 28205, 28210, 28215.  They must also submit to inspections from federal and state authorities, 11 C.C.R § 4022(a); 18 U.S.C. § 923(c), the warrantless nature of which has been upheld as constitutional, *Biswell*, 406 U.S. at 316.

Because section 26806 is a permissible regulation of the highly regulated firearms industry in which there is little reasonable expectation of privacy, it does not effectuate a "search" within the meaning of the Fourth Amendment.  The law does not involve "a government agent obtain[ing] information by physically intruding on a constitutionally protected area, or infring[ing] upon a reasonable expectation of privacy[.]"  *Whalen v. McMullen*, 907 F.3d 1139, 1146 (9th Cir. 2018) (cleaned up).  It is merely a regulatory measure that those who choose to become licensed firearms dealers must comply with.  *See Biswell*, 406 U.S. at 316 ("When a dealer chooses to engage in this pervasively regulated business … he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection.").[5]  Plaintiffs contend that the Fourth Amendment confers a kind of absolute protection because the government does not have a "superior property interest" to their "persons, effects, homes, and businesses."  Mem. 11.  But the cases Plaintiffs rely on for this notion occurred outside the context of a highly regulated industry and, thus, are inapposite.  *See United States v. Jones*, 565 U.S. 400 (2012); *Florida v. Jardines*, 569 U.S. 1 (2013).

---

[5] In any event, section 26806 falls under the administrative use exception to warrantless searches.  *See Verdun*, 51 F.4th at 1039; *Donovan v. Dewey*, 452 U.S. 594, 600 (1981).

For these reasons, Plaintiffs' argument that section 26806 is a general warrant, giving government officials limitless access to dealers' homes and businesses, lacks merit.  Mem. 10.  Nothing in section 26806 bears resemblance to a general warrant that would allow an officer to conduct "an unrestrained search for evidence of criminal activity" in violation of the Fourth Amendment.  *See Riley v. California*, 573 U.S. 373, 403 (2014).  And, as iterated above, section 26806 requires monitoring only in limited, public spaces and forbids disclosure of the recordings subject to extremely limited exceptions.  *Id.* § 26806(b).  Thus, by defining the circumstances where recording is required and when recordings can be accessed, section 26806 does not provide government with a standardless general warrant.  Rather, it accords with existing constitutional protections by allowing government access only under those circumstances the Fourth Amendment already permits: either with a warrant or other court order, or because a warrant is not necessary or an exception applies.

### D.   Equal Protection Clause Claim

Plaintiffs are unlikely to succeed on the merits of their Equal Protection Clause claim, which is predicated on their First Amendment claim.  Mem. 13.  Plaintiffs fail to "allege membership in a protected class" because firearm dealers are not a suspect class.  *Nordyke v. King*, 681 F.3d 1041, 1043 n.2 (9th Cir. 2012).  And they cannot rely on a "class-of-one" theory because "gun stores are materially different from other retail businesses."  *Teixeira v. County of Alameda*, 822 F.3d 1047, 1053 (9th Cir. 2016) (rejecting a class-of-one claim by firearm vendors); *Teixeira*, 873 F.3d at 676 n.7 (adopting panel opinion's reasoning).  The Court should also reject Plaintiffs' animus theory, which is premised entirely on conclusory allegations unsupported by any evidence.

### E.   Claim Based on the California Constitution's Right to Privacy

Plaintiffs' state law claim fails because, under the Eleventh Amendment, federal courts lack jurisdiction to enjoin state institutions and state officials on the

basis of state law.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124-125 (1984); *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018).  But even on the merits, Plaintiffs' claim under California's constitutional privacy provision cannot succeed.

Courts evaluate claims brought under the California Constitution's privacy provision, Cal. Const., art. 1, § 1, via a two-prong test.  *Hill v. NCAA*, 7 Cal.4th 1, 37 (1994).  First, plaintiffs must establish an intrusion on a privacy interest by showing a legally protected privacy interest; a reasonable expectation of privacy; and conduct constituting a serious invasion of privacy.  *Id.* at 35-37.  Even if plaintiffs establish an intrusion, their claim nonetheless fails under prong two if the defendant can show the "invasion of privacy is justified because it substantively furthers one or more countervailing interests."  *Id.* at 40.  Plaintiffs' claim fails at both prongs.

As to the first prong, Plaintiffs cannot establish an intrusion on a legally protected privacy interest.  As explained above, there is no interest in or expectation of anonymous or confidential firearm purchasing or carrying.  To the contrary, both purchase and public carry of firearms in California *require* identity verification.  Plaintiffs also have a significantly diminished expectation of privacy as participants in the highly regulated firearms dealing industry.  And section 26806 constitutes a minimal invasion: the government is not generally surveilling firearms dealers; it is requiring a security system as part of an already extensive regulatory scheme, and recordings are required only in limited areas open to the public.  Dealers are the keepers of the recordings and may not release them unless one of the narrow exceptions mandate or allow disclosure.

Even so, under the second prong, California's countervailing interests in preventing gun theft and crime justify any intrusion.  The purpose of requiring security systems is to "curb gun store theft and straw purchasing" and to assist in "related enforcement efforts."  Sen. Comm. on Pub. Safety, Apr. 19, 2021 hearing

on SB 1384, at 8 (RJN Ex. A).  The Legislature's concerns are not theoretical.  As of December 2022, "76,135 crime guns were associated with 1,929 dealers across California."  Crime Guns in California, Mandated Reporting Statistics AB 1191 Leg. Rep., June 30, 2023, at 7 (RJN Ex. C).  Indeed, although gun thefts decreased in 2021, California had the seventh highest rate of theft of any state from 2012-2019, with 1,937 guns stolen from licensed dealers.  Sen. Comm. on Pub. Safety, at 7.  Straw purchases pose unique problems for law enforcement because they require evidence of a connection between the straw purchaser and the person who ultimately obtains the weapon.  And while dealers play important gatekeeping roles in firearms purchases and in helping enforce existing laws, gun theft and other crimes continue with firearms purchased from licensed dealers, evincing a need for further security.  Section 26806 assists law enforcement efforts to investigate, deter, and prosecute these crimes.

## II.  PLAINTIFFS FAIL TO SHOW IRREPARABLE HARM

Plaintiffs have had more than a year to show that section 26806 is likely to impose a widespread, prohibitive burden on firearms dealers across California, meaningfully constrain Californians' ability to acquire firearms, or reasonably chill constitutionally protected activity.  Yet they present no evidence demonstrating any such harm, relying exclusively on their own conclusory statements and unsupported subjective fears.  This is insufficient to show the kind of irreparable harm necessary to sustain a preliminary injunction.  *See Gazzola v. Hochul*, 645 F. Supp. 3d 37, 55-57 (N.D.N.Y. 2022), *aff'd*, 88 F.4th 186.

Moreover, any claim of harm is belied by Plaintiffs' unexplained and unreasonable delay of more than a year to file suit and seek relief.  As outlined in Defendants' TRO opposition (ECF No. 12), which Defendants incorporate here, such delays warrant denials of preliminary injunctions both under the doctrine of laches and because they demonstrate an absence of irreparable harm.

1

### III. THE BALANCE OF EQUITIES WEIGHS AGAINST AN INJUNCTION

2      Whereas Plaintiffs have made no showing of irreparable harm, enjoining the

3  law would itself be a form of irreparable harm to California and its citizens.  *See*

4  *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); *Coal.*

5  *for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997).  Of equal

6  importance, an injunction would interfere with the public safety goals section

7  26806 promotes.  As explained above, the enhanced security measures the law

8  mandates assist in reducing firearms trafficking by deterring crime and helping law

9  enforcement in solving firearm-related crimes such as gun theft and straw

10  purchases.  All law abiding Californians—law enforcement officers, crime victims,

11  gun owners, and non-gun owners alike—would lose the benefits that section

12  26806's enhanced security measures provide.

### CONCLUSION

14      For the foregoing reasons, the Court should deny Plaintiffs' request for a

15  preliminary injunction.

16      But if the Court were inclined to issue an injunction, Defendants respectfully

17  request that the Court stay the injunction pending appeal.

18  Dated:  January 8, 2024                    Respectfully submitted,

19                                              ROB BONTA
                                                Attorney General of California
20                                              MARK BECKINGTON
                                                Supervising Deputy Attorney General
21                                              CHRISTINA R.B. LOPEZ
                                                Deputy Attorney General
22                                              CAROLYN DOWNS
                                                Deputy Attorney General
23

24
                                                */s/ Todd Grabarsky*
25                                              TODD GRABARSKY
                                                Deputy Attorney General
26                                              *Attorneys for California Governor*
                                                *Gavin Newsom and Attorney General*
27                                              *Rob Bonta in their official capacities*

28  SA2023306691

22

1

**CERTIFICATE OF COMPLIANCE**

2   The undersigned, counsel of record for Defendants Governor Gavin Newsom

3 and Attorney General Rob Bonta, in their official capacities, certifies that this brief

4 contains 6980 words, which complies with the word limit of L.R. 11-6.1.

5 Dated:  January 8, 2024      Respectfully submitted,

6               ROB BONTA
                Attorney General of California
7               MARK BECKINGTON
                Supervising Deputy Attorney General
8               CHRISTINA R.B. LOPEZ
                Deputy Attorney General
9               CAROLYN DOWNS
                Deputy Attorney General
10

11

12               */s/ Todd Grabarsky*
                TODD GRABARSKY
13               Deputy Attorney General
                *Attorneys for California Governor*
14               *Gavin Newsom and Attorney General*
                *Rob Bonta in their official capacities*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2024, I electronically filed the foregoing document and any attachments thereto with the Clerk of the Court by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  January 8, 2024                    */s/ Todd Grabarsky*
                                          TODD GRABARSKY