C. D. Michel – SBN 144258
Tiffany D. Cheuvront – SBN 317144
Joshua Robert Dale – SBN 209942
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
cmichel@michellawyers.com

Attorneys for Plaintiffs Adam Richards, Jeffrey Vandermeulen, Gerald Clark, Jesse Harris, On Target Indoor Shooting Range, LLC, Gaalswyk Enterprises, Inc. (D/B/A/ Smokin' Barrel Firearms), Gun Owners of California, Inc., Gun Owners of America, Inc., Gun Owners Foundation, and California Rifle & Pistol Association, Incorporated

Donald Kilmer – SBN 179986
Law Offices of Don Kilmer, APC
14085 Silver Ridge Rd.
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM RICHARDS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.,<br><br>Defendants. | Case No.: 8:23-cv-02413 JVS (KESx)<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND OPPOSITION TO PRELIMINARY INJUNCTION**<br><br>Hearing Date:    January 16, 2024<br>Hearing Time:    9:00 a.m.<br>Courtroom:    10C<br>Judge:    Hon. James V. Selna |

# TABLE OF CONTENTS

I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ........................2

A. SECTION 26806 VIOLATES THE FIRST AMENDMENT ................................2

1. Section 26806 has a clear chilling effect on protected speech and association.......2

2. Section 26806 violates the right to speak anonymously. .......................................4

3. Section 26806 constitutes odious viewpoint discrimination. ................................5

4. Section 26806 compels speech ...............................................................................6

B. SECTION 26806 VIOLATES THE SECOND AMENDMENT ........................7

2. SECTION 26806 IMPLICATES THE SECOND AMENDMENT'S TEXT. ...........................7

a. Defendants invite the Court to elevate dicta over express holdings.......................7

b. The "Right to Keep and Bear Arms" clearly includes acquisition.........................9

c. Defendants urge prohibited interest balancing. ...................................................11

d. Defendants advance the shocking claim that exercise of Second Amendment rights is a public affair....................................................................................12

2. Defendants Utterly Fail to Bear Their Historical Burden.....................................12

3. Section 26806 Violates the Fourth Amendment.....................................................16

C. Section 26806 Violates the Right to Equal Protection. .........................................20

D. SECTION 26806 VIOLATES THE CALIFORNIA RIGHT TO PRIVACY. ........................20

II PLAINTIFFS ARE SUFFERING IRREPARABLE HARM ..............................21

III THE EQUITIES FAVOR PLAINTIFFS....................................................................23

IV CONCLUSION ...................................................................................................24

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Am. KKK v. City of Goshen*, 50 F. Supp. 2d 835, 838, 840 (N.D. Ind. May 4, 1999)5

5

*Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 344 (N.D.N.Y. 2022).............................7

6

*Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014).....................................22

7

*B&L Prods., Inc. v. Newsom,* 2023 WL 7132054, at *13 (C.D. Cal. Oct. 30, 2023) 9

8

*Baird v. Bonta*, 2023 U.S. App. LEXIS 23760, at *6-8 (9th Cir. Sept. 7, 2013).....22

9

*Boland v. Bonta*, 2023 WL 2588565, at *5 (C.D. Cal. Mar. 20, 2023) ....................9

10

*Buckley v. Am. Const. L. Found.*, 525 U.S. 182, 199 (1999) ....................................4

11

*California Rifle & Pistol Ass'n, Incorporated, et al. v. Los Angeles County Sheriff's Department, et al.*, No. 2:23-cv-10169 (C.D. Cal. December 4, 2023)................23

12

*Caniglia v. Strom*, 141 S. Ct. 1596 (2021) ..............................................................18

13

*Colonnade Catering Corp. v. United States*, 397 U.S. 72 (1970) .............................6

14

*Def. Distributed v. Bonta*, No. 2:22-cv-06200-GW-AGR (C.D. Cal. Oct. 3, 2022) 10

15

*Donovan v. Dewey*, 452 U.S. 594 (1981) ..................................................................6

16

*Florida v. Jardines*, 569 U.S. 1 (2013)...................................................................18

17

*Florida v. Wells*, 495 U.S. 1, 4 (1990) ...................................................................17

18

*Gem Fin. Serv., Inc. v. City of New York*, 2023 U.S. Dist. LEXIS 131092 (E.D.N.Y. July 28, 2023)........................................................................................................19

19

*Grosjean v. Am. Press Co.,* 297 U.S. 233 (1936).....................................................20

20

*Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 896 (2018) ...........................2

21

*Junior Sports Magazines, Inc., et al. v. Bonta, et al.,* 2:22-cv-04663-CAS (C.D. Cal. July 8, 2022)......................................................................................................23

22

*Kilgore v. City of South El Monte*, 3 F.4th 1186, 1192 (9th Cir. 2021) ...................17

23

*Kingdom Muzic*, 2022 U.S. Dist. LEXIS 213213, at *4 (C.D. Ca. Oct. 3, 2022)....22

24

*Kyllo v. United States*, 533 U.S. 27 (2001) .............................................................13

25

*Lange v. California*, 141 S. Ct. 2011 (2021)...........................................................18

26

*Latta v. Otter*, 771 F.3d 496, 500 (9th Cir. 2014) ...................................................21

27

*Legi-Tech, Inc. v. Keiper*, 601 F. Supp. 371, 379 (N.D.N.Y. 1984) .........................2

28

ii

*Luis v United States*, 578 U.S. 5, 26 (2016) ............................................................10

*May, et al. v. Bonta, et al.*, No. 8:23-cv-01696 (C.D. Cal. September 12, 2023) ....23

*McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010) ..........................................7

*Minn. Star & Trib. Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 583 n.6 (1983) ............................................................................................................................13

*Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue,* 460 U.S. 575 (1983) 20

*Morgan v. Fairfield County*, 903 F.3d 553, 563 (6th Cir. 2018) ...............................1

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958)..........................3, 6

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361 (2018) ....................6

*New York v. Burger*, 482 U.S. 691 (1987)...................................................................6

*Nordyke v. Santa Clara Cnty.,* 110 F.3d707 (9th Cir. 1997).......................................3

*Police Dep't of City of* ..............................................................................................20

*Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)........................................23

*Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023)..........................................................9

*Rigby v. Jennings*, 630 F. Supp. 3d 602, 613 (D. Del. 2022)....................................8

*Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002)..................................................12

*Speiser v. Randall*, 357 U.S. 513, 529 (1958) ............................................................3

*Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017)..................10, 14

*United States v. Biswell*, 406 U.S. 311, 315 (1972) ..................................................18

*United States v. Grey*, 959 F.3d 1166, 1178 (9th Cir. 2020).....................................17

*United States v. Hicks*, 649 F. Supp. 3d 357, 359-60 (W.D. Tex. 2023) .................10

*United States v. Holton*, 639 F. Supp. 3d 704, 711-12 (N.D. Tex. 2022) ...............14

*United States v. Jones*, 565 U.S. 400 (2012) ......................................................13, 18

*United States v. Price*, 635 F. Supp. 3d 455, 459 (S.D. W. Va. 2022) .....................8

*United States v. Serrano*, 651 F. Supp. 3d 1192, 1211-12 (S.D. Cal. 2023)............14

*United States v. Vargas*, 2014 U.S. Dist. LEXIS 184672, at *14 (E.D. Wash. Dec. 15, 2014)...................................................................................................................18

*Verdun v. City of San Diego*, 51 F.4th 1033, 1039 (9th Cir. 2022)..........................17

*Young v. Hawaii*, 896 F.3d 1044, 1068 (9th Cir. 2018) ...........................................11

iii

*Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 651 (1985) .................................................................................................6

**Statutes**

18 U.S.C. § 845 ..............................................................................................15

18 U.S.C. § 922 ..............................................................................................14

Section 26806 ..................................................................................................2

**Other Authorities**

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995) ...................................................22

An Act to Provide for the Proof of Fire Arms Manufactured Within This Commonwealth, ch. 81, Acts and Resolves of Massachusetts: 1804-1805, at 111 (Mar. 8, 1805), http://tinyurl.com/bdzmhmyy ......................................15

Brian Wang, U.S. Retail Theft is About $95 Billion and California Leads with $7.8 Billion, October 24, 2023, https://www.nextbigfuture.com/2023/10/us-retail-theft-is-about-95-billion-and-california-leads-with-7-8-billion.html, (last visited Jan. 11, 2024) ........................................................................................21

F. Schauer, Fear, Risk and the First Amendment: Unraveling the Chilling Effect, 58 B.U. L. Rev. 685, 693 (1978) .........................................................................3

George Orwell, Nineteen Eighty-Four, Penguin Classics ed. (London: Secker and Warburg, 1949) ........................................................................................16

Law enforcement ramps up efforts to combat retail theft ahead of holiday season, November 22, 2023, https://www.nbclosangeles.com/news/local/law-enforcement-ramps-up-efforts-to-combat-retail-theft-ahead-of-holiday-season/3275438/, (last visited Jan. 11, 2024).............................................21

Matthew E. Thomas, Historic Powder Houses of New England: Arsenals of American Independence 16-17 (2013) .................................................15

PLAINTIFFS' REPLY RE: OSC FOR PRELIM. INJUNCTION

Throughout their Response to Order to Show Cause for Preliminary Injunction and Opposition to Preliminary Injunction, ECF #20 ("Opp."), Defendants claim that Section 26806 "will assist law enforcement . . . efforts to investigate, deter, [] prosecute[,] . . . combat[] . . . [and] solv[e] . . . gun crimes," including "curb[ing]" crime and "provid[ing] key evidence in prosecuting" violators, and thus solving "unique problems [faced by] law enforcement" bringing charges that "require evidence. . . ." Opp. 1, 20, 21, 22.  On that basis, Defendants ask this Court to dispense with numerous constitutional protections to make it easier for California to enforce the law.  But while this approach might sound appealing to state regulators who hold a dim view of constitutional rights, the Sixth Circuit has explained that "many (if not most) [constitutional] violations would benefit the police in some way: It could be safer for police without a warrant to kick in the door in the middle of the night rather than ring the doorbell during the day, and peering through everyone's windows might be a more effective way to find out who is cooking methamphetamine (or engaging in any illegal behavior, for that matter).  But the Bill of Rights exists to protect people from the power of the government, not to aid the government." *Morgan v. Fairfield County*, 903 F.3d 553, 563 (6th Cir. 2018).  Additionally, the crime-fighting utopia envisioned by Defendants cannot be met under Section 26806 because as Defendants noted in their opposition, "the law forbids dealers from using, sharing, allowing access to, or otherwise releasing the recordings" except by "search warrant or court order," of which neither of these exceptions are used to track and locate criminals and bring them to prosecution. The very basis of this law is a false premise. Opp 1-2.  This Court should enter a preliminary injunction against Section 26806 in order to enforce the constitutional rights at issue here, and "protect people from the power of [California] government." *Id.*

PLAINTIFFS' REPLY RE: OSC FOR PRELIM. INJUNCTION

# I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

## A.   SECTION 26806 VIOLATES THE FIRST AMENDMENT

### 1.   Section 26806 has a clear chilling effect on protected speech and association.

This case is not about stopping crime. If it were, all retail stores would face the same onerous requirements. This case is about the government acting in an overbearing manner to capture as much private conversation as possible with no limitations and no real government interest that can be accomplished through Section 26806. Claiming that Section 26806's placement of Orwellian telescreens into businesses and homes has no chilling effect upon gun owners in California, Defendants make the head-scratching claim that "nothing about [Section 26806] proscribes, regulates, or punishes any sort of speech or association or says anything about the content of the recordings themselves." Opp. 4. And because Section 26806 does not "'proscribe or even regulate speech,'"[1] Defendants argue, "Plaintiffs' allegations that section 26806 chills their First Amendment rights are not objectively reasonable. . . ." *Id.* But that is *precisely* what it means for a law to have a ***chilling effect*** – it causes people to alter their lawful behavior without the need for direct government action. Section 26806 does not simply "listed to one's speech in order to obtain a firearm," it goes far beyond that. Opp. 5:16-17. What can Defendants possibly gain by recording families in their pajamas?

Professor Frederick Schauer has explained that "a chilling effect occurs when individuals seeking to engage in activity protected by the First Amendment are deterred from so doing by governmental regulation not specifically directed at that protected activity." F. Schauer, <u>Fear, Risk and the First Amendment: Unraveling</u>

---

[1] The cases Defendants cite in support of this claim have nothing to do with the issue here. Practicing by headnote, Defendants first cite *Legi-Tech, Inc. v. Keiper*, 601 F. Supp. 371, 379 (N.D.N.Y. 1984), which dealt with an "overbreadth" challenge to "plaintiff's exclusion from access" to a "public . . . news service" (*id.* at 372) – not any alleged chilling effect on protected speech or association. Next, the Ninth Circuit's reference in *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 896 (2018), to a law that "does not regulate conduct" had to do with an inquiry whether it was a "an impermissible conduct-based regulation" – not whether it had a chilling effect on speech.

2

the Chilling Effect, 58 B.U. L. Rev. 685, 693 (1978).  *See also Speiser v. Randall*, 357 U.S. 513, 529 (1958) (striking down loyalty oaths "which must inevitably result in suppressing protected speech"); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958) (refusing to require the production of membership lists, even though publicization of such lists did not directly "proscribe[], regulate[], or punish[]" membership in the organization); *Nordyke v. Santa Clara Cnty.,* 110 F.3d707 (9th Cir. 1997) (the Ninth Circuit has held that "[a]n offer to sell firearms or ammunition in speech that 'does no more than propose a commercial transaction.' Such an offer is, therefore, commercial speech within the meaning of the First Amendment.

Defendants also claim there can be no chilling effect caused by Section 26806 because "the law tightly limits the use or release of the recordings. . . ."[2] Opp. 5.  But what Defendants call "extremely limited circumstances" in reality are *anytime the government wants any recording for any reason*.  Indeed, Section 26806 broadly demands that a dealer "shall allow access to the system to an agent of the department or a licensing authority conducting an inspection of the licensee's premises, for the purpose of inspecting the system for compliance with this section. . . ."  Section 26806(b)(2).  There is nothing in "access to the system" that would prevent a California official from, for example, making a copy of the recordings contained in the system in order to verify "compliance."  And, regulating only the licensee, Section 26806 does nothing to control use of such recordings once they fall into California's hands.[3]  *Cf.* Opp. 5 (promising that "the government plainly is

---

[2] Focusing on "release" of Section 26806 recordings, Defendants omit any discussion of the fact that *creation* of such recordings is ongoing and pervasive, occurring in multiple places (not only in gun stores but also in private homes), 24-hours a day.

[3] Note that just last summer, California DOJ had a major breach of gun owner private information that was leaked publicly in violation of the law. Fear of information getting into the wrong hands when handled by the State is a very real fear for gun owners in California. https://oag.ca.gov/news/press-releases/california-department-justice-alerts-individuals-impacted-exposure-personal (last visited Jan. 10, 2024).

3

not listening to transactions").  Defendants apparently miss the hollowness of their assurance that *only the government* (the violator) will have access to recordings made in violation of numerous constitutional rights.  Interestingly enough, the only party restricted by Section 26806 from accessing and using the recordings *is the gun dealer* (the one whose rights are being violated).  *Id.* at subsection (b) ("A licensee shall not use"); (b)(1) ("A licensee shall allow access").

Finally, Defendants opine that no chilling effect can occur here because "a similar law in Illinois has been in effect since 2021."  Opp. 5.  Defendants fault Plaintiffs for failing to provide "evidence" of the chilling effect of a different law recently enacted in another state as if that were necessary to prevail here.  In any event, the Illinois statute Defendants reference, 430 Ill. Comp. Stat. Ann. 68/5-50, involves only "*video* surveillance of critical areas," only takes place in *retail* facilities, and requires signage stating only that "YOUR IMAGE MAY BE RECORDED," none of which involve the same chilling effect on spoken words or in private, confidential conversations at issue here.

### 2.    Section 26806 violates the right to speak anonymously.

Citing no authority, Defendants claim that the right to speak anonymously only applies to written speech that is "published pseudonymously or anonymously, untethered from the individual's face and voice."  Opp. 6.  Defendants fault Plaintiffs for failing to provide any cases explicitly finding that First Amendment anonymity applies to spoken words.  But although Defendants are eager to cast stones (*see* Matthew 7:3-5), neither do they provide a citation to any authority finding that anonymity *does not* apply to an individual who speaks in places "open to the public."  Indeed, it is doubtful that any such authorities exist.

Quite to the contrary, numerous cases confirm that the right to anonymity applies to all forms of speech.  *See, e.g.*, *Buckley v. Am. Const. L. Found.*, 525 U.S. 182, 199 (1999) (striking down requirement that petition circulators wear name badges because "[t]he injury to speech is heightened … because the badge

4

requirement compels personal name identification at the precise moment when the circulator's interest in anonymity is greatest.").  As one district court explained, striking down a mask mandate, "there can be no doubt that … prohibiting the … concealing identity in public, burdens the free speech and association rights," including the "rights to anonymous speech and association." *Am. KKK v. City of Goshen*, 50 F. Supp. 2d 835, 838, 840 (N.D. Ind. May 4, 1999) (collecting similar cases).  These and a legion of other cases soundly reject Defendants' unsupported claim that "there is nothing pseudonymous or anonymous about appearing in public. . . ."  Opp. 6.[4]  There is also a distinction here between the process of filling out paperwork to complete the firearm transaction and having every breath you or anyone else breathes caught on recording. Defendants seem to think that since you are submitting your name to purchase a firearm, then you should be open to all the surveillance they choose to use against gun owners. Opp. 6.

**3.    Section 26806 constitutes odious viewpoint discrimination.**

Claiming that Section 26806 does not impose viewpoint discrimination against supporters of the Second Amendment, Defendants claim that the law "<u>uniformly</u> requires businesses in a <u>particular</u>, highly regulated industry to take specific security measures."  Opp. 6.  In other words, Section 26806 is broad, in that it is specific.  As journalist M. Stanton Evans once said, "he who writes the resolved clause wins the debate."[5]  Indeed, by singling out a "particular" type of business and imposing an Orwellian monitoring requirement on it alone, Section 26806 bears out California's clear animus against gun owners.  Defendants do not

---

[4] Defendants also make much ado of the fact that *some* of those who frequent gun stores end up purchasing firearms, the acquisition of which requires identification.  Opp. 6.  Of course, not everyone who visits a gun store buys a firearm (as opposed to accessories, gunsmithing services, or merely to "shoot the breeze" – including complaints about government officials – without making any purchase at all).  *See* Compl. ¶¶ 120-24.  But more importantly, Section 26806 compels gun dealers to create a permanent audio/video record which preserves *not only the identity* of the speaker but also *the content of his speech* (which otherwise would remain private between him and others within the store).

[5] *See also* Opp. 10 ("Defined at the proper level of specificity, then. . . .").

PLAINTIFFS' REPLY RE: OSC FOR PRELIM. INJUNCTION

point out any similar requirements posed on other purportedly "highly regulated industries" – especially not within the *private homes* of those in such industry.  Not to mention, this allegedly "highly regulated industry" is constitutionally protected.  Liquor producers,[6] mines,[7] and junkyards[8] are not.

Defendants argue that "Section 26806 does not require anyone to disclose their protected group affiliation, beyond what is inherently disclosed by appearing in public. . . ."  Opp. 7.  That is like claiming that requiring video cameras be installed in all NAACP meetings "does not require anyone to disclose their protected group affiliation, beyond what is inherently disclosed by appearing" at a meeting of NAACP members.  *But see NAACP*, 357 U.S. at 460.  Elsewhere, Defendants claim that visiting a gun store constitutes "appear[ing] … in a public place."  Opp. 7.  Unsurprisingly, Defendants offer no authority for their claim that private businesses are akin to sidewalks, parks, or town squares.  Nor do Defendants attempt to explain how a home-based dealer who operates by appointment only has somehow opened his private home to the public.  At the minimum, Section 26806 violates multiple constitutional rights, impermissibly discriminating against gun dealers *because* they transact business in constitutionally protected "arms" that are politically unpopular in California.

### 4.    Section 26806 compels speech.

Claiming that Section 26806 does not compel speech, Defendants opine that it merely requires transmission of "'purely factual and uncontroversial information. . . .'"  Opp. 7 (citing *Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 651 (1985)).[9]  Unsurprisingly, Defendants do not attempt to wrestle with *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361 (2018), the Supreme Court's most recent word on the subject.  There, the Court rejected the

---

[6] *Colonnade Catering Corp. v. United States*, 397 U.S. 72 (1970).
[7] *Donovan v. Dewey*, 452 U.S. 594 (1981).
[8] *New York v. Burger*, 482 U.S. 691 (1987).
[9] The Ninth Circuit case Defendants cite relies entirely on *Zauderer*.

6

notion that California could require pro-life clinics to inform patients that California will fund their abortions, opining that *Zauderer* does not have any application to "disclos[ing] information about state-sponsored services—including abortion, anything but an 'uncontroversial' topic." *Id.* at 2372.  Likewise, here, California requires gun dealers to post signage informing their customers that "state-sponsored" audiovisual surveillance is in progress – monitoring all who engage in Second Amendment commerce.  Certainly, the ongoing violation of numerous constitutional rights by California through an Orwellian telescreen is "anything but an 'uncontroversial' topic."  Defendants fail to address Judge Suddaby's finding in *Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 344 (N.D.N.Y. 2022), explaining that a New York law requiring property owners post signage allowing gun owners onto their property is "coerc[ive]" and "controversial."  *Id.* at 345.

## B.   SECTION 26806 VIOLATES THE SECOND AMENDMENT

### 2.   SECTION 26806 IMPLICATES THE SECOND AMENDMENT'S TEXT.

#### a.   *Defendants invite the Court to elevate dicta over express holdings.*

Claiming that the Second Amendment is not even implicated, Defendants argue that Section 26806 is nothing more than a "'law[] imposing conditions and qualifications on the commercial sale of arms,'" and thus is "'presumptively lawful.'"  Opp. 8 (citing *Heller* at 626-27).[10]  Defendants' argument contains at

_____

[10] Defendants make a number of flagrant misrepresentations about the Supreme Court's statements.  First, they cite *Bruen* for the proposition that "the Second Amendment is not a 'regulatory straightjacket'" (Opp. 8), but conveniently omit that neither is it "a regulatory blank check."  *Bruen*, 142 S. Ct. at 2133. Second, Defendants claim the Second Amendment allows an amorphous "'variety' of gun regulations" (Opp. 8), but quote Justice Kavanaugh's *concurrence*, which is not the law.  Third, in spite of the Court's repeated refusals to interest-balance, Defendants' claim that the Second Amendment "does not prevent states from . . . 'experiment[ing] with reasonable firearms regulations' to address threats to the public."  Opp. 8.  But this utterly misrepresents *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010), which only rebutted claims that incorporation of the Second Amendment would have violated "principles of federalism" and eliminated state gun laws by "stifl[ing] experimentation."  *Id.* at 783.  The Court's observation that the passage of laws *will continue* was no crystal-ball endorsement of their constitutionality.

7

least two errors.

First, Defendants seem to believe that any restriction they unilaterally slap with the label "condition[] [or] qualification[] on the commercial sale of arms" thereby becomes one.  But not every law that tangentially involves the transfer of a firearm is a "condition[] [or] qualification[] on the commercial sale of arms." Otherwise, all manner of clearly unconstitutional requirements would be found automatically constitutional.  *See* Compl. ¶¶ 202-07.  Instead, "[o]f course, not every regulation on the commercial sale of arms is presumptively lawful."  *Rigby v. Jennings*, 630 F. Supp. 3d 602, 613 (D. Del. 2022).[11]  Without any further exposition as to *which* sorts of laws the Supreme Court presumed would have historical support when challenged, no court can label a given restriction definitively "commercial" in nature and thus definitively exempt it from the *Bruen* framework.

Second, Defendants confuse "*presumptively* lawful" with *conclusively* lawful.  But *Heller*'s passing references (in *dicta*) to *assumed* historical traditions that the Court *expected* would be uncovered in *future* challenges have no bearing on *Bruen*'s test, which must be applied each time the Second Amendment's plain text covers a challenger's conduct.  Indeed, *Bruen* explicitly instructs that its historical analysis is required in every case, stating that its methodology is the "***only***" way for a court to conclude a restriction to be constitutional.  142 S. Ct. at 2126; *see also Heller*, 554 U.S. at 626 ("we do not undertake an exhaustive historical analysis today"); *id.* at 635 ("there will be time enough to expound upon the historical justifications … if and when those exceptions come before us.").  Defendants offer no explanation why *dicta* should be elevated above the Court's express holdings

---

[11] For example, striking down 18 U.S.C. § 922(k)'s ban on obliterating a firearm's serial number, a federal district court flatly rejected the government's contention that the law was constitutional without historical analysis based on the government's characterization of it as a commercial regulation. *United States v. Price*, 635 F. Supp. 3d 455, 459 (S.D. W. Va. 2022).

PLAINTIFFS' REPLY RE: OSC FOR PRELIM. INJUNCTION

demanding a historical analysis.[12]

### b.   The "Right to Keep and Bear Arms" clearly includes acquisition.

Next, Defendants claim that "Plaintiffs do not even attempt to demonstrate[13] that the law actually regulates or infringes upon individuals' ability to 'keep and bear Arms.'" Opp. 9. But Section 26806 clearly "regulates" (*id.*) the acquisition of arms, a natural prerequisite to keeping them. Confusingly, Defendants at first appear to concede that the Second Amendment protects not only "possession or use of arms," but also "*related conduct*." *Id.* (emphasis added). Indeed, courts almost categorically affirm that the Second Amendment protects numerous rights ancillary to keeping and bearing – most especially, acquisition. *See* Compl. ¶¶ 192-94 (compiling cases on the issue). This Court is no exception. *See Boland v. Bonta*, 2023 WL 2588565, at *5 (C.D. Cal. Mar. 20, 2023) ("The Second Amendment also protects attendant rights that make the underlying right to keep and bear arms meaningful."); *see also B&L Prods., Inc. v. Newsom,* 2023 WL 7132054, at *13 (C.D. Cal. Oct. 30, 2023) (same). Yet Defendants also posit that the Second Amendment's protections do not "include the commercial sale of firearms" because the text only references the ability to "'have' and 'carry' weapons." Opp. 9; *see also id.* at 11 ("the sale of arms … does not implicate the Second Amendment's

---

[12] Indeed, once tested, a number of *Heller*'s previously assumed historical traditions already have been shown to be erroneous. *See, e.g., Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023) (successful as-applied challenge to 18 U.S.C. § 922(g)(1) (felons)); *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 688 (6th Cir. 2016) (allowing a challenge to 18 U.S.C. § 922(g)(4) (mentally ill) to proceed). If use of Supreme Court *dicta* in lieu of the *Bruen* framework was appropriate, none of these successful challenges would have cleared the starting gate.

[13] Defendants conveniently overlook the numerous ways Plaintiffs have demonstrated how Section 26806 infringes their Second Amendment rights. For example, Section 26806 forces Plaintiff Richards to "stop being an FFL" – a constitutionally protected profession – "or risk exposing his clients and family to privacy violations because of the constant recording" *within his own home*. Compl. ¶ 23; *see also id.* ¶¶ 212, 464 ("Section 26806 chills a lawful person's desire to exercise their constitutional right to bear arms out of fear of being constantly observed and recorded by an administration hostile towards gun ownership. . . .").

---

PLAINTIFFS' REPLY RE: OSC FOR PRELIM. INJUNCTION

text"); *id.* ("caus[ing] some licensed firearms dealers to go out of business … does not implicate the Second Amendment's text.").

But if there is no right to acquire arms, and no right to sell them, Defendants betray the discredited belief that there is *no individual right to keep or bear arms at all*.  Indeed, with no right to buy or sell, Defendants could ban all firearms commerce, with the only remaining option to manufacture them oneself.  Yet in other litigation before this Court, Defendant Bonta has claimed that there is *no right to manufacture firearms, either*.  *See* Defendants' Opposition to Motion for Preliminary Injunction at 14-15, *Def. Distributed v. Bonta*, No. 2:22-cv-06200-GW-AGR (C.D. Cal. Oct. 3, 2022) ("There is simply no textual support or authority … that … the Second Amendment [] includes the right to 'manufacture' or 'assemble' a firearm, let alone the right to own any machine or machine part that could conceivably be used to manufacture a firearm.").  In Defendants' world, then, there is *no right to acquire a firearm at all*, thus nullifying the Second Amendment's guarantees entirely.  "What a marvelous, Second Amendment loophole!"  *United States v. Hicks*, 649 F. Supp. 3d 357, 359-60 (W.D. Tex. 2023).[14]

Clearly regulating the protected right to acquire arms, Section 26806 imposes a surveillance requirement on *all* commercial firearm sales, sales that now cannot occur *without* surveillance.  It seems unlikely that Defendants would defend a law that similarly conditioned the right to post a Tweet on first allowing the government access to a phone's camera to take a picture of the poster.  *See Bruen*, 142 S. Ct. at 2156 (Second Amendment "is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'").

---

[14] Of course, Defendants' theory is patently false.  Constitutional rights "implicitly protect those closely related acts necessary to their exercise," *Luis v United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring in the judgment), and Defendants' own cited authority (Opp. 10-11) stands for the proposition that "the core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms." *Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017); *see also* Compl. ¶ 197 n.21.

### c.     Defendants urge prohibited interest balancing.

In a final attempt to shirk their burden to demonstrate a robust historical tradition supporting Section 26806, Defendants seek to revert to the prohibited "two-step inquiry" used by the courts of appeal prior to *Bruen*.  Specifically, Defendants urge that only regulations that completely "prohibit[]" or "prevent" exercise of Second Amendment rights constitute "infringe[ments]." Opp. 10 (disputing that a law which merely "interferes with" or "has *any* tangential effect" on Second Amendment rights can be subject to *Bruen*'s analysis); *see also id.* at 11-12 ("meaningfully constrain[]" and "overly burden[]"); *Young v. Hawaii*, 896 F.3d 1044, 1068 (9th Cir. 2018) (explaining, prior to *Bruen*, that only laws that "destroy" rights are unconstitutional without application of scrutiny). On the contrary, *Heller* and *Bruen* "expressly rejected the application of any 'judge-empowering "interest-balancing inquiry"'" which examined whether a law significantly "burdened" a "core Second Amendment right."  *Bruen*, 142 S. Ct. at 2126, 2129.

Defendants claim that this Court cannot reach *Bruen*'s historical framework because there is a "sparse evidentiary record" that is "devoid of evidence" as to the numerical effects on firearms commerce.  Opp. 11-12.  If anything, Defendants' objection goes more to the irreparable harm analysis than whether *Bruen*'s historical framework is implicated.  The Supreme Court certainly has never said that a plaintiff must show a "meaningful" (Opp. 12) infringement of his rights before the government is required to justify its regulation by reference to the historical tradition.  Such a holding would put the cart before the horse, and it would invite prohibited interest balancing.

Citing no authority, Defendants posit that there is a "proper level of specificity" at which to analyze the Second Amendment's text – one that just so happens to skew in Defendants' favor.  Opp. 10.  *Bruen* puts it far more plainly: when the Second Amendment's plain text "covers an individual's conduct," the government must bear its historical burden.  142 S. Ct. at 2129-30.  A law requiring

11

mass surveillance of firearm sales *or else they cannot happen* clearly "covers" one's right to acquire (to "keep") "arms."  Because Plaintiffs belong to "the people" and the firearms they seek to purchase from California's dealers constitute "arms," the textual inquiry ends here, and the burden shifts to Defendants.  Compl. ¶ 194.

                                 *d.*    *Defendants advance the shocking claim that exercise of Second Amendment rights is a public affair.*

      Misunderstanding Plaintiffs' argument, which focused on the fact that exercise of one constitutional right cannot be conditioned on forfeiture of another (Compl. ¶¶ 194, 426-46), Defendants offer the truly shocking claim that Section 26806 (which requires audio/video recording of all gun sales) does not infringe Second Amendment rights because "someone's status as a firearm purchaser has long been subject to public disclosure."  Opp. 12 (*citing Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002).  But the case on which Defendants rely involved an "informational privacy rights" challenge (*id.* at 1092), not the Second Amendment. In fact, the Second Amendment claims were dismissed in that case based on the Ninth Circuit's obviously wrong holding that "the Second Amendment affords only a ___collective right___ to own or possess guns or other firearms. . . ."  *Id.* (emphasis added).  Defendants' use of this expressly repudiated holding to support its claim that California may, without implicating constitutional rights, ___*publicize the names,*___ ___*addresses, makes, models, and serial numbers of all California gun owners*___, should itself provide any further needed justification to strike down Section 26806's tyrannical regime.

      **2.**    **Defendants Utterly Fail to Bear Their Historical Burden.**

      Defendants insist on watering down Bruen's methodology in a case that presents no "unprecedented societal concerns or dramatic technological changes." Bruen  at 2132; see Opp. 13-14.  Claiming audiovisual surveillance itself is a "dramatic technological change" warranting a loosening in analogical stringency, Defendants invert Bruen's language to circularly suggest that a high-tech form of

PLAINTIFFS' REPLY RE: OSC FOR PRELIM. INJUNCTION

infringement is its own justification for a more permissive standard to justify that infringement.  Opp. 14.  In other words, Defendant's argument is this:  if only the Founders could have seen how pervasively we can violate rights in the 21st Century, surely they would have approved.  On the contrary, Bruen's discussion of "dramatic technological changes" was in the context of novel "regulatory challenges posed by firearms today."  Bruen at 2132 (emphasis added).  If anything, the more pervasive and dystopian a modern infringement is, the more protective the Bill of Rights must be.[15]  *See, e.g., United States v. Jones*, 565 U.S. 400 (2012) (GPS tracking); *Kyllo v. United States*, 533 U.S. 27 (2001) (thermal imagers).  This is no "absurd argument."  Opp. 14.

Defendants' oft-repeated platitudes of 'public safety' and 'preventing crime' have been concerns since the Founding.  Accordingly, Defendants cannot meet their burden with merely "relevantly similar" analogues.  *Bruen* at 2132.  Instead, the historical inquiry is "fairly straightforward" and, despite their vociferous objections (Opp. at 14), Defendants must proffer "distinctly similar" historical evidence that addressed the same societal issues the same way as today – for example, historical laws requiring Founding-era gunsmiths to record the appearances and conversations of patrons.  Id. at 2131; Compl. ¶¶ 214, 216.  Defendants fail to evince such a tradition, as none ever existed.

Although Defendants' lesser, purportedly "relevantly similar" analogues will not suffice to uphold Section 26806, Plaintiffs emphasize several analogical errors.  First, Defendants cite two cases and one law review article for the proposition that historical regulations on commercial sales were "widespread."  Opp. 14.  But Defendants fail to identify specific examples, and "we are not obliged to sift the historical materials for evidence to sustain [Defendants'] statute.  That is

---

[15] *See Minn. Star & Trib. Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 583 n.6 (1983) (observing that "when we do have evidence that a particular law would have offended the Framers, we have not hesitated to invalidate it on that ground alone").

PLAINTIFFS' REPLY RE: OSC FOR PRELIM. INJUNCTION

[Defendants'] burden." *Bruen* at 2150.  In any case, *United States v. Serrano*, 651 F. Supp. 3d 1192, 1211-12 (S.D. Cal. 2023), and *United States v. Holton*, 639 F. Supp. 3d 704, 711-12 (N.D. Tex. 2022), each cite *Teixeira*, 873 F.3d at 685, and Robert J. Spitzer, Gun Law History in the United States and Second Amendment Rights, 80 L. & Contemp. Probs. 55, 76 (2017).[16]

The historical laws cited in *Teixeira* (at 685) bear no resemblance to Section 26806 and fail both *Bruen's* "how" and "why" metrics (i.e., mechanisms and motivations) because these laws imposed restrictions on firearm sales to Indians outside the colonies – in effect, restrictions on sales to foreigners and potential belligerents at the time (today's foreign nationals, *see* 18 U.S.C. § 922(g)(5)), not members of "the people."  *See id*.  None imposed anything close to Section 26806's mass-surveillance requirements on those within the community of "the people."

As for Spitzer, the cited page refers only to (i) a 1652 "New York" law (actually, a Dutch colonial law in New Netherland, unrelated to American tradition, Spitzer, *supra*, at 76 n.142), (ii) a 1631 Virginia law (an early census untethered from surveilling firearm commerce)[17], and (iii) a 1651 Virginia law (which were "Articles at the Surrender of the Countrie of Virginia" following conflict between colonial and English governments,[18] Spitzer, *supra*, at 76 and n.144).  Spitzer then references taxation laws from the analytically irrelevant 1860s (Spitzer, *supra*, at 76).  *See Bruen* at 2137 ("19th-century evidence was 'treated [only] as mere confirmation. . . .'").  These laws either predate or postdate the Founding anywhere from many decades to a century and thus "shed[] little light on how to properly interpret the Second Amendment."  Id. at 2144.  Moreover, none of these laws employed comparable mechanisms (mass surveillance of people and transactions) or motivations (discouraging or otherwise recording sales to prohibited persons)

---

[16] Spitzer's late-19th-century firearm taxes and early gunpowder-storage laws that are inapposite for the reasons discussed below.
[17] http://tinyurl.com/2k7vd77r  ("Act LVI").
[18] http://tinyurl.com/yrptv8mu.

PLAINTIFFS' REPLY RE: OSC FOR PRELIM. INJUNCTION

under Bruen's "how" and "why."

Second, Defendants cite gunpowder storage and firearm inspection laws via references to a book by William J. Novak without providing any primary sources – let alone dates to confirm these laws' analytical relevancy. *See* Opp. 15 (referencing "similar legal schemes," a "series of statutes," and "other laws"). But *see Bruen* at 2150 (warning Defendants about failing to "sift" the record). Defendants then string-cite some 19th-century state laws and city ordinances to the same effect. Opp. 15, 16. *But see Bruen* at 2137 ("19th-century evidence was 'treated as mere confirmation. . . .'"). In addition to their temporal irrelevance, these laws bear no resemblance to Section 26806 and fail *Bruen's* analogical metrics.

Gunpowder laws were products of their time, when rudimentary gunpowder was volatile and hazardous, with poor storage conditions and careless handling risking widespread explosive and fire damage to entire towns.[19]   In contrast, modern smokeless powder used in today's ammunition has exponentially greater stability and is exempt from explosive storage requirements.

See 18 U.S.C. § 845(a)(4).  These historical fire-prevention laws did not surveil gun owners, place the "eyes" and "ears" of government inside homes and businesses, or seek to prevent crime.

Similarly, firearm inspection laws (Opp. 15, 16) were not surveillance measures aimed at crime prevention, but rather quality-control laws to ensure firearms would be effective and not explode in users' hands.[20]   Moreover, as Defendants' Granata cite admits, a distinct feature of these inspection laws was a

---

[19] Matthew E. Thomas, Historic Powder Houses of New England: Arsenals of American Independence 16-17 (2013).

[20] *See*, e.g., An Act to Provide for the Proof of Fire Arms Manufactured Within This Commonwealth, ch. 81, Acts and Resolves of Massachusetts: 1804-1805, at 111 (Mar. 8, 1805), http://tinyurl.com/bdzmhmyy (untested firearms "may be introduced into use which are unsafe and thereby the lives of the Citizens be exposed").

PLAINTIFFS' REPLY RE: OSC FOR PRELIM. INJUNCTION

nominal fine for noncompliance.[21]   Section 26806 quite differently subjects noncompliant dealers to license forfeiture, closure of businesses, and loss of livelihoods.  Cal. Penal Code § 26800(a); *see also Heller* at 633-34 (comparing historical penalties to modern consequences is a valid consideration).

Third, Defendants proffer just three laws ranging from 1881 to 1911 imposing recordkeeping requirements on gun dealers.  Opp. 16.  Despite coming far too late (unless to confirm the same tradition at the Founding), these three laws hardly evince a national tradition.  *Bruen*, 142 S. Ct. at 2153, 2156 (dispensing with "outliers").  Finally, Defendants' citation to the National and Federal Firearms Acts is inapposite.  *Bruen* at 2154 n.28 (refusing to address "20th-century evidence [which] does not provide insight into the meaning of the Second Amendment.").

At bottom, Defendants' purported "analogues" are too few, too late, and too irrelevant to establish an early American tradition of perpetual and pervasive surveillance of firearm commerce.  Section 26806 violates the Second Amendment.  Indeed, the closest analogue to Section 26806 is from 1949 – the government of Oceania, with its ubiquitous posters entitled "Big Brother is watching you," with eyes that seemed to follow the viewer wherever he or she moved.  *See* George Orwell, Nineteen Eighty-Four, Penguin Classics ed. (London: Secker and Warburg, 1949).

### 3.    Section 26806 Violates the Fourth Amendment.

Defendants claim that Section 26806 does not violate Fourth Amendment rights, first because there is a "'diminished expectation of privacy'" for "operators of closely regulated industries."  Opp. 17.  Citing a Ninth Circuit case, Defendants broadly assert that, apparently *without exception*, **___any___** search of "commercial property used in [a] 'closely regulated' industr[y] [is] constitutionally permissible." *Id.* (citation omitted).  In other words, Defendants seem to interpret "diminished expectation of privacy" as "extinguished expectation of privacy."  The Ninth

---

[21] http://tinyurl.com/yz8syyda  at 40, Add. 35 (imposing a fine of $10).

PLAINTIFFS' REPLY RE: OSC FOR PRELIM. INJUNCTION

Circuit says no such thing.  Rather, administrative searches of highly regulated industries are permissible, at most, if performed "to further a regulatory scheme." *Kilgore v. City of South El Monte*, 3 F.4th 1186, 1192 (9th Cir. 2021) ("to ensure compliance with the … Act"); *Verdun v. City of San Diego*, 51 F.4th 1033, 1039 (9th Cir. 2022) ("for purposes of checking compliance with federal laws").  Quite the opposite, when "the 'primary object' of the search is to 'gather evidence of criminal activity,'" a "criminal warrant supported by probable cause[] is required. . . ." *United States v. Grey*, 959 F.3d 1166, 1178 (9th Cir. 2020); *see also Burger*, 482 U.S. at 693 (distinguishing between "searches undertaken solely to uncover evidence of criminality and [those] to enforce a comprehensive regulatory scheme").

On this point, Defendants' own briefing undermines their Fourth Amendment defense, as they repeatedly insist that Section 26806 is a crime-prevention measure designed to "assist law enforcement in combatting … gun crimes," specifically in "provid[ing] key evidence" of criminal activity. Opp. 1, 2; *see also id.* at 20 ("preventing gun theft and crime justify any intrusion," and Section 26806 "assist[s] in 'related enforcement efforts'"); *id.* at 21 (using Section 26806 to provide "evidence" to prosecute straw purchasers).  None of these stated objectives have any connection to the "licensing," "regulations," or "reporting requirements" that are imposed on gun dealers.  Rather, Section 26806 is best described as "a ruse for a general rummaging in order to discover incriminating evidence" of crimes by dealers' *customers*.  *Florida v. Wells*, 495 U.S. 1, 4 (1990).

Second, insisting that "firearms dealers are a closely regulated industry" pursuant to "[b]inding precedent," Defendants recount the litany of licensing and regulatory requirements placed on gun dealers, including "warrantless … inspections from federal and state authorities" to ensure compliance with regulatory schemes.  Opp. 17-18.  But as Plaintiffs have explained, that finding that gun dealers have been "highly regulated" is now suspect after *Bruen* (which requires

17

firearms regulation to be deeply rooted in history), particularly since "[f]ederal regulation of the interstate traffic in firearms is not as deeply rooted in history. . . ." *United States v. Biswell*, 406 U.S. 311, 315 (1972).  At a minimum, after *Bruen*, there is no reason for this Court to *expand* the doctrine to cover Section 26806's Orwellian general searches for criminal evidence unconnected to compliance with any regulatory scheme.

Third, apparently not understanding that the Supreme Court's 2012 revitalization of the Fourth Amendment's baseline protection of private property rights provides an <u>independent basis</u> for relief, Defendants demur only that *United States v. Jones*, 565 U.S. 400 (2012) (GPS tracking device placed on a vehicle parked in public), and *Florida v. Jardines*, 569 U.S. 1 (2013) (drug dog sniff of a home's front porch), "occurred outside the context of a highly regulated industry and, thus, are inapposite."  Opp. 18.  On the contrary, *Jones* (cited in *Bruen*) and *Jardines* establish a *broad principle of constitutional law* that applies to all Fourth Amendment claims,[22] just as *Bruen* establishes a broad framework that applies in all challenges under the Second Amendment.[23] What is more, *Jardines* seems directly on point here, having rejected the notion that, without a warrant, the government can have its dog enter a home's porch to sniff for drugs.  569 U.S. at 11. Here, Section 26806 permits the government to digitally enter the home and install pervasive audiovisual surveillance recording equipment. In other words, a *far more intrusive* search in a *far more sensitive* place.  *See Lange v. California*, 141 S. Ct. 2011 (2021) (applying *Jones* to reject California's warrantless entry into a home, explaining "the sanctity of a person's living space" is "'first among

---

[22] *See United States v. Vargas*, 2014 U.S. Dist. LEXIS 184672, at *14 (E.D. Wash. Dec. 15, 2014) ("The Supreme Court's recent decisions in [*Jones* and *Jardines*] discuss and clarify the Fourth Amendment analysis the Court is to employ when analyzing the constitutionality of a search conducted by law enforcement.").

[23] Ironically, this is the same flawed argument that Defendants make about the Second Amendment – arguing that, because Section 26806 is merely a "condition or qualification on the commercial sale of arms," *Bruen* does not apply. *See* Opp. 9.

18

PLAINTIFFS' REPLY RE: OSC FOR PRELIM. INJUNCTION

equals,'" and where the Fourth Amendment "'draw[s] a firm line'"); *see also Caniglia v. Strom*, 141 S. Ct. 1596 (2021) (declining to "'expand the scope of … exceptions to the warrant requirement to permit warrantless entry into the home'" to seize firearms pursuant to a "welfare check"). It is hard to see how Fourth Amendment property rights do not prevent California's prying eyes being mounted on the wall of a marital bedroom that also happens to contain a display case holding firearms. Finally, Defendants' repeated appeal to the "highly regulated industry" exception falls flat, because that doctrine applies in the context of judicially-created notions of *privacy* – not to foundational *property* rights revitalized in *Jones*. Defendants offer no case that applies that doctrine to permit what would otherwise be a blatant violation of private property rights. *See Gem Fin. Serv., Inc. v. City of New York*, 2023 U.S. Dist. LEXIS 131092 (E.D.N.Y. July 28, 2023) at *19-20, 24 (citing *Jardines*, and rejecting the notion that "'obtain[ing] information by physically intruding on' a business's 'papers'" is "immune from Fourth Amendment scrutiny" simply because they are "records that a business is required to maintain" and thus "a closely regulated industry").

Fourth, Defendants deny "that section 26806 is a general warrant, giving government officials limitless access to dealers' homes and businesses. . . ." Opp. 19. In response, Defendants demur first that "section 26806 requires monitoring only in **limited, public spaces**," which Defendants define as all "publicly accessible areas of firearm dealers' business premises," including the private homes of home-based dealers.[24] *Id.* at 1, 19 (emphasis added). Second, Defendants claim that Section 26806 "forbids disclosure of the recordings subject to **extremely limited exceptions**," which Defendants explain to include broadly any claimed "inspection by the [California DOJ] or licensing authority for which no warrant is

---

[24] Compl. ¶¶ 23, 24, 30, 33. Never once in their brief do Defendants deny that Section 26806 requires government surveillance within the private homes of California's home-based dealers.

PLAINTIFFS' REPLY RE: OSC FOR PRELIM. INJUNCTION

otherwise required. . . ."[25]  *Id.* at 2, 19 (emphasis added).  And third, Defendants claim that Section 26806 narrowly "**defin[es] the circumstances** where recording is required," which Defendants note is "**all** entries and exits," "**[a]ll** areas where firearms are displayed," and "**[a]ll** points of sale," and **all** times of the day and night ("continuously 24 hours a day").  *Id.* at 2, 19.  Thus, translating Defendants' Orwellian newspeak, by "public spaces" Defendants mean "private homes," by "limited exceptions" Defendants mean "at any time upon demand," and by "defin[ed] . . . circumstances" and "limited . . . spaces" Defendants mean "all spaces and in all circumstances."  Thus, Defendants' conclusion that "[n]othing in section 26806 bears resemblance to a general warrant" is correct – if one replaces the word "nothing" with "everything."

### C. Section 26806 Violates the Right to Equal Protection.

Because Defendants are in violation of Plaintiffs First Amendment rights they are equally violated Plaintiffs Equal Protection rights. U.S. Const. amend. XIV. Under the Equal Protection Clause, and the First Amendment, a government may not deny or seek to chill the speech and views of some, possibly less favored viewpoints,  over the speech and views of others. *Police Dep't of City of Chicago v. Mosley,* 408 U.S. 92, 96 (1972). Selective enforcement or exclusions many not be based on reference to content alone. *Id*. Indeed, the Court held, the government "may not select which issues are worth discussing or debating in public facilities." *Id.*

If unequal treatment occurs in the context of exercising a fundamental right, or the government is motivated by animus toward a disfavored group, courts apply heighted scrutiny. *See generally, Grosjean v. Am. Press Co.,* 297 U.S. 233 (1936); *Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue,* 460 U.S. 575 (1983). Here, Defendants seek to only regulate, by capturing all speech associated with

---

[25] Indeed, Cal. Penal Code § 26720(a) permits California officials to enter gun dealers' premises at any time, any number of times, and for any reason, to conduct an inspection of records which now include Section 26806's recordings.

20

exercising a fundamental right, those who choose to be part of the "gun culture" in the name of fighting crime. Yet, they do not attempt to stop retail theft in other types of retail establishments where the news reports nightly on gangs of thugs stealing massive amounts of retail merchandise right on camera and costing the state millions lost revenue.[26] If cameras under Section 26806 are supposed to deter crime, we certainly do not see it in other non-firearm-related industries. California is arbitrarily subjecting firearm retailers and owners to overbearing restrictions that no other industry is subject to.

### D. SECTION 26806 VIOLATES THE CALIFORNIA RIGHT TO PRIVACY

Defendants raise a one-sentence Eleventh Amendment argument related to California's constitutional right to privacy provision.  Opp. 19.  At this juncture, Plaintiffs' cause of action based on California's constitution is but one of many of Defendants' violations of law at issue here and, thus, Plaintiffs focus on the federal aspects of their claims, rather than briefing state-law jurisdictional issues that are unnecessary at this time for this Court to grant preliminary relief.

## II. PLAINTIFFS ARE SUFFERING IRREPARABLE HARM

In the face of Plaintiffs' clear demonstration irreparable constitutional harms, Defendants make the dubious claim that Plaintiffs "present no evidence demonstrating any such harm" and that a delay in seeking relief in dispositive. Opp. 21. But "a deprivation of constitutional rights, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Latta v. Otter*, 771 F.3d 496, 500 (9th Cir. 2014) (citation omitted).  *See also* ECF #5-1 (Plaintiffs citing Ninth Circuit cases that state constitutional violations require "immediate injunctive relief," and that Plaintiffs need not even make a particularly strong showing of

---

[26] Brian Wang, U.S. Retail Theft is About $95 Billion and California Leads with $7.8 Billion, October 24, 2023, https://www.nextbigfuture.com/2023/10/us-retail-theft-is-about-95-billion-and-california-leads-with-7-8-billion.html, (last visited Jan. 11, 2024); and Law enforcement ramps up efforts to combat retail theft ahead of holiday season, November 22, 2023, https://www.nbclosangeles.com/news/local/law-enforcement-ramps-up-efforts-to-combat-retail-theft-ahead-of-holiday-season/3275438/, (last visited Jan. 11, 2024).

harm in constitutional rights cases).  Defendants choose not to engage with these authorities.

Moreover, courts in this Circuit may not "deny a motion for a preliminary injunction without analyzing the plaintiff's likelihood of success" when "a plaintiff alleges a constitutional violation." *Baird v. Bonta*, 2023 U.S. App. LEXIS 23760, at *6-8 (9th Cir. Sept. 7, 2013); *see also* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995)) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

Finally, as to Defendants' "delay" red herring, the Ninth Circuit is abundantly clear that any delay in seeking injunctive relief almost never precludes a finding of irreparable harm.  Rather, "courts are 'loath to withhold relief solely on that ground.'" *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014). As the Ninth Circuit explains, the purported delay is "*but a single factor* to consider in evaluating irreparable injury. . . ." *Id.*  But even if Defendants were correct that Plaintiffs' showing of irreparable harm somehow was weakened by their seeking relief when they did, courts in this Circuit "apply a sliding scale test, in which the elements of the *Winter* test are balanced 'so that a stronger showing of one element may offset a weaker showing of another.'" *Kingdom Muzic*, 2022 U.S. Dist. LEXIS 213213, at *4 (C.D. Ca. Oct. 3, 2022).  Simply, Plaintiffs have shown – overwhelmingly – that Section 26806 is blatantly unconstitutional and violative of numerous constitutional rights. The irreparable harm is clear.

Nor have Plaintiffs unreasonably delayed in bringing this case.  First, no gun store could be expected to invest the thousands of dollars necessary to comply with Section 26806, over a year before actually being required to do so.  Second, no small business could reasonably be expected to hire attorneys to bring suit against a law with a far future effective date, when such law may be (i) repealed by the legislature, (ii) overturned by a court in a case brought by another party, or (iii)

22

narrowed in its scope through regulation.  Third, as explained in the declarations of the organizational Plaintiffs, they respond (including through litigation) to concerns raised by their members and supporters, concerns that almost invariably increase in tempo and volume as impending effective dates of new laws draw near.  *See also* Compl. ¶¶ 29-33. Section 26806 is not the only anti-gun legislation that California has enacted recently, and these same plaintiffs are currently embroiled in other litigation with these same defendants involving other blatant Second Amendment violations by the State. *May, et al. v. Bonta, et al.*, No. 8:23-cv-01696 (C.D. Cal. September 12, 2023) (preliminary injunction issued Dec. 20, 2023); *Junior Sports Magazines, Inc., et al. v. Bonta, et al.,* 2:22-cv-04663-CAS (C.D. Cal. July 8, 2022) (now on appeal by the state); *California Rifle & Pistol Ass'n, Incorporated, et al. v. Los Angeles County Sheriff's Department, et al.*, No. 2:23-cv-10169 (C.D. Cal. December 4, 2023). Defendants claim that because there was swift action in some cases, there somehow must be swift action in all cases.[27] There is only so much tyranny that Plaintiffs can challenge at one time.  For these reasons, Plaintiffs have not delayed in filing this case.

## III.   THE EQUITIES FAVOR PLAINTIFFS

Claiming that Plaintiffs' irreparable harm is outweighed by California's, Defendants claim that "enjoining the law would itself be a form of irreparable harm to California and its citizens" because it would "interfere with the public safety goals" and the State would "lose the benefits that section 26806's enhanced security measures provide."  Opp. 22.  On the contrary, there is no legitimate government interest in violating enumerated rights, and neither the State nor its residents are harmed by constitutional fidelity.  *Preminger v. Principi*, 422 F.3d 815, 826 (9th

---

[27] *May, et al. v. Bonta, et al.*, No. 8:23-cv-01696 (C.D. Cal. September 12, 2023) (preliminary injunction issued Dec. 20, 2023) was passed in September 2023 with implementation January 1, 2024, less than three months later and *Junior Sports Magazines, Inc., et al. v. Bonta, et al.,* 2:22-cv-04663-CAS (C.D. Cal. July 8, 2022) was passed under an urgency ordinance where the law was effective immediately so Plaintiffs had no choice but to act immediately.

23

Cir. 2005).

**IV.    CONCLUSION**

For the reasons stated above, and in their pleadings, Plaintiffs request that the Court issue a preliminary injunction enjoining operation and enforcement of Section 26806.


Dated:  January 11, 2024              **MICHEL & ASSOCIATES, P.C.**

                                      *s/ Joshua Robert Dale*
                                      Joshua Robert Dale
                                      Attorneys for Plaintiffs Adam Richards,
                                      Jeffrey Vandermeulen, Gerald Clark, Jesse
                                      Harris, On Target Indoor Shooting Range,
                                      LLC, Gaalswyk Enterprises, Inc. (D/B/A/
                                      Smokin' Barrel Firearms), Gun Owners of
                                      California, Inc., Gun Owners of America, Inc.,
                                      Gun Owners Foundation, and California Rifle
                                      & Pistol Association, Incorporated


Dated:  January 11, 2024              **LAW OFFICES OF DONALD KILMER, APC**

                                      *s/ Donald Kilmer*
                                      Donald Kilmer
                                      Attorney for Plaintiff Second Amendment
                                      Foundation


**ATTESTATION OF E-FILED SIGNATURES**

I, Joshua Robert Dale, am the ECF User whose ID and password are being used to file this PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND OPPOSITION TO PRELIMINARY INJUNCTION. In compliance with Central District of California L.R. 5-4.3.4, I attest that all signatories are registered CM/ECF filers and have concurred in this filing.

Dated: January 11, 2024              *s/ Joshua Robert Dale*
                                      Joshua Robert Dale

24

PLAINTIFFS' REPLY RE: OSC FOR PRELIM. INJUNCTION

# CERTIFICATE OF SERVICE
### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Richards, et al. v. Newsom, et al.*
Case No.: 8:23-cv-02413 JVS (KESx)

IT IS HEREBY CERTIFIED THAT:

      I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

      I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND OPPOSITION TO PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

Todd Grabarsky
Deputy Attorney General
todd.grabarsky@doj.ca.gov
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 269-6044
   *Attorneys for Defendants*

      I declare under penalty of perjury that the foregoing is true and correct.

Executed January 11, 2024.

_____
Laura Palmerin

CERTIFICATE OF SERVICE