ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
CHRISTINA R.B. LÓPEZ
Deputy Attorney General
CAROLYN DOWNS
Deputy Attorney General
TODD GRABARSKY
Deputy Attorney General
State Bar No. 286999
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013-1230
  Telephone: (213) 269-6044
  Fax: (916) 731-2124
  E-mail: Todd.Grabarsky@doj.ca.gov
*Attorneys for Governor Gavin Newsom and
Attorney General Rob Bonta in their official
capacities*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADAM RICHARDS, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, in his official capacity as Governor of California, et al.,**<br><br>Defendants. | Case No.: 8:23-cv-02413 JVS (KESx)<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S ORDER OF JANUARY 17, 2024**<br><br>Date: January 16, 2024<br>Time: 9:00 a.m.<br>Courtroom: 10C<br>Judge: The Honorable James V. Selna<br>Action Filed: 12/19/2023 |

The Court has invited Defendants to brief the applicability of California Penal Code section 26806 to (1) "kitchen table firearm transactions" (or, transactions at in-home licensed firearms dealers); and (2) "gun show transactions."  (ECF No. 25.)  Defendants do not interpret section 26806 to apply to gun shows, and thus will not further address that issue here.[1]  However, section 26806 does apply to in-home dealers, and the application of the statute to in-home dealers—one of a host of regulations on the commercial sale of arms that apply to storefront and in-home dealers alike—does not alter the analysis as to why the Court should deny the preliminary injunction.

## I. SECTION 26806 IS ONE OF A HOST OF REGULATIONS APPLICABLE TO A CLOSELY REGULATED INDUSTRY THAT APPLY TO IN-HOME AND STOREFRONT FIREARMS DEALERS ALIKE

Throughout Penal Code Title 4, Division 6, Chapter 2 (where section 26806 appears), "premises" is tied to "the building designated in the license."  *See* Cal. Pen. Code § 16810.  Like all regulations on licensed firearms dealers, section 26806 applies to dealers who use their homes as their "business premises" to conduct firearms sales and transactions.  *See id.* §§ 16810, 26805.  Indeed, Plaintiffs do not appear to dispute that section 26806, by its plain terms, applies to all firearm dealers, whether storefront or in-home, just as they do not contend that in-home dealers are exempt from the many other regulations on firearm dealers.

Section 26806 is thus just one of a host of regulations that apply to licensed in-home and storefront firearms dealers alike.  Firearms dealers undoubtedly participate in a closely regulated industry subject to extensive federal, state, and local regulations and licensing schemes that govern nearly all aspects of firearms sales, storage, and transactions.  *See* Defs.' Opp'n 17-18 (ECF No. 20).  This array of stringent regulations applies to anyone who performs firearms transactions on their "licensed business premises," without making a distinction between storefront

---

[1] Since section 26806 does not apply to gun shows, issuing a preliminary injunction with respect to those settings would be inappropriate.

1

or in-home dealers.  *See* Cal. Pen. Code § 16810.  All dealer applicants must provide the same information to become licensed (*id.* § 26700; 11 C.C.R. § 4018), and the definition of "licensed gun dealer" also does not differentiate between in-home and storefront operations (Cal. Penal Code § 16790; 11 C.C.R. § 4017(d)). Once in operation, both storefront and in-home dealers must comply with the same stringent regulations concerning, to give examples, secure storage of firearms (*e.g.*, Cal. Penal Code §§ 17110, 26890, 26892), warrantless inspections of the premises from government officials (*e.g., id.* § 26900; 11 C.C.R § 4022(a); 18 U.S.C. § 923(c)), the collection and reporting of information on firearms transactions (*e.g.,* Cal. Penal Code §§ 26840, 26845, 26905, 26910, 28160, 28175, 28180, 28205, 28210, 28215), and conveying various notifications and warning signs and labels to patrons (*e.g., id.* §§ 23640, 26835, 26865, 26875, 34205).  *See also* Opp'n 17-18. Section 26806 fits squarely within this scheme that closely regulates the sale of arms by both storefront and in-home dealers.  Just as the fact that some dealers choose to operate a business in their homes does not diminish the risk of unlawful transactions or the benefit of surveillance as a law enforcement tool, that fact also does not exempt them from generally applicable firearms regulations.

The firearm industry is not unique in this respect.  In-home operations in other highly regulated industries are also subject to close government regulation and inspection.  In-home day cares are subject to extensive regulation and inspection mandates.  Cal. Health & Safety Code ch. 3.6 (§§ 1597.30-1597.65); Cal. Code Regs. tit. 22, div. 12, ch. 3 (§§ 102351.1-102426).  And those conducting commercial cannabis activity may use a private residence as their licensed premises under certain circumstances, but regardless of where they choose to do business are subject to the same regulatory requirements.  Cal. Code Regs. tit. 4, § 15000.3(c).

Nor is the firearm industry the only highly-regulated industry for which surveillance is required.  Federal law requires banks to maintain surveillance cameras.  *See* 12 C.F.R. § 326.3.  Various types of gambling establishments,

1   including card rooms, are also subject to surveillance requirements.  Cal. Code

2   Regs. tit. 4, §§ 12372, 12396.  And in the commercial cannabis industry, "[e]ach

3   licensed premises shall have a digital video surveillance system" that "record[s]

4   continuously 24 hours per day"; can "effectively and clearly record" specified

5   areas, including "[e]ntrances and exits to the licensed premises"; and is subject to

6   government inspection.  *Id.* § 15044.  In fact, these surveillance requirements for

7   commercial cannabis can apply to in-home licensees.  *Id.* § 15000.3(c).

8       In summary, section 26806's application to in-home firearms dealers is not

9   unique.  It is merely one among a multitude of regulations that apply to in-home

10   and storefront dealers alike, similar to laws in other highly regulated industries.

11   **II.   THE APPLICATION OF SECTION 26806 TO IN-HOME FIREARMS DEALERS**

12   **DOES NOT CHANGE THE ANALYSIS AS TO WHY THE COURT SHOULD**
     **DENY THE PRELIMINARY INJUNCTION**

13       **A.   Plaintiffs Have Not Based Their Preliminary Injunction Request**

14   **on an As-Applied Challenge to Section 26806**

15       As an initial matter, Plaintiffs have not sought a preliminary injunction against

16   section 26806's application to any particular Plaintiff or to just in-home firearm

17   dealers.  Instead, Plaintiffs have moved for a broad preliminary injunction against

18   the entirety of the statute on its face.  *See* TRO and PI App. (ECF No. 11) at p. 1;

19   Pls.' [Proposed] Order (ECF No. 11-13).  Although their Complaint could be read

20   to challenge the law both facially and as applied to the Plaintiffs, it ultimately seeks

21   a "preliminary and permanent injunction" against section 26806 entirely on its face,

22   and not as applied to just Plaintiffs themselves.  Compl. p. 114, lns. 20-23.

23       A facial challenge is "a claim that the law or policy at issue is unconstitutional

24   in all its applications." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019).  Facial

25   challenges are "disfavored" for several reasons including that they "run contrary to

26   the fundamental principle of judicial restraint that courts should [not] ... formulate a

27   rule of constitutional law broader than is required by the precise facts to which it is

28   to be applied." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442,

450 (2008) (cleaned up).  By contrast, an as-applied challenge contends that the law is unconstitutional "as applied to the litigant's particular ... activity, even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).  An as-applied challenge "requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Calvary Chapel Bible Fellowship v. County of Riverside*, 2017 WL 6883866, at *15 (C.D. Cal. Aug. 18, 2017) (cleaned up).

The Court should reject any attempt to convert the preliminary injunction request from a disfavored facial challenge to an as-applied challenge.  The motion and supporting memorandum make no argument demonstrating that section 26806 is likely to violate the constitutional rights of any particular Plaintiff under their own particular factual circumstances.  Nor have Defendants had sufficient opportunity to test the scant evidence that has been presented and contest the notion that section 26806 is unconstitutional as to the particular in-home dealers that are party to this lawsuit.  For example, Defendants have not had occasion to evaluate whether any of the in-home dealer plaintiffs in particular have met standing, ripeness, or other requirements for an as-applied challenge, or whether the law imposes irreparable harm particular to them.  This lack of argumentation and evidence "makes it impossible for the Court to determine whether the [law], *as applied to Plaintiffs*, is unconstitutional." *Cal. Rifle & Pistol Ass'n v. City of Glendale*, 644 F. Supp. 3d 610, 621 & n.7 (C.D. Cal. 2022).

### B. Plaintiffs Remain Unlikely to Succeed on the Merits of Their Claims, Including as They Pertain to In-Home Firearms Dealers

#### 1. First Amendment Claim

As Defendants have explained, section 26806 has no objective chilling effect on the exercise of First Amendment rights, whether at a storefront or in-home firearms dealer.  Opp'n 4-5.  Plaintiffs do not contend (nor could they) that the

law's alleged effect would be any different for in-home dealers than for storefronts. Indeed, Plaintiffs focus their "chilling" claim on "gun stores" that are open to the public. *See* Pls.' Mem. 4-6 (ECF No. 11-1) (referencing "gun stores" four separate times).

Similarly, Plaintiffs' assertion that the required surveillance "will discourage and undermine the free association of people for fear of government monitoring, publication, or retribution," Mem. 4, is objectively unreasonable, regardless of where it occurs.  Section 26806 does not target, regulate, or punish any sort of speech or association, and it contains stringent limitations on the release or use of the recordings.  Those provisions apply equally to storefronts and in-home dealers, as do the longstanding requirements for recording and tracking dealer and purchaser identifying information for firearms transactions. *See* Opp'n 4-5.  And these and other provisions also defeat Plaintiffs' claim of any right to anonymity in the highly-regulated firearms industry, regardless of whether a transaction takes place at a storefront or in-home dealer.  Opp'n 6, 13.

Plaintiffs' remaining First Amendment arguments are not particular to in-home dealers, and in any event fail.  Plaintiffs' deficient claim of viewpoint discrimination concerns regulation in the firearm industry as a whole, not specifically to in-home dealers. *Id.* at 6.  And Plaintiffs' "compelled speech" challenge to section 26806(c)'s notice requirement concerns all firearm dealers, not just those in-home, and, in any event, fails in light of binding precedent. *Id.* at 7; *see also Md. Shall Issue, Inc. v. Anne Arundel County Maryland*, __ F.4th __, 2024 WL 236282 (4th Cir. Jan. 23, 2024).

## 2.    Second Amendment Claim

The application of section 26806 to in-home dealers does not change the analysis of Plaintiffs' Second Amendment claim, which fails under the test prescribed by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), for the same reasons that such a claim as to storefront dealers fails.  At

1   *Bruen*'s first step, the analysis for in-home and storefront dealers remains the same.

2   Both engage in the commercial sale of arms, which falls outside the Second

3   Amendment's plain text.  Opp'n 8-12.  Plaintiffs' proposed course of conduct is

4   engaging in firearms transactions without audio-visual recording; but the Second

5   Amendment says nothing about a particular commercial sales experience,

6   regardless as to whether it occurs at a store or in one's home.  Nor have Plaintiffs

7   demonstrated that requiring surveillance at in-home dealers in particular is likely to

8   "meaningfully constrain[]" individuals' ability to acquire and possess firearms or

9   otherwise exercise their Second Amendment rights.  *See Teixeira v. County of*

10   *Alameda*, 873 F.3d 670, 677-80 (9th Cir. 2017) (en banc); *Gazzola v. Hochul*, 88

11   F.4th 186, 195-99 (2d Cir. 2023).  Individuals in California can "keep and bear

12   Arms" just as much after section 26806's enactment as before.

13        In addition, any allegation that section 26806's surveillance requirements

14   would objectively "chill" firearm purchases from in-home dealers in a unique or

15   particular way has no merit.  *See* Opp'n 12-13.  Reasonable prospective purchasers

16   know that in-home dealers are subject to the same regulatory scheme as are

17   storefront dealers.  And information relating to the purchase of firearms—whether

18   from a storefront or in-home dealer—has long been subject to public disclosure.  *Id.*

19        Even under *Bruen*'s second step, the analysis is the same for storefront or in-

20   home dealers.  Following the requisite "more nuanced approach" to the history-and-

21   tradition analysis for laws reflecting "unprecedented societal concerns or dramatic

22   technological changes," *Bruen*, 142 S. Ct. at 2123-33, section 26806 fits squarely

23   within the well-established tradition of regulating the commercial sale of firearms

24   to promote public safety and security, regardless as to whether sales occur in-home

25   or elsewhere.  *See* Opp'n 14-16.  The historical laws Defendants identified applied

26   across the board to all sellers, keepers, and dealers participating in the firearms

27   trade; none of them made any distinction between in-home and storefront dealers;

28   and none carved out exemptions for in-home operations.  *Id.*

1

### 3.    Fourth Amendment Claim

2    Plaintiffs' Fourth Amendment claim similarly fails to differentiate between

3    storefront and in-home dealers.  Instead, Plaintiffs argue that, across the board,

4    section 26806 constitutes "a forbidden general warrant"; an "unwarranted physical

5    intrusion onto an individual's property"; and a violation of "Plaintiffs' reasonable

6    expectations of privacy."  Mem. 10-11.  But Plaintiffs are wrong.  There is no

7    dispute that the firearms industry—storefront and in-home operations alike—is

8    highly regulated, nor that warrantless inspections of highly regulated businesses

9    comport with the Fourth Amendment.  *See* Opp'n 16-19.

10    Plaintiffs appear to contend that there is a heightened expectation of privacy

11    for in-home dealers that should change the analysis.  But Plaintiffs have pointed to

12    no authority to support that proposition.  Existing authority makes clear that the

13    principle applies equally to all dealers, regardless of where they choose to operate

14    their business:  "When a dealer chooses to engage in this pervasively regulated

15    business . . . , he does so with the knowledge that his business records, firearms,

16    and ammunition will be subject to effective inspection."  *United States v. Biswell*,

17    406 U.S. 311, 316 (1972).  Thus, in-home dealers—who *choose* to operate their

18    businesses from their homes—are appropriately subject to the same slate of

19    generally applicable regulations, including section 26806.  Applying regulations

20    equally to in-home businesses is not particular to the firearms industry, and

21    Plaintiffs do not claim that the State lacks authority to conduct compliance

22    inspections, nor could they under binding law.  And, in any event, section

23    26806(b)'s protections ensure that the government cannot access the recordings—

24    whether for in-home or storefront dealers—except in limited circumstances:

25    pursuant to a warrant, or as part of an administrative search for which no warrant is

26    otherwise required, both of which comport with the Fourth Amendment.  *See*

27    *Verdun v. City of San Diego*, 51 F.4th 1033, 1039 (9th Cir. 2022); *Killgore v. City*

28    *of S. El Monte*, 3 F.4th 1186, 1189 (9th Cir. 2021).

### 4.   Remaining Claims

Section 26806's application to in-home dealers would not save Plaintiffs' Equal Protection claim, as it relies on their First Amendment claim and cannot be supported by a "class-of-one" theory.  Opp'n 19.  And their state claim fails under the Eleventh Amendment regardless to whom the law applies.  *Id.* at 19-20.

### C.   The Remaining Factors Continue to Weigh Against a Preliminary Injunction of Section 26806, Even as Applied to In-Home Dealers

Despite having more than a year to prepare a record, Plaintiffs have identified no irreparable harm sufficient for a preliminary injunction, Opp'n 21, let alone irreparable harm that is specific and particularized to in-home firearms dealers. Their purely speculative contentions that section 26806 might chill or burden constitutional rights generally, or at in-home dealers specifically, is insufficient to meet this factor.  Nor do Plaintiffs present evidence that installing the surveillance systems at in-home dealers is cost-prohibitive or logistically unfeasible.[2]  This is especially true given that section 26806 is just another of a host of regulations on the sale of arms (many of which pose some burden) that in-home dealers must abide by, none of which Plaintiffs object to here.

In any event, any harm in-home dealers might suffer—for example, having to purchase and install surveillance systems—is far outweighed by the harm to the public if section 26806 were enjoined.  Opp'n 22.  Section 26806's requirement of enhanced security assists law enforcement in preventing and prosecuting firearms trafficking, thefts, straw purchases and other deadly gun crimes, which can stem from the transactions at in-home dealers just as from storefront dealers.  Enjoining section 26806 would remove a law enforcement tool to prevent gun crimes and save lives.  Plaintiffs fail to present any evidence demonstrating otherwise.

---

[2] One in-home dealer plaintiff, who conducts business in a "separate structure" apart from his actual house, makes no such contention, Richards Decl. ¶ 6, and another merely postulates that he "*may* be force[d] to give up my business," Vandermeulen Decl. ¶ 12 (emphasis added).

1
2
Dated:  January 24, 2024                    Respectfully submitted,
3                                           ROB BONTA
                                            Attorney General of California
4                                           MARK BECKINGTON
                                            Supervising Deputy Attorney General
5                                           CHRISTINA R.B. LOPEZ
                                            Deputy Attorney General
6                                           CAROLYN DOWNS
                                            Deputy Attorney General
7

8                                           /s/ Todd Grabarsky
                                            TODD GRABARSKY
9                                           Deputy Attorney General
                                            Attorneys for California Governor
10                                          Gavin Newsom and Attorney General
                                            Rob Bonta in their official capacities
11
SA2023306691
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Governor Gavin Newsom and Attorney General Rob Bonta, in their official capacities, certifies that this brief complies with the length requirement set forth in the Court's order of January 17, 2024 (ECF No. 25).

Dated:  January 24, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
MARK BECKINGTON
Supervising Deputy Attorney General
CHRISTINA R.B. LOPEZ
Deputy Attorney General
CAROLYN DOWNS
Deputy Attorney General


*/s/ Todd Grabarsky*
TODD GRABARSKY
Deputy Attorney General
*Attorneys for California Governor*
*Gavin Newsom and Attorney General*
*Rob Bonta in their official capacities*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2024, I electronically filed the foregoing document and any attachments thereto with the Clerk of the Court by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: January 24, 2024        */s/ Todd Grabarsky*
                                                 TODD GRABARSKY