C. D. Michel – SBN 144258
Tiffany D. Cheuvront – SBN 317144
Joshua Robert Dale – SBN 209942
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
cmichel@michellawyers.com

Attorneys for Plaintiffs Adam Richards, Jeffrey Vandermeulen, Gerald Clark, Jesse Harris, On Target Indoor Shooting Range, LLC, Gaalswyk Enterprises, Inc. (D/B/A/ Smokin' Barrel Firearms), Gun Owners of California, Inc., Gun Owners of America, Inc., Gun Owners Foundation, and California Rifle & Pistol Association, Incorporated

Donald Kilmer – SBN 179986
Law Offices of Don Kilmer, APC
14085 Silver Ridge Rd.
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Don@DKLawOffice.com

Attorney for Plaintiff The Second Amendment Foundation

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADAM RICHARDS, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>GAVIN NEWSOM, et al.,<br><br>　　　　　Defendants. | Case No.: 8:23-cv-02413 JVS (KESx)<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF ON MOTION FOR PRELIMINARY INJUNCTION** |

## I. HOME-BASED "KITCHEN FFL" SALES

### A. Being "closely regulated" doesn't waive constitutional protections.

Rejecting any concern about heightened constitutional interests within the home, Defendants argue that the "application of the statute to in-home dealers . . . does not alter the analysis." Defs.' Suppl. Br. in Resp. to the Ct.'s Order of Jan. 17, 2024 ("Defs.' Suppl. Br.") at 1:6-8 (ECF No. 26). Indeed, throughout Defendants' brief are nine references to gun dealers being "highly regulated," "closely regulated," etc. (*Id.* at 1:22, 2:6, 2:13, 2:19-20, 2:26, 3:10, 5:14 & 7:7-8), as if these characterizations waive the constitutional "right of a man to retreat into his home and there be free from unreasonable government intrusion," which is at the very core of constitutional protections. *Caniglia v. Strom*, 593 U.S. 194, 197-98 (2021). The First Amendment right to speak freely "takes on an added dimension … in the privacy of a person's own home. . . ." *Stanley v. Georgia*, 394 U.S. 557, 564 (1969). Likewise, "the home is first among equals," under the Fourth Amendment. *Florida v. Jardines*, 569 U.S. 1, 6 (2013). And the home is where modern Second Amendment doctrine gained renewed footing. See *District of Columbia v. Heller*, 554 U.S. 570 (2008) Thus, this Court should have particular concern about Section 26806's application within the home.

Moreover, contrary to the state's representations, there are no other home-based businesses in California where the regulatory intrusion into the home is as pervasive as it is under Section 26806. Defendants compare home-based FFLs to regulated "[i]n-home daycares" and "commercial cannabis activity" within "a private residence" (Defs.' Suppl. Br. at 2:18-26) but fail to acknowledge that regulation of even these less-constitutionally protected ventures is not boundless when a residence is involved. *Rush v. Obledo*, 756 F.2d 713 (9th Cir. 1985), found that a home daycare can be administratively searched (a far lesser intrusion than round-the-clock audiovisual surveillance) <u>only when open for business</u>, "and at all other times is a private residence." *See id.* at 721. Section 26806 makes no such

1  distinction, recording private activities taking place within the home throughout the
2  day and night, even when no business is being transacted.

3       As to California's cannabis regulations, there's a theoretical chance that
4  portions of a residence could be licensed for a cannabis business. *See* Cal. Code
5  Regs. tit. 4, § 15000.3(c) (2024). But not "living areas." And this regulation on
6  home life has never been subject to a legal challenge, because there are no local
7  jurisdictions that actually license residential cannabis businesses. There are no
8  "Kitchen Table" pot shops because no city will zone or have them.[1] Defendants
9  also raise a comparison to "banks" and "gambling establishments." *See* Defs.'
10 Suppl. Br. at 2:27-3:1. Yet, like cannabis businesses, they do not allege that any
11 such home-based businesses actually exist. Section 26806's invasive requirements
12 for home-based dealers of firearms thus stand alone.

13       **B.    Defendants' facial vs. as-applied distinctions are irrelevant.**

14       Defendants further claim that "Plaintiffs have moved for a broad preliminary
15 injunction," not specifically "to any particular Plaintiff or just in-home firearm
16 dealers." *Id.* at 3:15-17; *contra id.* at 3:19-20 ("the Complaint could be read to
17 challenge the law both facially and as applied"). Plaintiffs spent 17 pages in their
18 motion and 115 pages in their Complaint (and numerous declarations) specifically
19 describing how Section 26806 causes specific harm to each of them. *See* Pls.'
20 Memo. of P. & A. in Supp. of Appl. for TRO and Issuance of Prelim. Inj., *passim*
21 (ECF No. 11-1); *see also* Compl., *passim* (ECF No. 1). Nevertheless, Defendants
22 argue, "[t]he Court should reject any attempt to convert the preliminary injunction
23 request from a disfavored facial challenge to an as-applied challenge." Defs.'
24 Suppl. Br. at 4:9-10. But this argument has been rejected by the Supreme Court,
25 which explained that "the distinction between facial and as-applied challenges . . .
26 goes to the breadth of the remedy employed by the Court, not what must be pleaded

---

[1] Even though none exist, the recording intrusions imposed on these phantom home pot shops selling Schedule 1 drugs are still not as onerous as those for home-based FFLs. *See* Cal. Code Regs. tit. 4, § 15044(a) & (h) (2024) (no audio recording).

2

in a complaint." *See Citizens United v. FEC*, 558 U.S. 310, 331 (2010).

### C. Injuries to home-based dealers' rights are actual and ongoing.

Defendants erroneously argue that Plaintiffs have failed to make any allegation of a unique First Amendment injury to home FFLs. *See* Defs.' Suppl. Br. at 4:26-5:23; *contra* Compl., ¶¶ 23 & 26 (injury due to attorney-client communications; conversations between family members); ¶ 24 (grieving relatives making funeral arrangements); ¶ 25 (political discussions); ¶ 150 (spousal communications on the private topics of health, sex, religion, political beliefs, personal finances, the rearing of children); ¶ 151 (kitchen table prayers); ¶ 153 (religious conversations); ¶ 157 (political debates and religious sermons); ¶ 252 ("intimate . . . situations"); ¶ 328 ("underwear-clad, late-night traipse to the bathroom"); & ¶ 419 ("[e]very dinner guest, handyman, child's playdate").

Defendants also mistakenly claim that Section 26806 causes no chilling effect on speech because it does not "target, regulate, or punish" speech (Defs.' Suppl. Br. at 5:8-10), offering no counter to the holding that laws with First Amendment chilling effects include those that do not directly "target, regulate, or punish" but which still indirectly alter lawful behavior. *See Stanley v. Georgia*, 394 U.S. at 565; *and see* Decl. of Matthew Gene Peterson-Haywood in Supp. of Pls.' Suppl. Br. at ¶¶ 13-28 (self-censorship within his own home).

Defendants also falsely characterize the activity being recorded in the home as merely a commercial transaction, subject to no anonymity. *See* Defs.' Suppl. Br. at 5:5-15. This Court similarly concluded that Section 26806 "simply records the video and audio of a transaction already subject to disclosure to the government." *See* Ct.'s Tentative Order Re Prelim. Inj. [11] ("Op.") at p. 9. But this overlooks all the other conversations besides the firearms transaction that Section 26806 unnecessarily sweeps within its ambit, including those identified in the Complaint (cited above). *See also* Haywood Decl., ¶¶ 10; 13-21 (Section 26806 camera pointed at computer screen; must leave home office to have speak in private).

1    As to a home dealer like Plaintiff Richards, who operates multiple businesses
2    from his home, this Court tentatively concluded that Section 26806's recordings are
3    "no more chilling" than "the longstanding regulatory regime that mandates the
4    tracking and sharing of dealer and purchaser information with government
5    agencies." Op. at 8 ("essentially an alternate manifestation of the recording process
6    that is already injected into firearm transactions"). But none of the other dealer
7    regulations applicable to Plaintiff Richards require him to record his every
8    conversation with every person, whether engaged in a firearm transaction or not.
9    The injury to Mr. Richards, for example, is far greater in that, as an attorney, he is
10   *required* by law to keep his clients' identities and communications private. *See* Cal.
11   Rules of Pro. Conduct, Rule 1.6 ("A lawyer shall not reveal information protected
12   from disclosure"); Cal. Bus. & Prof. Code § 6068(e)(1) (West 2024) (same). Thus,
13   it is hardly a "subjective . . . chill" (Op. at 8) when Mr. Richards censors his client
14   conversations to avoid Section 26806's recording of those privileged conversations.

15   It is also error to conclude that, because the statute "does not compel dealers
16   and purchasers to have a conversation in the view of the cameras," a constitutional
17   injury has not occurred. Op. at 8. Injury occurs to the home-based dealer who,
18   although not even open for business, must *permanently* avoid certain parts of the
19   interior of his residence, or *leave his home entirely*, in order to have a private
20   conversation. *See* Haywood Decl., ¶ 31 (husband and wife must seek out an
21   unmonitored location in their own home); *cf.* Op. at 9 ("Plaintiffs invite the
22   disclosure by engaging in such speech during a public and regulated business
23   transaction," overlooking that recording is required in private homes on a perpetual
24   basis, regardless of whether any "regulated business transaction" is occurring).

25   Defendants repeat their argument that "Plaintiffs have pointed to no
26   authority" that Fourth Amendment rights are "heightened" within the home. Defs.'
27   Suppl. Br. at 7:10-12. Not so: "the home holds a special place in Fourth
28   Amendment jurisprudence. Supreme Court opinions are replete with statements

affirming the special status of the home [and] sheltering other constitutional values protected by the Due Process Clause and the First Amendment." T.P. Crocker, *The Fourth Amendment at Home*, Ind. Law J., Vol. 96: Iss. 1, Article 4 (2020). Indeed, "[t]he right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance." *Johnson v. United States*, 333 U.S. 10, 14 (1948). *See* Haywood Decl. ¶¶ 28-32 ("evicted" from home office, "self-censorship" for fear of "monitor[ing] by the government").

Defendants also miss a finer point. In *United States v. Jones,* 565 U.S. 400, 404-05 (2012), the Supreme Court analyzed the warrantless placement of a GPS tracker on a vehicle in terms of the government's physical trespass of the vehicle, i.e., a search occurs when the government physically intrudes upon someone's property. This mirrors the Supreme Court's analysis of "takings" claims under the Fifth Amendment. Even when the government pleads a *de minimis* physical occupation of real property, such as installation of electronic gear and cables, the Constitution compelled protection of the property owner's interest. *See Lorretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 434-35 (1982) (compelled placement of cable TV equipment on private property is a trespassory occupation and therefore a "taking"). Section 26806 falls squarely within these principles.

The claim that California does not allegedly have "persistent access to recordings," does not make it any less of an intrusion. Op. at 8. *But see* Haywood Decl. *passim* (pervasive "fear of being recorded by the government in [his] own home"). Such a claim also understates the law's reach. The purportedly "limited circumstances" in which Section 26806 recordings can be accessed includes "circumstances" either "pursuant to a warrant" or where "no warrant is . . . required." Defs.' Suppl. Br. at 7:24-26. The law also allows access to recordings by the public via civil subpoena for matters having nothing to do with investigating crimes. *See* Cal. Penal Code § 26806(b)(3) (West 2024). A slip-and-fall, domestic

argument, property line dispute; each scenario and many more are valid reasons under Section 26806(c)(3) for a court to order disclosure of "relevant" but intimate, 24/7 details of private activities and conversations occurring in the regulated home.

### D. Many firearm dealers are home-based dealers.

Of paramount concern here is that Plaintiffs Richards and Vandermeulen (and GOA member Haywood) are all home dealers, and the irreparable harm to them is real, ongoing, and requires relief. Their injury is enough. But even still, the percentage of other home-based dealers affected by the constitutional violation is not a statistical anomaly, but substantial. Gun control group Everytown reports that "[o]ver half of licensees in the United States are located at residential addresses. . . ." Everytown Research & Policy, Inside the Gun Shop, July 6, 2023, http://tinyurl.com/425kavaj (last visited Jan. 22, 2024); Thus, to the extent that this Court were to find the statute unconstitutional as applied to home-based dealers, that would mean it is *already* unconstitutional in more than half its applications, and should be struck down on its face. *See United States v. Hansen,* 25 F.4th 1103, 1106 (9th Cir. 2022) ("a facial overbreadth challenge can succeed: (1) when . . . there is 'no set of circumstances under which [the statute] would be valid or that the statute lacks any plainly legitimate sweep;' and (2) where 'a substantial number of [the statute's] applications are unconstitutional.' . . .") *rev'd on other grounds,* 599 U.S. 762, (2023) (quoting *United States v. Stevens,* 559 U.S. 460, 472-73 (2010)).

## II. GUN SHOWS

Despite Plaintiffs' voluminous allegations and prior briefing in their motion on the applicability of Section 26806 to gun shows, Defendants' response brief (ECF No. 20) conspicuously omitted any discussion of these issues, and Defendants demurred from taking a position at oral argument. Defendants now deny the statute applies at gun shows. Yet they provide no legal analysis justifying this view. *See* Defs.' Suppl. Br. at 1:4-5. Because a reasonable reading of Section 26806 indicates that it likely applies to gun shows, it should be enjoined in such applications. It is

1 hard to see why Defendants would object to this Court declaring ("say[ing] what
2 the law is") that Section 26806 cannot constitutionally be applied to gun shows, and
3 enjoining its enforcement in situations where Defendants claim they do not want to
4 enforce it anyway. 0Otherwise, Defendants could change their position at any time.

### A. Dealers cannot comply with Section 26806 at gun shows.

Because gun shows are held in rented venues, there is no realistic way for each of the dozens of dealers, with folding tables and booths set up and torn down over the period of a weekend, to have a recording device "permanently mounted in a fixed location" that would capture "all interior entries or exits," "all areas where firearms are displayed," and "all points of sale." Cal. Penal Code § 26806(a)(3).[2] Yet Section 26806 contains no exception for temporary locations where dealers lawfully sell. *See id.* §§ 26806(a) (requirements apply at "business premises," not the "licensed business premises") & 27310 (requiring all firearm transfers at gun shows to comply with state and federal law); 27 C.F.R. Part 478.100 (2024) (dealer transactions occur both at the "licensed premises" and at shows away from "licensed premises"). FFLs may have the right to control only their own temporary spaces, but they have no authority to "permanently affix" any recording devices to shared areas of the venue.[3]

### B. Commercial and non-commercial gun show activity is protected.

Regardless of the lack of crime associated with gun shows, Defendants seek to record every moment of activity and conversation at them. *See B&L Productions, Inc. v. Newsom,* No. 8:2022-cv-01518, 2023 WL 7132054, (C.D. Cal. Oct. 30, 2023) (there are First Amendment commercial freedom of speech rights in a public

---

[2] *See also id.,* § 26805 (West 2024) (prohibiting the sale and transfer of a firearm by a licensed dealer at any location other than the dealer's licensed premises but allowing dealer to begin transaction off the licensed premises at a gun show).

[3] And under Section 26806, each dealer must independently mount a camera and record the entrances to the gun show, i.e., they can't share. *See id.,* § 26806(a)(5) & (b) (access to recording equipment and recordings cannot be shared). Thus, dozens of dealers are required to mount separate cameras facing all the show's entrances to comply.

7

PLS' SUPPL. BRIEF ON MOT. FOR PRELIMINARY INJ.

forum like a gun show on state property). The Ninth Circuit has held that "[a]n offer to sell firearms or ammunition is speech that 'does no more than propose a commercial transaction.' Such an offer is, therefore, commercial speech within the meaning of the First Amendment." *Nordyke v. Santa Clara Cnty.,* 110 F.3d 707, 710 (9th Cir. 1997). In *B&L Prods., Inc. v. 22nd Dist. Agric. Ass'n,* the court found that "[a] general fear that people attending gun shows will violate state and local laws about gun possession or even commit acts of gun violence in the community upon leaving the show cannot justify" the state placing these types of restrictions on protected conduct. 394 F. Supp. 3d 1226, 1248 (S.D. Cal. June 25, 2019).

### III. CONVICTS CANNOT HAVE MORE RIGHTS THAN LAWFUL GUN DEALERS

Interestingly enough, violent criminal offenders released from prison and on probation are typically subjected only to, at most, electronic location monitoring (such as a GPS ankle monitor), not pervasive 24/7 audiovisual surveillance within their own homes. *See Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) ("A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.' "); *United States v. Scott*, 450 F.3d 863, 874 (9th Cir. 2006) (refusing to permit a urine test performed by police officers at the home of a person on pre-trial release); *Arnzen v. Palmer*, 713 F.3d 369, 371 (8th Cir. 2013) (upholding injunction prohibiting placement of video cameras in individual prisoner bathrooms used by "sexually violent predator[s]"). In other words, convicted rapists and child molesters possess greater constitutional rights than do California's home-based gun dealers under Section 26806. Yet one would think that California's purported "compelling interest" in "crime prevention" (Op. at 14) is orders of magnitude more significant when it comes to placing video cameras in the bedrooms of convicted pedophiles than it is in placing video cameras in the bedrooms of licensed gun dealers, who are, in both practice as well as through exhaustive state and federal vetting, law abiding persons.

| | | |
|---|---|---|
| 1 | Dated: January 31, 2024 | **MICHEL & ASSOCIATES, P.C.** |
| 2 | | *s/ Joshua Robert Dale* |
| 3 | | Joshua Robert Dale<br>Attorneys for Plaintiffs Adam Richards, Jeffrey Vandermeulen, Gerald Clark, Jesse Harris, On Target Indoor Shooting Range, LLC, Gaalswyk Enterprises, Inc. (D/B/A/ Smokin' Barrel Firearms), Gun Owners of California, Inc., Gun Owners of America, Inc., Gun Owners Foundation, and California Rifle & Pistol Association, Incorporated |
| 8 | Dated: January 31, 2024 | **LAW OFFICES OF DONALD KILMER, APC** |
| 9 | | *s/ Donald Kilmer* |
| 10 | | Donald Kilmer<br>Attorney for Plaintiff The Second Amendment Foundation |

## ATTESTATION OF E-FILED SIGNATURES

I, Joshua Robert Dale, am the ECF User whose ID and password are being used to file this PLAINTIFFS' SUPPLEMENTAL BRIEF ON MOTION FOR PRELIMINARY INJUNCTION. In compliance with Central District of California L.R. 5-4.3.4, I attest that all signatories are registered CM/ECF filers and have concurred in this filing.

Dated: January 31, 2024　　　　　　　　　　*s/ Joshua Robert Dale*
　　　　　　　　　　　　　　　　　　　　　Joshua Robert Dale

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Adam Richards, Jeffrey Vandermeulen, Gerald Clark, Jesse Harris, On Target Indoor Shooting Range, LLC, Gaalswyk Enterprises, Inc. (D/B/A/ Smokin' Barrel Firearms), Gun Owners of California, Inc., Gun Owners of America, Inc., Gun Owners Foundation, and California Rifle & Pistol Association, Incorporated, certifies that this brief contains 8 pages which complies with the page limit set by court order dated January 17, 2024.

Dated: January 31, 2024　　　　　　　　　　*s/ Joshua Robert Dale*
　　　　　　　　　　　　　　　　　　　　　Joshua Robert Dale

# CERTIFICATE OF SERVICE
## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Richards, et al. v. Newsom, et al.*
Case No.: 8:23-cv-02413 JVS (KESx)

IT IS HEREBY CERTIFIED THAT:

    I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

    I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFFS' SUPPLEMENTAL BRIEF ON MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

Todd Grabarsky
Deputy Attorney General
todd.grabarsky@doj.ca.gov
Christina R.B. Lopez
Deputy Attorney General
christina.lopez@doj.ca.gov
Office of the Attorney General for California
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 269-6044
   *Attorneys for Defendants*

    I declare under penalty of perjury that the foregoing is true and correct.

Executed January 31, 2024.

_____
Laura Palmerin