## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-02413-JVS-KES | Date | March 1, 2024 |
| Title | Adam Richards et al. v. Gavin Newsom et al. | | |

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:     **[IN CHAMBERS] Order Regarding Preliminary Injunction [11]**

Before the Court is Plaintiff Adam Richards, Jeffrey Vandermeulen, Gerald Clark, Jesse Harris, On Target Indoor Shooting Range, LLC, Gaalswyk Enterprises, Inc. (doing business as Smokin' Barrel Firearms), Gun Owners of California, Inc., Gun Owners of America, Inc., Gun Owners Foundation, California Rifle & Pistol Association, Inc., and Second Amendment Foundation's (collectively, "Plaintiffs") application for issuance of a preliminary injunction. (Appl., Dkt. No. 11.) Defendants Gavin Newsom and Rob Bonta (collectively, "Defendants") opposed. (Opp'n, Dkt. No. 20.) Plaintiffs replied. (Reply, Dkt. No. 22.)

Defendants submitted supplemental briefing on the applicability of California Penal Code section 26806 to "kitchen table" and gun show firearm transactions. (Defendants' Suppl. Brief, Dkt. No. 26.) Plaintiffs responded. (Plaintiffs' Suppl. Brief, Dkt. No. 27.)

For the following reasons, the Court **DENIES** the application for preliminary injunction.

## I. BACKGROUND

Before turning to the facts and statute at issue in this case, the Court first provides a brief overview of the preexisting regulatory scheme surrounding the transfer of firearms in California. The following comes from Plaintiffs' Complaint. (Compl., Dkt. No. 1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:23-cv-02413-JVS-KES              Date   March 1, 2024

Title      Adam Richards et al. v. Gavin Newsom et al.

Under federal law, the sale, manufacture, or importation of firearms requires a federal firearms license ("FFL"). (Id. ¶ 40.) To obtain an FFL, one must be at least twenty-one years of age and "not prohibited from owning or possessing firearms, not have willfully violated the federal Gun Control Act ("GCA") or its regulations, not willfully failed to disclose material information or make any false statements on their application and have a premises for conducting business," as well as certify compliance with state and local law. (Id. ¶¶ 40–41.)

California law, likewise, mandates that transfers of firearms be done through an FFL retailer. (Id. ¶ 39.) Prospective purchasers submit an application to the FFL, which electronically transfers purchaser information to the California Department of Justice ("CA DOJ") for confirmation that the purchaser is not disqualified from doing so under state or federal law. (Id.) California law also requires a state-issued license to transfer firearms, which itself requires an FFL, regulatory or business license, state seller's permit, a CA DOJ certificate of eligibility, listing on CA DOJ's list of firearm dealers, and any applicable local business license for the sale of firearms. (Id. ¶ 42.) California cities and counties may impose additional licensing requirements. (Id. ¶ 43.)

Sales of firearms must be recorded in an acquisition and disposition logbook, or "bound book," in accordance with federal law. (Id. ¶ 45.) Upon a transfer, both licensed dealer and purchaser must complete Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Form 4473 to ensure eligibility and process a federal background check through the National Instant Criminal Background Check System ("NICS"), and the FFL dealer retains the form indefinitely. (Id. ¶ 47.) California is authorized to conduct background checks in lieu of NICS, instead collecting a Dealer Record of Sale ("DROS") from FFL dealers electronically. (Id. ¶ 48.) Cities and counties may also impose additional recordkeeping requirements. (Id. ¶ 49.)

ATF officers are authorized to enter FFL dealers during business hours to inspect or examine records, documents, ammunition, and firearms. (Id. ¶ 50.) Such inspections may be done "every 12 months, during a reasonable inquiry, during a criminal investigation of a person or persons other than the FFL," or as required to determine "the disposition of one or more firearms during a bona fide criminal investigation." (Id.) California permits similar inspections by CA DOJ at least once every three years. (Id. ¶ 51.) Municipalities are authorized to adopt their own inspection programs in support of compliance with firearm regulations. (Id. ¶ 52.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:23-cv-02413-JVS-KES                    Date   March 1, 2024

Title   Adam Richards et al. v. Gavin Newsom et al.

Senate Bill 1384 added section 26806 to the California Penal Code.  (Id. ¶ 75.)  Section 26806 states:

(a)   Commencing January 1, 2024, a licensee shall ensure that its business premises are monitored by a digital video surveillance system that meets all of the following requirements:

   (1)   The system shall clearly record images and, for systems located inside the premises, audio, of the area under surveillance.

   (2)   Each camera shall be permanently mounted in a fixed location. Cameras shall be placed in locations that allow the camera to clearly record activity occurring in all areas described in paragraph (3) and reasonably produce recordings that allow for the clear identification of any person.

   (3)   The areas recorded shall include, without limitation, all of the following:

      (A)   Interior views of all entries or exits to the premises.

      (B)   All areas where firearms are displayed.

      (C)   All points of sale, sufficient to identify the parties involved in the transaction.

   (4)   The system shall continuously record 24 hours per day at a frame rate no less than 15 frames per second.

   (5)   The media or device on which recordings are stored shall be secured in a manner to protect the recording from tampering, unauthorized access or use, or theft.

   (6)   Recordings shall be maintained for a minimum of one year.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:23-cv-02413-JVS-KES                     Date   March 1, 2024

Title   Adam Richards et al. v. Gavin Newsom et al.

      (7)    Recorded images shall clearly and accurately display the date and time.

      (8)    The system shall be equipped with a failure notification system that provides notification to the licensee of any interruption or failure of the system or storage device.

(b)    A licensee shall not use, share, allow access, or otherwise release recordings, to any person except as follows:

      (1)    A licensee shall allow access to the system to an agent of the department or a licensing authority conducting an inspection of the licensee's premises, for the purpose of inspecting the system for compliance with this section, and only if a warrant or court order would not generally be required for that access.

      (2)    A licensee shall allow access to the system or release recordings to any person pursuant to search warrant or other court order.

      (3)    A licensee may allow access to the system or release recordings to any person in response to an insurance claim or as part of the civil discovery process, including, but not limited to, in response to subpoenas, request for production or inspection, or other court order.

(c)    The licensee shall post a sign in a conspicuous place at each entrance to the premises that states in block letters not less than one inch in height:

      "THESE PREMISES ARE UNDER VIDEO AND AUDIO SURVEILLANCE. YOUR IMAGE AND CONVERSATIONS MAY BE RECORDED."

(d)    A licensee shall, on an annual basis, provide certification to the department, in a manner prescribed by the department, that its video surveillance system is in proper working order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | March 1, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

(e)     This section does not preclude any local authority or local governing body from adopting or enforcing local laws or policies regarding video surveillance that do not contradict or conflict with the requirements of this section.

Cal. Penal Code § 26806 (West 2024).

On December 19, 2023, Plaintiffs filed their Complaint alleging five constitutional claims under 42 U.S.C. § 1983: (1) violation of the First Amendment right to free speech; (2) violation of the Fourteenth Amendment right to equal protection; (3) violation of the Second Amendment right to keep and bear arms; (4) violation of the Fifth Amendment right against government taking without just compensation; and (5) violation of the Fourth Amendment right to privacy.[1]  (Compl. ¶¶ 447–96.)  The Court denied Plaintiffs' application for a temporary restraining order on December 27, 2023, and ordered Defendants to show cause as to why the Court should not grant Plaintiffs' application for a preliminary injunction.  (Dkt. No. 15.)

## II.  LEGAL STANDARD

On an application for a preliminary injunction, the plaintiff has the burden to establish that (1) the plaintiff is likely to succeed on the merits, (2) the plaintiff is likely to suffer irreparable harm if the preliminary relief is not granted, (3) the balance of equities favors the plaintiff, and (4) the injunction is in the public interest.  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 5, 20 (2008).

In the Ninth Circuit, the Winter factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

---

[1] The Court notes that Plaintiffs filed their 115-page Complaint over one year after the section 26806's enactment and just thirteen days before the statute was set to go into effect on January 1, 2024.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-02413-JVS-KES | Date | March 1, 2024 |

| | |
|---|---|
| Title | Adam Richards et al. v. Gavin Newsom et al. |

The plaintiff may meet this burden by "demonstrat[ing] either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." Johnson v. Cal. State Bd. of Acct., 72 F.3d 1427, 1429 (9th Cir. 1995) (internal quotations and citation omitted). "To reach this sliding scale analysis, however, a moving party must, at an 'irreducible minimum,' demonstrate some chance of success on the merits." Global Horizons, Inc. v. U.S. Dep't of Labor, 510 F.3d 1054, 1058 (9th Cir. 2007) (citing Arcamuzi v. Cont'l Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987)).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

#### 1. First Amendment

Individuals have a right to be free from retaliation for engaging in protected First Amendment activity. Nieves v. Bartlett, 139 S. Ct. 1715, 1721 (2019). To state a First Amendment retaliation claim, a plaintiff must plausibly allege that (1) the plaintiff was engaged in a "constitutionally protected activity," (2) the defendant's actions would "chill a person of ordinary firmness from continuing to engage in the protected activity," and (3) the protected activity was a "substantial or motivating factor"[2] in the defendant's conduct. Capp v. Cnty. of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016)).

#### a. Recording

Plaintiffs argue that section 26806 violates their rights to free speech, assembly, and remain anonymous. (Mot. at 4–6.) Plaintiffs contend that section 26806 has a chilling effect on the likelihood that persons "will seek out Plaintiffs' literature at gun

---

[2] Courts have described this element in various ways, but in essence, a plaintiff is required to establish a causal connection between "a defendant's animus and a plaintiff's injury." Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019). A plaintiff must "show that an official acted with a retaliatory motive" and that "the motive . . . cause[d] the injury." Id. (emphasis omitted). At a minimum, the retaliatory intent must be a "but-for" cause, meaning that the defendant would not have taken the adverse action against the plaintiff "absent the retaliatory motive." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-02413-JVS-KES                Date    March 1, 2024

Title    Adam Richards et al. v. Gavin Newsom et al.

stores, inquire about their activities, have discussions with association staff and trainers on pertinent issues, and sign up to become members" of the organizational Plaintiffs. (Id. at 4.)  Plaintiffs assert that "such surveillance will discourage and undermine the free association of people for fear of government monitoring, publication, or retribution." (Id.)  Moreover, Plaintiffs allege viewpoint discrimination against pro-Second Amendment speakers by "target[ing] only stores engaged in the exercise of Second Amendment rights to possess and transfer firearms."  (Id. at 5 (quoting Compl. ¶ 161).)

Defendants respond that "section 26806 does not proscribe any association or speech, nor does it 'chill or silence a person of ordinary firmness from future First Amendment activities.'"  (Opp'n at 4 (quoting Mendocino Env't Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999)).)  Instead, Defendants assert that the statute mandates digital surveillance recording systems and "imposes consequences upon dealers who fail to comply," but "nothing about the law proscribes, regulates, or punishes any sort of speech or association or says anything about the content of the recordings themselves."  (Id.)  Defendants also argue that Plaintiffs' "'fear of pervasive governmental monitoring' is objectively unreasonable" because the statute permits only limited access to the surveillance recordings—such as pursuant to a warrant, court order, or license inspection—but otherwise forbids and provides remedies for their unlawful disclosure.  (Id. at 5 (quoting Mot. at 5).)  On viewpoint discrimination, Defendants argue that section 26806 "uniformly requires businesses in a particular, highly regulated industry to take specific safety measures" but does not turn on content or viewpoints expressed by those engaging in such business.  (Id.)  Moreover, Defendants argue that the statute "does not require anyone to disclose their protected group affiliation, beyond what is inherently disclosed by appearing in public and purchasing a firearm."  (Id. at 7.)

Where Plaintiffs' claims falter on the likelihood of success is on the second prong of the First Amendment analysis.  A plaintiff must show that a person of "ordinary firmness" would be deterred—or "chilled"—from further engaging in the protected activity.  Capp, 940 F.3d at 1053.  This is an objective inquiry.  Id.  An "unconstitutional chill" may "only exist if the government action has injured the individual or places the individual in immediate danger of sustaining a direct injury."  O'Keefe v. Van Boening, 82 F.3d 322, 325 (9th Cir. 1996).  Threats of arrest have such chilling effect.  See, e.g., Houston v. Hill, 482 U.S. 451, 459 n.7 (1987).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-02413-JVS-KES | Date | March 1, 2024 |

| | |
|---|---|
| Title | Adam Richards et al. v. Gavin Newsom et al. |

Plaintiffs have failed to show an objective chill on protected speech. The statute's audio and visual recording of an individual's visit and potential purchase of a firearm from a dealer—which is only accessible by the government in narrowly circumscribed instances and does not impose any consequences for recorded speech—is no more chilling than the longstanding regulatory regime that mandates the tracking and sharing of dealer and purchaser information with government agencies. That is to say, the statute's surveillance does not injure, threaten to injure, threaten to arrest, or threaten Plaintiffs with anything at all for their speech such that their First Amendment right to free speech could reasonably be chilled. Likewise, there are no consequences for assembly that would violate the right to free association. The only ramification that firearm dealers face under the statute is for failure to comply with the recording requirements, not for anything said on the recordings themselves. The statute also does not compel dealers and purchasers to have a conversation in view of the cameras. The transaction itself must be recorded, but this audio/visual capture is essentially an alternate manifestation of the recording process that is already injected into firearm transactions by a host of other background check and purchase-tracking regulations. See, e.g., Cal. Penal Code § 27515 (prohibiting the knowing transfer of a firearm to an individual who is not the purchaser or person loaned the firearm in violation of other regulations); id. § 27520(b) (prohibiting the acquisition of a firearm with the intent to transfer outside of the licensed dealer requirements). These regulations are specific to the firearms trade, and Plaintiffs fail to show that the extension of such regulations through section 26806 is a product of viewpoint discrimination. The fact that some dealers may choose to conduct the regulated activity of firearms sales in otherwise private spaces does not shut out the government from carrying out that regulation. Under section 26806, the government does not have persistent access to recordings and may only access them in limited circumstances. See Cal. Penal Code § 26806(b). Plaintiffs' "fear of pervasive governmental monitoring" is unfounded, and any chill stemming from it is subjective.

### b.    Anonymity

Plaintiffs also argue that the statute "eviscerates Plaintiffs' First Amendment rights to remain anonymous to government officials." (Mot. at 6.) Defendants contend that Plaintiffs cite no authority to support the right to speak anonymously in public business discussions, particularly those in the highly regulated firearm industry that is already subject to identity verification and public disclosure. (Opp'n at 6.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | March 1, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

Plaintiffs' claim that section 28606 violates their "rights to remain anonymous to government officials" faces a perilous likelihood of success. To support their argument that the statute improperly deprives Plaintiffs of "anonymity when engaging in constitutionally protected commerce, speech, and association at California's gun stores," Plaintiffs cite a recent Second Circuit case involving the "compelled disclosure of pseudonymous social media handles to a licensing officer." Antonyuk v. Chiumento, 2023 U.S. App. LEXIS 32492, at *112 (2d Cir. 2023). Not only are the facts not analogous to the instant case, the asserted right is not either: the court specifically considered the "right to pseudonymous speech on social media." Id. The court in Antonyuk noted that "nearly all [social media] handles are pseudonymous" and evaluated historical analogues "conditioning lawful carriage of a firearm on disclosing one's pseudonyms or, more generally, on informing the government about one's history of speech." Id.

Here, firearm transactions have long been conditioned on disclosing the identities of dealers and purchasers, and section 26806 simply records the video and audio of a transaction already subject to disclosure to the government. The anonymity Plaintiffs claim that section 26806 "eviscerate[d]" did not exist as a "constitutionally protected activity" before the statute's enactment. To the extent that Plaintiffs complain of a lack of anonymity of speech made in front of cameras, Plaintiffs invite the disclosure by engaging in such speech during a public and regulated business transaction. Unlike Antonyuk, which implicated the sharing of individuals' history of pseudonymous speech on social media, section 26806 cabins its recording of information to the firearm transactions themselves—transactions that, it bears repeating, are conducted as part of public business and shared with the government through other regulations. Antonyuk is simply too distinct to be persuasive.

### c.    Signage

Plaintiffs additionally argue that the statute's requirement to display a warning that customers are under surveillance "impermissibly compels speech" and "discourag[es] them from ever entering the premises." (Mot. at 6.) Defendants contend that the signage requirement does not violate the First Amendment as compelled speech because it "requires signage disclosing the purely factual information that surveillance is underway" and it is "reasonably related to the State's interest in preventing deception of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | March 1, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

consumers." (Opp'n at 7 (quoting Zauderer v. Off. of Disciplinary Couns., 471 U.S. 626, 651 (1985)).)

The government does not violate the First Amendment by compelling commercial speech that is "purely factual and uncontroversial information" if it is "reasonably related to a substantial government interest." CTIA - The Wireless Ass'n v. City of Berkeley, 928 F.3d 832, 844–45 (9th Cir. 2019) (quoting Zauderer, 471 U.S. at 651).

The case law does not portend success on Plaintiffs' claim of compelled speech. In Zauderer, the Supreme Court permitted the Office of Disciplinary Counsel of the Supreme Court of Ohio (the agency responsible for the discipline of licensed attorneys in the state) to require that "an attorney advertising his availability on a contingent-fee basis disclose that clients will have to pay costs even if their lawsuits are unsuccessful." 471 U.S. at 651. The Supreme Court drew a distinction between a state "prescrib[ing] what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein" and "requir[ing] that [a business] include in his advertising purely factual and uncontroversial information about the terms under which his services will be available." Id. Despite "recogniz[ing] that unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech," the Supreme Court held that "an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." Id.

Here, section 26806(c) requires dealers to post a sign stating the following: "THESE PREMISES ARE UNDER VIDEO AND AUDIO SURVEILLANCE. YOUR IMAGE AND CONVERSATIONS MAY BE RECORDED." The Supreme Court's holding in Zauderer applies despite the factual distinctions between the regulation at issue that case, which compelled disclosure in advertisements of the fact that customers must pay costs, and section 28606, which compels disclosure in stores of the fact that customers are recorded. Here, California prohibits firearm dealers from not disclosing to customers a condition of the transaction—that it will be subject to video and audio recording.

The fact that a "purely factual statement . . . can be tied in some way to a controversial issue" does not make the statement controversial "for that reason alone." CTIA, 928 F.3d at 845. In CTIA, the Ninth Circuit considered a Berkeley city ordinance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-02413-JVS-KES                     Date    March 1, 2024

Title    Adam Richards et al. v. Gavin Newsom et al.

that "require[d] cell phone retailers to disclose information to prospective cell phone purchasers about what the FCC has concluded is appropriate use of the product they are about to buy." Id. at 848. In National Institute of Family and Life Advocates v. Becerra, 138 S. Ct. 2361, 2372 (2018) ("NIFLA"), the Supreme Court held that the California requirement that clinics that did not provide abortion services must post a disclosure providing factual information about access to abortion, among other state-provided services, was controversial. "While factual, the compelled statement took sides in a heated political controversy, forcing the clinic to convey a message fundamentally at odds with its mission." CTIA, 928 F.3d at 845 (citing NIFLA, 128 S. Ct. at 2372). Here, the disclosure to consumers that recording is in progress is both purely factual and uncontroversial. The required signage conveys only pure facts informing consumers that the premises are recorded by audio and video and that by entering, their "image and conversations may be recorded." Unlike the disclosure in NIFLA, which "forc[ed] the clinic to convey a message fundamentally at odds with its mission," section 26806 conveys no such message. Presumably, the firearm dealers' mission is to deal firearms. Plaintiffs' disagreement with section 26806 or its "tie[] in some way to a controversial issue," if the regulation and surveillance of firearms trade can be construed as such, does not suffice for controversy. The required signage does not compel dealers to state, for instance, that they "agree and support section 26806." The statute's disclosure of recording does not compel speech "fundamentally at odds" with firearm dealers' mission, at least to an extent that deems the content of the required signage controversial.

"There is no question that protecting the health and safety of consumers is a substantial government interest." Id. at 845. Section 26806 is explicitly a public safety statute, as the legislative history makes clear. (Req. for Judicial Notice, Ex. A at 8, Ex. B at 6–7, Dkt. No. 20-1.) The statute seeks, in part, to prevent "straw" purchasers from circumventing other firearm transfer regulations such that firearms fall into the hands of those who may not lawfully possess them. (Id.) By recording dealers' premises, the statute also seeks to record the identities of those who steal firearms. (Id.) In both instances, the audio and video footage can assist law enforcement in the prevention, identification, and prosecution of the perpetrators, a function reasonably related to protecting the health and safety of consumers.

Accordingly, Plaintiffs have not demonstrated a likelihood of success on the merits of their First Amendment claims that would warrant a preliminary injunction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:23-cv-02413-JVS-KES                     Date   March 1, 2024

Title   Adam Richards et al. v. Gavin Newsom et al.

2.      Fourteenth Amendment

Plaintiffs argue that section 26806 violates the guarantee of equal protection under the Fourteenth Amendment because it "subjects only gun owners, prospective gun owners, and gun dealers" to a "selective surveillance regime" that amounts to "a viewpoint-discriminatory and/or animus-based restriction on Plaintiffs' protected political and ideological speech that serves no compelling governmental interest." (Mot. at 12 (quoting Compl. ¶ 457).)

Defendants respond that Plaintiffs "fail to 'allege membership in a protected class' because firearm dealers are not a suspect class." (Opp'n at 19.) Defendants continue that Plaintiffs "cannot rely on a 'class-of-one' theory because 'gun stores are materially different from other retail businesses.'" (Id. (quoting Teixeira v. Cnty. of Alameda, 822 F.3d 1047, 1053 (9th Cir. 2016)).) Moreover, Defendants contend that Plaintiffs' animus theory is "premised entirely on conclusory allegations unsupported by any evidence." (Id.)

To prevail on an equal protection claim, a plaintiff must "show that a class that is similarly situated has been treated disparately." Boardman v. Inslee, 978 F.3d 1092, 1117 (9th Cir. 2020). If there is no suspect class at issue, differential treatment is presumed to be valid so long as it is "rationally related to a legitimate state interest." City of Cleburne v. Cleburne Living Cent., 473 U.S. 432, 440 (1985). Plaintiffs allege that the statute treats firearm dealers differently from other businesses, but they do not cite to any binding precedent to suggest that firearm dealers or anyone transferring firearms constitute a suspect class. In fact, it is not uncommon for highly regulated businesses, like banks, to be subject to such video surveillance regulations. See, e.g., 12 C.F.R. § 326.3 (requiring federally insured banks to maintain video recording of banking office activity).

The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). To succeed on its "class of one" claim, Plaintiffs must demonstrate the Defendants "(1) intentionally (2) treated [Plaintiffs] differently than other similarly situated [persons or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-02413-JVS-KES          Date    March 1, 2024

Title    Adam Richards et al. v. Gavin Newsom et al.

businesses], (3) without a rational basis." Gerhart v. Lake Cnty., 637 F.3d 1013, 1022 (9th Cir. 2011).

"Class-of-one plaintiffs 'must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" Warkentine v. Soria, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016) (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)). The Ninth Circuit has affirmed that standard. See SmileDirectClub, LLC v. Tippins, 31 F.4th 1110, 1123 (9th Cir. 2022) ("We join our sister circuits in holding that a class-of-one plaintiff must be similarly situated to the proposed comparator in all material respects."). Plaintiffs make no showing to support a class-of-one. Accordingly, the Court applies rational basis review to Plaintiffs' equal protection claim.

The rational basis review test is functionally the same under substantive due process and the Equal Protection Clause. See Gamble v. City of Escondido, 104 F.3d 300, 307 (9th Cir. 1997). Substantive due process only requires a rational relationship between the challenged policy and a legitimate governmental objective. See Brach v. Newsom, 6 F.4th 904, 924 (9th Cir. 2021). Under the Equal Protection Clause, if there is no suspect class at issue a policy "need only rationally further a legitimate state purpose to be valid." Minn. State Bd. for Cmty. Colls. v. Knight, 465 U.S. 271, 291 (1984) (internal quotations omitted). "Given the standard of review, it should come as no surprise [courts] hardly ever strike[] down a policy as illegitimate under rational basis scrutiny." Trump v. Hawaii, 138 S. Ct. 2392, 2420 (2018).

The two-tiered rational basis inquiry first asks whether the challenged law has a legitimate purpose, then whether the challenged law promotes that purpose. See Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon, 880 F.3d 450, 457 (9th Cir. 2018). Defendants' stated purpose of "requiring security systems is to 'curb gun store theft and straw purchasing' and to assist in 'related enforcement efforts.'" (Opp'n at 20 (quoting Req. for Judicial Notice, Ex. A at 8).) Crime prevention is clearly a legitimate purpose.[3] See United States v. Scott, 450 F.3d 863, 870 (9th Cir. 2006) ("[T]he

---

[3] The legislative history spells out the crime prevention and response purposes of section 26806. Plaintiffs cite to the hearings of both the California Senate Committee on Public Safety and Assembly Committee on Public Safety. "Thefts from licensed gun retailers have been a persistent problem in California." (Req. for Judicial Notice, Ex. A at 8.) "Another practice contributing to the illicit gun

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | March 1, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

government's interest in preventing crime by anyone is legitimate and compelling."). The legislature's references to crime statistics shows that it considered relevant data before deciding to implement the statute. (See Req. for Judicial Notice, Ex. A at 7.) Under rational basis review, courts "do not require that the government's action actually advance its stated purposes, but merely look to see whether the government *could* have had a legitimate reason for acting as it did." Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 66 (9th Cir. 1994).

Because the statute easily survives rational basis review, the Court finds that Plaintiffs have not shown that their Fourteenth Amendment claims are likely to succeed on the merits.

> 3.   Second Amendment

Plaintiffs argue that section 26806 "undoubtedly regulates Second Amendment-protected persons, arms, and activities," and they are entitled to injunctive relief unless Defendants show "a Founding-era tradition of similar firearm-related government mass surveillance." (Mot. at 7.) Plaintiffs assert that there is no "distinctly similar historical regulation" as "the Founders could not have addressed California's modern concerns with mass audiovisual surveillance" unless they "requir[ed] every gunsmith to employ a sketch artist . . . and a reporter to write down conversations." (Id. at 9 (citing N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 26 (2022)).) Plaintiffs contend that the statute infringes on the Second Amendment by "conditioning the exercise of the right to acquire (and sell) firearms on the acceptance of pervasive surveillance and monitoring." (Id. at 8.) The result, according to Plaintiffs, is that "such surveillance undoubtedly 'will chill the purchase of firearms in California.'" (Id. (quoting Compl. ¶ 212).)

Defendants respond that under Bruen's first step of "whether the 'proposed course of conduct' falls within the Second Amendment," or "whether the regulation at issue prevents any 'people' from 'keep[ing]' or 'bear[ing]' 'Arms' for lawful purposes,"

---

market is 'straw purchasing,' the illegal purchase of a firearm by one person for another." (Id.) "[P]roving these crimes in court can be a challenge, as prosecutors must show evidence connecting the straw purchaser and person for whom they are purchasing the gun. . . . By imposing stricter security and training requirements on California gun dealers and their employees, this bill ostensibly seeks to curb gun store theft and straw purchasing, and buttress related enforcement efforts." (Id. at 7–8.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-02413-JVS-KES | Date | March 1, 2024 |
| Title | Adam Richards et al. v. Gavin Newsom et al. | | |

section 26806 "is a presumptively lawful regulation on the commercial sale of arms, an activity outside the scope of the Second Amendment's text as originally understood." (Opp'n at 8–9 (first quoting <u>United States v. Alaniz</u>, 69 F.4th 1124, 1128 (9th Cir. 2023); then quoting <u>Bruen</u>, 597 U.S. at 34; and then quoting U.S. Const. amend. II).) Defendants contend that Plaintiffs' arguments impermissibly broaden <u>Bruen</u>'s first step analysis to "whether the challenged law has any tangential effect on anything to do with firearms." (Opp'n at 10.) On the contrary, Defendants assert that the Ninth Circuit has held that, under the Second Amendment, "there is no 'independent right to sell or trade weapons' and that '[n]othing in the specific language of the Amendment suggests that sellers fall within the scope of its protection.'" (<u>Id.</u> at 11 (quoting <u>Teixeira v. Cnty. of Alameda</u>, 873 F.3d 670, 683 (9th Cir. 2017) (en banc)).) Defendants make a similar contention in response to Plaintiffs' assertion that the statute is cost-prohibitive and would drive dealers out of business, arguing both that the sale of arms is not implicated by the Second Amendment and it is "speculative and devoid of evidence" that firearm supply would be thus "meaningfully constrained." (<u>Id.</u> at 11.) Further, Defendants dispute Plaintiffs' importation of the doctrine of chilling First Amendment rights into the Second Amendment context as unsupported by case law. (<u>Id.</u> at 12–13.) Defendants argue that there is no evidence that section 26806 would "chill . . . a person of ordinary firmness from future [Second] Amendment activities." (<u>Id.</u> at 13 (quoting <u>Mendocino Env't Ctr.</u>, 192 F.3d at 1300).) Concerning <u>Bruen</u>'s second, history-and-tradition analysis, Defendants argue that section 26806 is subject to a "nuanced approach" in that it "fits squarely within the well-established tradition of regulating the commercial sale of firearms," citing examples of firearm and ammunition sales regulations in Massachusetts, Maryland, South Carolina, Michigan, and Ohio between 1780 and 1835. (<u>Id.</u> at 14–15.) Defendants assert that states have likewise enacted laws collecting the information of firearm sellers and buyers—from the Virginia Colony's recording of firearms and ammunition in 1631 and 1651 to Illinois's recordkeeping and registration of deadly weapons in 1881. (<u>Id.</u> at 16.)

In <u>Bruen</u>, the Supreme Court clarified the test for Second Amendment claims set forth in <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008). 597 U.S. at 20.

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-02413-JVS-KES              Date    March 1, 2024

Title    Adam Richards et al. v. Gavin Newsom et al.

the individual's conduct falls outside the Second Amendment's "unqualified command."

Id. at 24 (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 50 (1961)).  The first step, then, is a "'textual analysis' focused on the 'normal and ordinary' meaning of the Second Amendment's language," particularly the operative clause "the right of the people to keep and bear Arms shall not be infringed."  Id. at 20 (quoting Heller, 554 U.S. at 576–77, 578).

Notwithstanding Bruen, the Second Amendment's protections are not so expansive as to foreclose regulation of the transfer of firearms, either textually or historically.  The full Ninth Circuit concluded that no plain reading of "keep" or "bear" may encompass the transfer, sale, or purchase of firearms in the scope of the Second Amendment as originally understood.  Teixeira, 873 F.3d at 683 ("Nothing in the text of the Amendment, as interpreted authoritatively in Heller, suggests the Second Amendment confers an independent right to sell or trade weapons.")  Regardless of how dealers and purchasers may feel about appearing in recorded footage, the audio and video recording of transfers of firearms does not affirmatively prevent participants in such transactions from keeping or bearing arms.[4]  On the first step alone, Defendants' claim does not have a likelihood of success on the merits to support a preliminary injunction, but the Court nevertheless proceeds to the second.

To survive the second step in the Second Amendment analysis, a regulation must be "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."  Bruen, 597 U.S. at 19.  As the Supreme Court did in Heller and Bruen, courts survey history with broad scope, from "analogous arms-bearing rights in state constitutions that preceded and immediately followed adoption of the Second amendment" to "how the Second Amendment was interpreted from immediately after its ratification through the end of the 19th century."  Id. at 20 (citing Heller, 554 U.S. at 600–01, 605 (internal citations omitted)).  What constitutes a sufficient historical

_____

[4] Moreover, at least one of the dealer Plaintiffs has a security system, (Gaalswyk Decl.  ¶ 13, Dkt. No. 11-1), and given the nature of any business with high-value inventory, it is likely that others do as well.  The privacy implications and other constitutional considerations do not vary with cost of the system.  To the extent that Plaintiffs argue that the recording requirement is so cost prohibitive as to result in a downstream violation of the Second Amendment, the argument is unavailing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | March 1, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

analogue, though, "is neither a regulatory straightjacket nor a regulatory blank check." Id. at 30. "[A]nalogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." Id.

Historical analogues abound. As the Ninth Circuit noted in Teixeira, "colonial governments substantially controlled the firearms trade. The government provided and stored guns, controlled the conditions of trade, and financially supported private firearms manufacturers." 873 F.3d at 685 (citing Solomon K. Smith, Firearms Manufacturing, Gun Use, and the Emergence of Gun Culture in Early North America, 49th Parallel, Vol. 34, at 6–8, 18–19 (2014)). Defendants cite numerous state laws, most of which were enacted in the nineteenth century, that "required the taking of information from firearm sellers and buyers" or "required commercial dealers to take safety and security measures as well as permit inspection by government authorities." (Opp'n at 15–16.) For example, Defendants point to an 1820 New Hampshire law regarding government inspections of gunpowder, 1820 N.H. Laws 274–76, Ch. 25, §§ 1–9, and an 1847 Vermont law providing for fire-wardens to inspect the manufacture and storage of firearms, 1865 Vt. Acts & Resolves 213, ch. 141, § 10. State recordkeeping of firearm transactions also dates back to the early nineteenth century, from Massachusetts and Maine early in the century and Illinois following Reconstruction. (Opp'n at 16 (citing 1814 Mass. Acts 464, ch. 192, § 2; 1821 Laws of the State of Maine 685–86, vol. 2, § 3; 1881 Ill. Laws 73–74, § 3).)

What Defendants do not cite, however, are historical analogues of laws whose purpose was to document the appearance and sound of firearm transfers. Plaintiffs note that such a regulation would have been practically impossible at the time of the nation's founding, but this is a point in favor of Defendants, not Plaintiffs. The Supreme Court in Heller, and in Bruen by reference, acknowledged that contemporary regulatory circumstances may not always have perfect counterparts—the aforementioned "historical twins"—but nevertheless may be permissible under the history and tradition analysis. As the Supreme Court in Bruen wrote, "we acknowledge that 'applying constitutional principles to novel modern conditions can be difficult and leave close questions at the margins.'" Bruen, 597 U.S. at 31 (quoting Heller v. District of Columbia, 670 F.3d 1244, 1275 (D.C. Cir. 2011) (Kavanaugh, J., dissenting)). At this preliminary injunction stage, even a cursory review of a handful of state laws dating back to the colonies reveals

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | March 1, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

a dim likelihood of Plaintiffs' success on the merits. The tradition of government inspection and disclosure of firearms trade supports a conclusion that section 26806 comports with that history in compliance with the Second Amendment's protections

Accordingly, Plaintiffs have not demonstrated a likelihood of success on the merits of their Second Amendment claims that would warrant a preliminary injunction.

4.    Fourth Amendment

Plaintiffs first argue that section 26806 violates the Fourth Amendment as a general warrant in that "it grants blanket authority to search all locations associated with a disfavored trade, it operates without expiration, it fails to impose any accountability on government actors via a neutral judicial officer, and it authorizes perpetual intrusions into homes and businesses." (Mot. at 10.) Second, Plaintiffs argue that the statute constitutes a trespassory invasion of private property because it "mandates a physical intrusion on and occupation of Plaintiffs' private property via the installation and perpetual use of audiovisual recording equipment." (Id. at 11.) Third, Plaintiffs argue that section 26806 violates their reasonable expectation of privacy under Katz v. United States, 389 U.S. 347 (1967), because it "plac[es] surveillance cameras inside homes and businesses on a perpetual, 24/7 basis." (Id. at 11.) Plaintiffs also dispute the validity of the "highly regulated industry" exception to the Fourth Amendment as applied to firearm dealers. (Id. at 12.)

Defendants respond that it is binding precedent that "firearms dealers are a closely regulated industry subject to extensive federal and state regulations and licensing schemes." (Opp'n at 17.) Defendants assert that those regulations include "obtain[ing] personal information from potential purchasers for recording and background-check purposes" and "submit[ting] to inspections from federal and state authorities, the warrantless nature of which has been upheld as constitutional." (Id. at 18.) Defendants argue that "the highly regulated firearms industry" has "little reasonable expectation of privacy" and thus the statute "does not effectuate a 'search' within the meaning of the Fourth Amendment." (Id. at 18.) Defendants contend that section 26806 does not resemble a "standardless general warrant" because it "defin[es] the circumstances where recording is required and when recordings can be accessed," which are "circumstances the Fourth Amendment already permits: either with a warrant or other court order, or because a warrant is not necessary or an exception applies." (Id. at 19.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | March 1, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

The Fourth Amendment's presumption that warrantless searches are unreasonable is subject to the administrative use or special needs exceptions, within which is the justification of warrantless searches of "closely regulated businesses for specified purposes." Verdun v. City of San Diego, 51 F.4th 1033, 1039 (9th Cir. 2022); Whalen v. McMullen, 907 F.3d 1139, 1151 (9th Cir. 2018) (applying the administrative search exception to "inspections of regulated businesses"). Defendants list over twenty statutes subjecting firearm dealers to licensing, sales, information sharing, and inspection requirements. (Opp'n at 17–18). The significant regulatory framework surrounding the sales of firearms leads to the reasonable conclusion that such dealers are closely regulated businesses that have at least a diminished expectation of privacy under the Fourth Amendment. Indeed, "[w]hen a dealer chooses to engage in this pervasively regulated business . . . he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection." United States v. Biswell, 406 U.S. 311, 316 (1972). As such, Plaintiffs have not demonstrated a likelihood of success on the merits of their Fourth Amendment claim that would support a preliminary injunction.

5.    California Constitution

Plaintiffs argue that section 26806 violates the right to privacy under Article I, Section 1 of the California Constitution. (Mot. at 13.) Defendants respond that "under the Eleventh Amendment, federal courts lack jurisdiction to enjoin state institutions and state officials on the basis of state law." (Opp'n at 19–20 (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 124–25 (1984); Doe v. Regents of the Univ. of Cal., 891 F.3d 1147, 1153 (9th Cir. 2018)).) The Court agrees. The Eleventh Amendment speaks clearly on its ban of the very remedy Plaintiffs seek: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Plaintiffs' claim under the California Constitution has no likelihood of success on the merits to support a preliminary injunction.

6.    Applicability to Specific Contexts

Following oral argument, the Court requested that the parties submit supplemental briefs on the applicability of section 26806 to two contexts mentioned in Plaintiffs' Complaint: (1) "kitchen table" firearm transactions (or those firearm sales conducted in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-02413-JVS-KES | Date | March 1, 2024 |

| | |
|---|---|
| Title | Adam Richards et al. v. Gavin Newsom et al. |

private homes), and (2) gun show transactions.  In their supplemental brief, Defendants set forth that they "do not interpret section 26806 to apply to gun shows, and thus will not further address that issue here."  (Defendants' Suppl. Brief at 1.)  Accordingly, the Court does the same.[5]

Plaintiffs' Complaint may be interpreted as both a facial and as-applied challenge of the statute.  To the extent that it is an as-applied challenge, the Court considers the supplemental briefs as they pertain to the context of kitchen table firearm transactions.

Defendants argue that section 26806 applies to home-based dealers because, "[l]ike all regulations on licensed firearms dealers," "premises" under California's statutory scheme "is tied to 'the building designated in the license'" without any exemption for the home.  (Id. (quoting Cal. Pen. Code § 16810).)  Defendants assert that operation of a firearms dealership business in a home "does not diminish the risk of unlawful transactions or the benefit of surveillance as a law enforcement tool."  (Id. at 2.) Defendants compare the firearm industry to other highly regulated industries that are subject to in-home regulation and surveillance.  (Id. 2–3.)  Defendants contend that the law's effect would not be different as applied to home-based dealers versus storefronts with regard to Plaintiffs' First, Second, and Fourth Amendment claims.  (Id. at 4–7.)

Plaintiffs argue that the home is subject to heightened interests in First, Second, and Fourth Amendment protections, regardless of whether home firearm dealers operate in a closely regulated industry.  (Plaintiffs' Suppl. Brief at 1.)  Plaintiffs assert that regulations of other, "less-constitutionally protected" home-based businesses are subject to restrictions such as surveillance only when open for business, rather than the "round-the-clock audiovisual surveillance" of section 26806.  (Id.)  Plaintiffs also argue that the statute chills First Amendment rights by "indirectly alter[ing] lawful behavior."  (Id. at 3.)  Plaintiffs assert that a host of private conversations "unnecessarily sweep[] within [the statute's] ambit."  (Id.)  Plaintiffs argue that a constitutional injury occurs when a home-based dealer must avoid parts of the home or leave it in order to have a private conversation.  (Id. at 4.)  Plaintiffs contend that the circumstances under which recordings may be accessed under section 26806 include "by the public via civil

---

[5] For the purposes of enforcement, Defendants' statement regarding section 26806's inapplicability to gun shows operates as judicial estoppel precluding enforcement of the statute at gun shows henceforth.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | March 1, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

subpoena for matters having nothing to do with investigating crimes." (Id. at 5.)
Moreover, Plaintiffs assert that over half of dealers in the United States are located at
residential addresses. (Id. at 6.)

"[C]lassifying a lawsuit as facial or as-applied affects the extent to which the
invalidity of the challenged law must be demonstrated and the corresponding 'breadth of
the remedy,' but it does not speak at all to the substantive rule of law necessary to
establish a constitutional violation." Bucklew v. Precythe, 139 S. Ct. 1112, 1127 (2019)
(quoting Citizens United v. FEC, 558 U.S. 310, 331 (2010)). The arguments Plaintiffs
direct toward the home-based dealers do not present a greater likelihood of success than
the facial challenge addressed *supra*, and the same reasoning applies. There are no
consequences for things said or done in the home in recordings so as to result in a chill
of First Amendment rights. Enforcement of section 26806 as applied to kitchen table
transfers does not pose any greater a threat to one's exercise of Second Amendment
rights than that of storefronts because it concerns audio and video recording of transfers
rather than an impairment of "keeping and bearing arms." The close regulation of
firearm transactions applies to home-based dealers just as they do storefronts so as to
diminish the likelihood of success on a Fourth Amendment claim as applied to the home
context.

Not only do Plaintiffs' claims not show a likelihood of success on the merits as
applied to the context of kitchen table firearm transactions, but were the Court to rule
that firearm transactions conducted in the home are not subject to enforcement of section
26806, it would eviscerate the public safety goals of the statute by exempting a very
large number of dealers from regulation. (See Req. for Judicial Notice, Ex. A at 8, Ex. B
at 6–7.) The minimal intrusion of surveillance of gun transactions in specified areas and
limited access to the recordings is offset by the need for public protection. Plaintiffs'
assertion that over half of dealers in the United States are located at residential addresses
does not address the makeup of dealers in California—the only dealers affected by the
state statute. Still, a large number of home-based dealers cuts against Plaintiffs'
argument. To exempt the home from enforcement of section 26806's surveillance
provision would leave a substantial portion of dealers unregulated.

Plaintiffs pay particular attention to the circumstances of attorneys conducting
kitchen table firearm transactions and the risks surveillance poses to confidentiality. But
attorneys do not operate in a bubble insulated from possible intrusions on the attorney-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | March 1, 2024 |
|----------|----------------------|------|---------------|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|-------|---------------------------------------------|

client relationship. For example, their communications with clients are not protected from surveillance everywhere they go. If an attorney and client choose to go somewhere unprotected, such as a public space or private business subject to surveillance, they risk losing the confidentiality of any communications held there. "[W]here the client communicates with his attorney in the presence of other persons who have no interest in the matter, . . . he is held to have waived the privilege." People v. Rhoades, 8 Cal. 5th 393, 410 (2019) (quoting D.I. Chadbourne, Inc. v. Superior Ct. of City & Cnty. of San Francisco, 60 Cal. 2d 723, 735 (1964)). Just as an attorney and client who speak loudly in a public space in the presence of others opens the door to waiving confidentiality, attorneys risk doing the same by conducting closely regulated business in the same space as their legal work. As such, attorneys cannot do an end-run around regulation by conducting their legal work any place otherwise subject to statutorily mandated surveillance.

Accordingly, Plaintiffs have not demonstrated a likelihood of success on the merits of their constitutional claims that would warrant a preliminary injunction as applied to kitchen table firearm transactions.

B. *Other Winter Factors*

"Likelihood of success on the merits is the most important factor; if a movant fails to meet this threshold inquiry, we need not consider the other factors." Teddy's Red Tacos Corp. v. Vazquez, No. 19-3432, 2019 U.S. Dist. LEXIS 219537, at *9 (C.D. Cal. Oct. 10, 2019) (quoting California v. Azar, 911 F.3d 558, 575 (9th Cir. 2018) (internal quotation marks omitted)). Nevertheless, Plaintiffs' application for a preliminary injunction fails on the separate and independent grounds of irreparable harm and balance of equities. Plaintiffs make no showing of irreparable harm. As discussed above, Plaintiffs have not made a sufficient showing of a likelihood of success on the merits that their constitutional rights have been violated, so they cannot rest their claim of irreparable harm on a deprivation of rights theory alone. (See Mot. at 16.) Plaintiffs also argue, "[n]o doubt, Section 26806 *will* chill (and violate outright) Plaintiffs' First and Second Amendment rights." (Id. (emphasis added).) At this point, the harm Plaintiffs allege is purely speculative and does not support a preliminary injunction. The balance of the equities and public interest also tip in favor of Defendants and the denial of a preliminary injunction. The crime prevention and safety concerns at the center of section 26806, namely the combating of unlawful transfers of firearms to those not permitted to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | March 1, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

possess them, would be impermissibly constrained if the statute were enjoined, and Plaintiffs have not shown an actual or imminent harm that would support an injunction.

Accordingly, Plaintiffs have not demonstrated an irreparable harm or balance of equities that would warrant a preliminary injunction.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the application for preliminary injunction.

**IT IS SO ORDERED.**