1    C. D. Michel – SBN 144258
      Tiffany D. Cheuvront – SBN 317144
2    Joshua Robert Dale – SBN 209942
      MICHEL & ASSOCIATES, P.C.
3    180 E. Ocean Blvd., Suite 200
      Long Beach, CA 90802
4    Telephone: (562) 216-4444
      Facsimile: (562) 216-4445
5    cmichel@michellawyers.com

6    Attorneys for Plaintiffs Adam Richards, Jeffrey Vandermeulen, Gerald Clark, Jesse
7    Harris, On Target Indoor Shooting Range, LLC, Gaalswyk Enterprises, Inc. (D/B/A
      Smokin' Barrel Firearms), Gun Owners of California, Inc., Gun Owners of
8    America, Inc., Gun Owners Foundation, and California Rifle & Pistol Association,
      Incorporated

9    Donald Kilmer – SBN 179986
      Law Offices of Don Kilmer, APC
10   14085 Silver Ridge Rd.
      Caldwell, Idaho 83607
11   Telephone: (408) 264-8489
      Don@DKLawOffice.com

12   Attorney for Plaintiff The Second Amendment Foundation
13

14              **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16   ADAM RICHARDS, et al.,              Case No.: 8:23-cv-02413 JVS (KESx)

17          Plaintiffs,                  **PLAINTIFFS' MEMORANDUM OF
                                         POINTS AND AUTHORITIES IN**
18          v.                           **OPPOSITION TO MOTION TO
                                         DISMISS AMENDED COMPLAINT**
19   ROB BONTA, et al.,
                                         Hearing Date:    October 7, 2024
20          Defendants.                  Hearing Time:    1:30 p.m.
                                         Courtroom:       10C
21                                       Judge:           Hon. James V. Selna

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................................................i

TABLE OF AUTHORITIES...................................................................................ii

I.     Defendants Cannot Meet the Standard for Dismissal ............................. 1

II.    Plaintiffs' First Amendment Claim Exceeds Mere "Plausibility" ..................... 2

       A.   Section 26806 Chills Protected Speech and Association............................. 2

       B.   Section 26806 Eviscerates the Established Right to Speak Anonymously... 6

III.   Plaintiffs Have Adequately Alleged Section 26806's Violation of the Fourth Amendment....................................................................................................... 7

       A.   The Sheer Overbreadth of Section 26806 Is an Especially Egregious Violation of the Fourth Amendment Rights of Home FFLs………..…………8

       B.   Use of the "Highly Regulated Industry" Exception Must Still Be Reasonable Under the Fourth Amendment for Both Home-FFLs and Brick & Mortar FFLs……………………………………………………………………9

       C.   Section 26806 Turns FFLs into Perpetual Government Surveillance Agents, Immediately Implicating the Fourth Amendment's Warrant Requirement Regardless of When Law Enforcement Eventually Seeks a Warrant to Retrieve the Surveillance............................................................................. 11

            1.   Section 26806 Turns the Licensee into a Government Actor. ...............12

            2.   The Signage Required by Section 26806(c) Does Not Make the Warrantless Surveillance or Search Constitutional.......................................14

IV.    Section 26806 Appropriates Private Space and Private Equipment Solely for Government Use Without Compensation in Violation of the Takings Clause ........17

V.     Conclusion...................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. State*, 50 Tenn. 165 (1871) ...................................................................16

*Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002 (9th Cir.2003) ..........................................................................................................................1

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858 (9th Cir. 2016) ..............3

*Berger v. New York*, 388 U.S. 41 (1967) ................................................................13

*Boise Cascade Corp. v. United States*, 296 F.3d 1339 (Fed. Cir. 2002) .................18

*Brunette v. Humane Society of Ventura County*, 294 F.3d 1205 (9th Cir. 2002) ....12

*California Hous. Sec., Inc. v. United States*, 959 F.2d 955 (Fed. Cir. 1992) ...........19

*Carpenter v. United States,* 585 U.S. 296 (2018) ..................................2, 14, 15, 16

*Cedar Point Nursery v. Hassid*, 94 U.S. 139 (2021) ..........................................2, 17

*City of Los Angeles v. Patel*, 576 U.S. 409 (2015) ..............................................2, 10

*Craig v. Boren*, 429 U.S. 190 (1976) ......................................................................14

*CSX Transp., Inc. v. Norfolk S. Ry. Co.*, 2019 U.S. Dist. LEXIS 161339 (E.D. Va. Sept. 9, 2019) ......................................................................................................21

*Davis v. Magna Int'l of Am., Inc.*, 2021 U.S. Dist. LEXIS 62106 (E.D. Mich. Mar. 31, 2021) ...............................................................................................................21

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .............................................16

*Doe v. 2themart.com Inc.*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001) .....................6

*Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005) ................................................1

*Florida v. Jardines*, 569 U.S. 1 (2013) .................................................................8, 9

ii

*Grady Mem'l Hosp. Corp. v. Grady Baby Co. & Apparel LLC*, 2023 U.S. Dist. LEXIS 236514 (N.D. Ga. Dec. 5, 2023) ................................................................. 17

*Hall v. Mythical Venture, Inc.*, 2024 U.S. Dist. LEXIS 14789 (C.D. Cal. Jan. 26, 2024) ........................................................................................................................ 17

*Horton v. California*, 496 U.S. 128 (1990) ............................................................. 11

*Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953 (9th Cir. 2014) .............. 16

*Katz v. United States*, 389 U.S. 347 (1967) ........................................................ 7, 11

*Kaur v. Maryland*, 141 S. Ct. 5 (2020) ................................................................... 16

*Libertarian Party of Los Angeles County v. Bowen*, 709 F.3d 867 (9th Cir. 2013) ... 1

*Loretto v. Teleprompter Manhattan CATF Corp*, 458 U.S. 419 (1982) ........... 18, 19

*Manigault v. Astrue*, 2012 U.S. Dist. LEXIS 194708 (N.D. Ga. June 15, 2012) .... 21

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) ...................................... 6

*Mitchell Arms v. United States*, 7 F.3d 212 (Fed. Cir. 1993) ................................. 18

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) .................................... 6

*New York v. Burger*, 482 U.S. 691 (1987) ..................................................... passim

*Olmstead v. United States, 277 U.S. 438 (1928)* ................................................... 15

*Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003) ................................................. 1

*Printz v. United States, 521 U.S. 898 (1997)* .......................................................... 7

*Robertson v. Dean Witter Reynolds, Inc*., 749 F.2d 530 (9th Cir. 1984) ................. 1

*Rush v. Obledo*, 756 F.2d 713 (9th Cir. 1985) ......................................................... 9

*Simmons v. United States*, 390 U.S. 377 (1968) .................................................... 16

*Standard Furniture Mfg. Co. v. LF Prods. Pte. Ltd.*, 2017 U.S. Dist. LEXIS 174293

iii

PLS.' MEM. OF POINTS & AUTH. IN OPPOSITION TO MOT. TO DISMISS

(C.D. Cal. June 13, 2017)....................................................................21

*Taylor v. Va. Alcoholic Beverage Control Auth.*, 827 S.E.2d 15 (Va. Ct. App. 2019)
.................................................................................................................9

*The Presbyterian Church v. United States*, 870 F.2d 518 (9th Cir. 1989)............4, 5

*United States v. Attson*, 900 F.2d 1427 (9th Cir. 1990) .........................................12

*United States v. Biswell*, 406 U.S. 311 (1972) ...........................................................9

*United States v. City of Redwood City*, 640 F.2d 963 (9th Cir. 1981) .....................1

*United States v. Di Re*, 332 U.S. 581 (1948)………………………………….....15

*United States v. Tallmadge*, 829 F.2d 76 (9th Cir. 1987)........................................12

*United States v. U.S. Dist. Court for Eastern Dist. of Mich., Southern Div.* 407 U.S.
297 (1972) ...........................................................................................................2

**Statutes**

Cal. Code Civ. P. § 1985.3 ..........................................................................................2

Cal. Penal Code § 26500-90……………………………………………………….15

Cal. Penal Code § 26806 ................................................................................passim

Cal. Penal Code §27545……………………………………………………...…15

Fed. R. Civ. Pro. 8 ........................................................................................................1

Fed. R. Civ. Pro. 12 ......................................................................................................1

**Constitutional Provisions**

U.S. Const., amend. I.....................................................................1, 2, 6, 21

U.S. Const., amend. II....................................................................................15

U.S. Const., amend. IV ..........................................................................passim

PLS.' MEM. OF POINTS & AUTH. IN OPPOSITION TO MOT. TO DISMISS

U.S. Const., amend. V ....................................................................... 16, 18, 22

**Other Authorities**

Big 5 Sporting Goods Corp., Annual Report (Form 10-K) (Feb. 28, 2024) at 17, https://www.sec.gov/ix?doc=/Archives/edgar/data/1156388/0000950170240218 29/bgfv-20231231.htm (last visited June 5, 2024) ................................................ 20

Comment, *Another Look at Unconstitutional Conditions*, 117 U. Pa. L. Rev. 144 (1968) ........................................................................................... 16

Congressional Research Service Reports, Statutory Federal Gun Registry Prohibitions and ATF Record Retention Requirement, IF 12057 (Feb, 5, 2024) 11

PLS.' MEM. OF POINTS & AUTH. IN OPPOSITION TO MOT. TO DISMISS

## I. DEFENDANTS CANNOT MEET THE STANDARD FOR DISMISSAL

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is very rare. Indeed, it is "only the *extraordinary* case in which dismissal is proper" for failure to state a claim. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) (emphasis added). A court may dismiss a claim only if the complaint: (1) lacks a cognizable legal theory; or (2) fails to contain sufficient facts to support a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc*., 749 F.2d 530, 534 (9th Cir. 1984). To survive a Rule 12(b)(6) motion to dismiss, then, "a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). That is, a plaintiff need provide just a short and plain statement showing that she is entitled to relief. Fed. R. Civ. P. 8(a)(2). What is more, courts must view the complaint "in the light most favorable to the plaintiff, taking all allegations as true, and drawing all reasonable inferences from the complaint in [her] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

In the context of a claim for violation of First Amendment rights based on a regulation that chills speech, such challenges are given the most leeway, especially at the pleading stage. *See Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). Standing and injury are sufficiently pleaded by showing that the statute caused or will cause self-censorship. *See id.*; *Libertarian Party of Los Angeles County v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). As described below, the Amended Complaint and its supporting declarations describe how Plaintiffs, other licensees, and their customers will self-censor due to a regulated omnipresent government recording of their words not necessarily confined to or related to a firearms transaction.

A plaintiff states a viable Fourth Amendment violation as to the overbreadth of a regulatory search when a plaintiff alleges that an electronic recording of conversations on private premises was conducted prior to a warrant being sought or

issued. *See, e.g.*, *United States v. U.S. Dist. Court for Eastern Dist. of Mich., Southern Div.*, 407 U.S. 297, 315, 320 (1972). A viable Fourth Amendment violation is pleaded when a plaintiff alleges that the government takes a third-party's electronic information without a warrant where there is at least some expectation of privacy, however diminished. *See Carpenter v. United States*, 585 U.S. 296, 314-15 (2018). Plaintiffs have alleged that the state has turned their homes and businesses into de facto 24-hour audiovisual recording centers, which conversations of both Plaintiffs and their customers can be obtained even by litigants alleging some nexus between what might have been recorded and some pending civil action. *But see* Cal. Code Civ. P. § 1985.3 (normally third-party recordings and information are protected from disclosure to litigants by a notice-and-objection process afforded to the affected persons; no such safeguard exists for customers of licensees subject to Penal Code section 26806). Nor have Defendants met their burden for warrantless searches (surveillance) of even highly regulated industries under *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), and *New York v. Burger*, 482 U.S. 691 (1987).

A takings claim need only allege that the result of a regulation was the physical invasion of the plaintiff's property. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021). Plaintiffs have alleged that they are obligated to install and maintain on their properties a video and audio monitoring system for the sole benefit of the government.

## II.    PLAINTIFFS' FIRST AMENDMENT CLAIM EXCEEDS MERE "PLAUSIBILITY"

### A.    Section 26806 Chills Protected Speech and Association.

Plaintiffs' First Amendment claim, alleging the chilling of speech in both businesses and homes, is more than "plausible." Section 26806's overbreadth strikes at the very core of the constitutional rights of speech and association in one's own home. Defendants extol the virtues of Section 26806's in-store and in-home surveillance mandate, claiming it "assists law enforcement in … ***deterring***"

2

all manner of potential crimes, including "straw purchases." Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss Am. Compl. ("Mot.") at 2:9-10, ECF No. 41 (emphasis added). Defendants thus contemplate Section 26806 deterring (*i.e.*, *chilling*)[1] at least *some* speech,[2] yet simultaneously insist that Section 26806 chills *no* speech or association whatsoever. *See* Mot. at 4:22 (claiming Section 26806 does not "even regulat[e] speech"). This theory is incoherent.

First, Defendants posit that Section 26806 cannot possibly chill speech or association because it does not *expressly* "target," "proscribe," or "punish" with "consequences." Mot. at 5:6, 4:13, 5:7, 6:8. But the Ninth Circuit has made clear that "the government may chill speech" not just by "threatening or causing … harm" or by "prohibiting" conduct, but also by "*intercepting*" communications and even "conducting *covert surveillance*" of constitutionally protected conduct. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 868 (9th Cir. 2016) (emphasis added):

> Both the Supreme Court and [the Ninth Circuit] have recognized a wide variety of conduct that impermissibly interferes with speech. For example, the government may chill speech by threatening or causing pecuniary harm, ... withholding a license, right, or benefit, ... prohibiting the solicitation of charitable donations, ... detaining or intercepting mail, ... or conducting covert surveillance of church services…. Importantly, the test for determining whether the alleged retaliatory conduct chills free speech is objective; it asks whether the retaliatory acts "'would lead ordinary student[s] ... in the plaintiffs' position' to refrain from protected speech."

*Ariz. Students' Ass'n*, 824 F.3d at 868 (citations omitted); *see also* Pls.' Reply in Supp. of Mot. for Prelim. Inj. at 2:4-4:15, ECF No. 22. The Ninth Circuit has recognized that "congregants are chilled from participating in worship activities[] when they refuse to attend church services because they

---

[1] *Compare* "*Deter*," Merriam Webster, https://www.merriam-webster.com/dictionary/deter (last visited Aug. 30, 2024) ("to … discourage, or prevent"), *with* "*Chill*," Merriam Webster, https://www.merriam-webster.com/thesaurus/chill#thesaurus-entry-3-3 (last visited Aug. 30, 2024) ("*to discourage*").

[2] Indeed, it is difficult to conduct a straw purchase without *speaking* to a store clerk.

3

fear the government is spying on them and taping their every utterance...."
*Presbyterian Church*, 870 F.2d at 522. If the mere possibility of *covert* surveillance causes congregants reasonably to alter their conduct, then Section 26806's *overt* surveillance of Plaintiffs' utterances (even within their own homes) is even more stifling.[3]

Because Section 26806 places patrons and proprietors on notice of perpetual, government-accessible surveillance, it "prevents Plaintiff Clark from freely communicating with FFLs as to ongoing legal and legislative initiatives for fear of being recorded by the government," which "chill[s] his ability to speak freely for fear of retribution by the government." Am. Compl. ¶ 12; Decl. of Gerald Clark in Supp. of Compl., ¶ 7, ECF No. 1-4; *see also* Decl. of Jesse Harris in Supp. of Compl., ¶ 13, ECF No. 1-5.  A member of Plaintiff GOA, Matthew Gene Peterson-Haywood, can no longer have private talks, have friends stay the night, discuss his political views, perform his job duties, discuss private health matters, or even practice his religion *within his own home* without being exposed to pervasive surveillance. Decl. of Matthew Gene Peterson-Haywood in Supp. of Mot. for Prelim. Inj., ¶¶ 14-31, ECF No. 27-1.  For purposes of a motion to dismiss, these allegations must be accepted as true.

Defendants offer a red herring that Section 26806 "imposes no consequences for making … statements," so Plaintiffs' fears of chilled speech cannot be "objectively reasonable." Mot. at 6:7-8 & 5:9; *see also id.* at 5:22-23 (calling

---

[3] In *Presbyterian Church*, the Ninth Circuit held that "[t]he alleged effect on the *churches* is not a mere subjective chill on their worship activities; it is a concrete, demonstrable decrease in attendance at those worship activities. The injury to the churches is 'distinct and palpable.'"  *Presbyterian Church*, 870 F.2d at 522.  *Cf.* Am. Compl. ¶ 10 (surveillance requirements "will force [plaintiff] to remove FFL business from his home"); *id.* at ¶ 11 ("cost of implementing … and customer disapproval may force [plaintiff] to have to give up his home FFL business"); *id.* at ¶ 13 ("requirements … are cost prohibitive" and "customers will not want to be recorded [] and would cause him to have to stop being an FFL").

4

Plaintiffs' fear of having their most private conversations subject to "pervasive governmental … recordings … objectively *un*reasonable"). But the absence of express punishment is not a characteristic of a "chilling effect" (*see* Pls.' Reply in Supp. of Mot. for Prelim. Inj. at 2:4-19, ECF No. 22), and the absence of enumerated "consequences" did not prevent the Ninth Circuit from finding "a cognizable injury" when government agents simply wore "'body bugs' and surreptitiously recorded church services." *Presbyterian Church*, 870 F.2d at 520, 523.[4] *See* Compl. ¶ 343 n.39.

Nor does Defendants' appeal to the purported "tight[] limits [on] the use or release of the recordings" (Mot. at 5:13; *see also id.* at 6:28, "the State cannot use or disclose any information from the recordings") have any basis in fact, as Section 26806(b) plainly allows unfettered access by government "agent[s]" at any time to ensure "compliance," places no restriction on what information may be copied or seized, and establishes no limit whatsoever on the subsequent use of that information. In fact, Section 26806(b) on its face places restrictions *only on licensees*, *not the government*.

Defendants close with the non sequitur that Section 26806 "does not 'compel[] disclosure of affiliation with groups engaged in advocacy'" because the state's ability to use recordings is purportedly "limited" and individuals "cho[o]se to appear in person to conduct a commercial transaction" subject to regulation and paperwork. Mot. at 6:23-24, 7:1, 7:2-3. But even if that were so, Section 26806 also records the activities of those who visit a gun store and *do not purchase* a firearm, and sweeps up speech *unrelated* to gun purchases. Nor is it any answer to say that individuals simply could stop patronizing gun stores if they do not wish their affiliations in protected groups like GOC and CRPA to be disclosed. Certainly, the

---

[4] Defendants claim that other industries are required to have surveillance "such as banking, gambling, and cannabis" (Mot. at 1:10-11), but none of these industries involves enumerated rights.

PLS.' MEM. OF POINTS & AUTH. IN OPPOSITION TO MOT. TO DISMISS

Supreme Court never suggested that members of the NAACP should discontinue their protected activities to avoid disclosure of their identities. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958).

### B. Section 26806 Eviscerates the Established Right to Speak Anonymously.

Section 26806 eviscerates the settled "right to speak anonymously" (*Doe v. 2themart.com Inc.*, 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001)), which courts uniformly recognize as "an aspect of the freedom of speech protected by the First Amendment" (*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343 (1995)), to a "*so-called right*." Mot. at 7:7 (emphasis added). Disputing the *merits* of Plaintiffs' claim (Mot. at 7:9, "no merit to the allegation"), Defendants offer the straw man that Section 26806 "forbids public disclosure" and, thus, Plaintiffs somehow remain anonymous vis-à-vis *the government*. *Id.* at 7:8. These arguments only distract from the fact that Section 26806 unmasks Plaintiffs and all manner of gun store patrons to the state, not the public generally. *See* Am. Compl. ¶¶ 92-93. And again, Section 26806(b) only limits access *by dealers*, not the government or even third parties alleging some relevance of the recordings to a civil dispute (e.g., a former employee alleging that evidence of harassment or discrimination is contained in the recorded conversations).

Defendants' focus on those participating in business transactions in gun stores is similarly unavailing. *See* Mot. at 7:12-21 ("engaging in a face-to-face business interaction," "identity verification is a feature of firearm purchases," "interest in anonymous commercial transactions"). As Plaintiffs explained, Section 26806 reaches far more protected conduct than mere transactions. *See, e.g.*, Am. Compl. ¶ 13 ("speech about gun control, [political] campaign[s], and the current politics of California"), ¶ 15 ("confidential conversations with customers regarding their self-defense needs as well as collecting confidential and personal information"). Defendants make no attempt to grapple with *these* allegations.

6

### III. PLAINTIFFS HAVE ADEQUATELY ALLEGED SECTION 26806'S VIOLATION OF THE FOURTH AMENDMENT

Prior litigation dealt superficially with the Fourth Amendment issues by focusing on whether this law is an administrative search under the "highly regulated industry" exception and whether it violates any "reasonable expectation of privacy" under *Katz v. United States*, 389 U.S. 347 (1967). But Section 26806 does more than violate a reasonable expectation of privacy. It is self-contradictory in that it frustrates its own purpose (gathering relevant and **admissible** data for enforcement and possible prosecution) by violating the Fourth Amendment. It is also a constitutionally flawed attempt to nudge FFLs from merely doing business in a highly regulated industry, to being actual law enforcement surveillance agents.

The Defendants cannot even make up their minds whether Section 26806 constitutes a general warrant. They claim with a bracketed omission that the law "does not grant 'enforcement officials blanket authority' to engage in 'pervasive[]' surveillance, nor does it allow an officer to conduct 'an unrestrained search for evidence of criminal activity' in violation of the Fourth Amendment." Mot. at 10:16-19. This is a departure from Defendants' prior Motion to Dismiss, which previously denied that Section 26806 allowed officials to "engage in 'pervasive, *unparticularized* surveillance,'" First Mot. at 18, ECF No. 31 (emphasis added). This constitutes an admission by the Defendants that Section 26806's constant surveillance mandate is indeed underparticularized as to any sort of suspected criminal activity – i.e., the essence of a general warrant. It is also the reason the Fourth Amendment was written and ratified in the first place.

In a reverse application of *Printz v. United States,* 521 U.S. 898 (1997), Section 26806 commandeers FFLs into becoming state actors, thus violating the reasonableness standard of the Fourth Amendment. The coercive nature of the transactions associated with enumerated rights that must (and can only) take place through FFLs, coupled with the policy of compelling FFLs to surveil their

7

customers, at their own gun stores and retail spaces, transforms the FFL into a state-actor surveillance agent. This violates the Fourth Amendment.

A.    The Sheer Overbreadth of Section 26806 Is an Especially Egregious Violation of the Fourth Amendment Rights of Home FFLs.

Defendants posit that Plaintiffs' Fourth Amendment claim "fails as a matter of law" because dealers already operate in a so-called "closely regulated industry subject to extensive federal, state, and local regulations and licensing schemes and in which there is a diminished expectation of privacy." Mot. at 8:1-5. Defendants then list a number of existing licensing requirements at the "federal, state, and local" levels, *id.* at 8:13-9:12, but none of the requirements listed remotely resembles Section 26806's mass-surveillance mandate. It would seem that, under Defendants' logic, California could justify warrantless, unfettered, and continuous access to Plaintiffs' computers and cellular phones, on the theory that this merely is an "alternate manifestation" of the "longstanding requirements for recording and tracking dealer and purchaser identifying information for firearms transactions." *Id.* at 4:26, 6:16-17. Defendants offer no limiting principle as to how far they may go under the "closely regulated industry" exception, but that the compelled 24/7 audiovisual surveillance of private *homes* does not go *too* far. *Id.* at 9:15.

Indeed, after listing existing licensing requirements, Defendants simply reiterate, in conclusory fashion, that Section 26806 is "a permissible regulation" because the industry has "little reasonable expectation of privacy." Mot. at 9:22-23. At last elaborating their theory, Defendants claim Section 26806 "does not allow government agents to 'obtain[] information by physically intruding on a constitutionally protected area,' or infringe[] upon a 'reasonable expectation of privacy.'" *Id.* at 9:25-27 (cleaned up). Yet the home is the *quintessential* "constitutionally protected area." *Florida v. Jardines*, 569 U.S. 1, 6 (2013). The purportedly narrow exception on which Defendants rely does not permit any and all intrusions the state sees fit to impose. Rather, in order to be "reasonable," a

8

warrantless administrative search of a closely regulated industry "must be specifically authorized by statute, and the parameters of any exception to the search warrant requirement must be found in the statute." *Taylor v. Va. Alcoholic Beverage Control Auth.*, 827 S.E.2d 15, 25 (Va. Ct. App. 2019) (citing *United States v. Biswell*, 406 U.S. 311, 315 (1972)).

Defendants simply insist, without any valid rationale, that "[i]n-home dealers are no exception." Mot. at 10:10. But Defendants make no attempt to reconcile their position with the U.S. Supreme Court's repeated observation that, "when it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' This right would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window." *Jardines*, 569 U.S. at 6 (citation omitted). So too would the right be of "little practical value" if the State simply could compel a man's surveillance of himself, for the State's subsequent access. *Id.*

And while courts have held that statutes may authorize warrantless administrative searches, these searches remain susceptible to overbreadth challenges if they sweep too far. *See Rush v. Obledo*, 756 F.2d 713, 719 (9th Cir. 1985). Indeed, in striking down a California statute authorizing warrantless inspections of *home-based* daycares, the Ninth Circuit found the "statutes authorizing such searches [we]re overbroad—permitting general searches of any home providing care and supervision ***at any time of the day or night***—and thus invalid unless sufficiently limited by the current regulations so as to preclude general searches." *Id.* at 721 (emphasis added). Observing that a "family day care home is a business ***only when*** children cared for from other families for compensation are present ***and at all other times is a private residence***," *id.*

9

(emphasis added), the Ninth Circuit all but foreclosed Defendants' instant motion seeking dismissal of Plaintiffs' Fourth Amendment claim. Section 26806 subjects home-based dealers to searches "at any time of the day or night"—in fact, *at all times*—because surveillance must be continuous and uninterrupted.[5] *Id.*

Section 26806 is hopelessly overbroad for all FFLs, but it is especially egregious in its intrusion into the home-based FFL at all hours of the day and night, regardless of business activity.

B.    Use of the "Highly Regulated Industry" Exception Must Still Be Reasonable Under the Fourth Amendment for Both Home-FFLs and Brick & Mortar FFLs.

FFLs are one of only four highly regulated industries that qualify for the "highly regulated industry" exception to the warrant requirement. *City of Los Angeles v. Patel*, 576 U.S. 409, 424 (2015). *Patel* made clear that *New York v. Burger*, 482 U.S. 691 (1987), still controls the reasonableness of government conduct under that exception. The three *Burger* factors that must still be satisfied by the government are: "(1) '[T]here must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made'; (2) 'the warrantless inspections must be 'necessary' to further [the] regulatory scheme'; and (3) 'the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.'" *Patel,* 576 U.S. at 426 (*quoting Burger*, 482 U.S. at 402-03).

This Court made an earlier finding that Section 26806 probably fulfills the substantial government interest: public safety.  Plaintiffs disagree, but note that question is a proper question for trial versus resolution on a motion to dismiss.

_____

[5] Defendants claim that Section 26806 "requires monitoring only in certain public spaces…." Mot. at 10:20-21. But even if one could argue that the residence of a home-based dealer, often doing business by private invitation only, is somehow a "public space" during operating hours, the same cannot be said when the home is not being used for business purposes.

10

Nevertheless, Plaintiffs contend that the federally mandated collection of data for ensuring lawful transactions and maintaining such data to trace firearms that are the subject of a criminal investigation, already fulfills the "necessity" prong of *Burger*, thus addressing that alleged government interest. This includes the paper records and/or the collection and maintenance of enhanced (electronic/digitized) records, use of photo ID, and execution of sales documents under penalty of perjury that is already imposed on all FFLs.

This "surveillance" and storage of sales data, though authorized by federal law, is also circumscribed by federal law. *See* Congressional Research Service Reports, Statutory Federal Gun Registry Prohibitions and ATF Record Retention Requirement, IF 12057 (Feb, 5, 2024).[6] To expand that surveillance and storage of data to the scheme codified by Section 26806, California must meet its burden for what is still a warrantless search of people doing business at a gun store. *See Horton v. California*, 496 U.S. 128, 133 n.4 (1990); *Katz v. United States*, 389 U.S. 347, 357 (1967). At a minimum, the other two prongs of the *Burger* test— "necessity" and "adequate substitute for a warrant"—are where the challenged law fails to comport with the Constitution.

C. <u>Section 26806 Turns FFLs into Perpetual Government Surveillance Agents, Immediately Implicating the Fourth Amendment's Warrant Requirement Regardless of When Law Enforcement Eventually Seeks a Warrant to Retrieve the Surveillance.</u>

Section 26806(a)(1)-(7) compels the gun store owner to install digital video/audio surveillance equipment and regulates the use of that equipment. Section 26806(b) forbids the licensee to "use, share, allow access, or otherwise release recordings" except: (1) to an agent of the government conducting an inspection of the licensee's premises to ensure compliance with the law, but only if

---

[6] https://crsreports.congress.gov/product/pdf/IF/IF12057 (last visited September 4, 2024).

PLS.' MEM. OF POINTS & AUTH. IN OPPOSITION TO MOT. TO DISMISS

a **warrant** or court order **would not** generally be required for that access (emphasis added); (2) only pursuant to **search warrant** or other court order (emphasis added); and (3) only pursuant to insurance claims or as part of a civil discovery process. Thus, California admits that the Fourth Amendment still requires a warrant to access the data (face and voice recordings) collected under Section 26806. So why isn't a warrant required for the government-mandated actor (the FFL) to ***collect and record*** the data?

>    1.    <u>Section 26806 Turns the Licensee into a Government Actor.</u>

FFLs are considered quasi-government agents in certain law enforcement contexts. *United States v. Tallmadge*, 829 F.2d 767, 774 (9th Cir. 1987) (affirmative defense of entrapment by estoppel available to defendant because dealer is acting as agent of the government in that circumstance). Would that government agent classification extend to a Fourth Amendment analysis (*e.g.,* in a motion to suppress) when a licensee turns over recordings of video or audio surveillance of his own store, when voluntarily using his own equipment to help prosecute a robbery, theft, or other crime? No, regardless of whether there is a warrant or court order. *See United States v. Attson*, 900 F.2d 1427, 1433 (9th Cir. 1990) (doctor drawing blood for medical reasons was not intending to aid the government's investigative or administrative capacity).

Section 26806 short-circuits this non-law-enforcement rationale for collecting data by compelling an FFL to conduct 24/7 surveillance of their customers for the government on pain of penalty of law, including the loss of their license to do business in California. Whether a private party is engaged in state action is a highly specific and fact-centered question. But not under Section 26806. The challenged law codifies the interdependence of the licensee and government officials under all of the tests—joint action, symbiotic relationship, and public function—outlined in *Brunette v. Humane Society of Ventura County*, 294 F.3d 1205, 1210-14 (9th Cir. 2002). This statute makes an FFL a government agent

collecting audio and video surveillance of his customers for the state's use.

As noted above, subdivisions (b)(1) and (b)(2) of the statute may still require warrants for seizing or accessing the audio/video recordings compelled by Section 26806. This is an admission by the State that the data gathered during retail transactions is intrusive under the Fourth Amendment, and therefore subject to a warrant. But under this statute, the constitutional violation occurs when the government actor—**in this case, the statutorily obliged FFL**—engages in the initial surveillance and recording. That is because the use of electronic devices to capture conversations is still a search under the Fourth Amendment. *Berger v. New York*, 388 U.S. 41, 51 (1967). Moreover, this electronic surveillance is not a search of the licensees' store or the federally mandated business records under the "highly regulated business" exception; it is a search that is conducted by the licensee as a government agent, recording the conduct of every retail customer who enters his place of business—24 hours a day, 7 days a week, 365 days a year.

Under *Burger*, the Fourth Amendment mandates that "'the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.'" *Patel,* 576 U.S. at 426 (quoting *Burger*, 482 U.S. at 702-03). There is no such "adequate substitute for a warrant" that safeguards the Fourth Amendment rights of an FFL and his customers in the panopticon mandated by Section 26806.

An obvious test? Ask any neutral and detached magistrate if they would approve a warrant for 24/7 audio and video surveillance, 365 days a year, of all people seeking to buy liquor, used auto parts, or those engaged in the business of mining. What concrete and particularized evidence that would support probable cause to believe a crime is (or will be) committed just because someone enters a retail establishment shopping for regulated products? Liquor stores, auto junk yards, mining enterprises, and firearm dealers are the only four industries that qualify for the "highly regulated business" exception to the warrant (or adequate

13

substitute for warrant) requirement. *Patel,* 576 U.S. *at* 424.

But those businesses—and their customers—are still protected under the *Burger* factors. *See generally Craig v. Boren*, 429 U.S. 190 (1976) (gender-based equal protection challenge to state regulation on liquor sales could be brought by vendor on behalf of affected customers, and vendor's "highly regulated business" affected neither standing nor relief).

The interposition of a neutral and detached magistrate, based upon probable cause to believe a crime has been (or will be) committed, backed up with evidence, are the constitutionally minimal requirements necessary to conduct the search and/or surveillance of every retail customer (whether they buy a gun or not) by the FFL dealer acting as a government agent.

   2.   *The Signage Required by Section 26806(c) Does Not Make the Warrantless Surveillance or Search Constitutional.*

*Carpenter v. United States,* 585 U.S. 296 (2018), made clear that unavoidable exposure to ubiquitous electronic surveillance and the recordation of personal data, conversations, and other information is still protected against government intrusion under the Fourth Amendment. In that case, the Supreme Court "decline[d] to grant the state unrestricted access to a wireless carrier's database of physical location information. In light of the deeply revealing nature of CSLI, its depth, breadth, and comprehensive reach, and **the inescapable and automatic nature of its collection, the fact that such information is gathered by a third party does not make it any less deserving of Fourth Amendment protection**." *Id.* at 320 (emphasis added).  The Court went on to find the government's acquisition of the cell phone records—records that are far less intrusive than facial images and recordings of individual conversations—is still a search under the Fourth Amendment.

   As Justice Brandeis explained in his famous dissent, the Court is obligated—as "[s]ubtler and more far-reaching means of invading privacy have become available to the Government"—to ensure that the "progress of science" does not erode Fourth Amendment protections.

14

[*Olmstead v. United States*, 277 U.S. 438, 473–474 (1928)]. Here the progress of science has afforded law enforcement a powerful new tool to carry out its important responsibilities. At the same time, this tool risks Government encroachment of the sort the Framers, "after consulting the lessons of history," drafted the Fourth Amendment to prevent.

*Carpenter* at 320 (quoting *United States v. Di Re*, 332 U.S. 581, 595 (1948)).

California must satisfy all the *Burger* factors for the collection and storage of the face and voice impressions of gun buyers, exercising their Second Amendment rights, without also requiring them to waive their Fourth Amendment rights. "[T]he warrantless inspections must be 'necessary' to further [the] regulatory scheme"; and that "the statute's inspection program, in terms of the certainty and regularity of its application, provid[e] a constitutionally adequate substitute for a warrant." *Burger*, 482 U.S. at 702-03.

The "necessity test" is a "means versus ends" analysis, suspectable to the same overbreadth analysis in *Carpenter*. E.g., why all non-transactional conversations be recorded, when actual sales are already subject to requirements of photo ID, execution of sales documents under penalty of perjury, and storage by the FFL of such records?

The "warrant substitute" test in *Burger* specifically mandates heightened judicial scrutiny of Section 26806 to ensure that the government is acting within the bounds of the Constitution. California's burden under the *Burger* factors becomes impossible when one considers that essentially all firearm sales and transfers must be conducted through licensed dealers. Cal. Penal Code §§ 26500-90 & 27545.

Notwithstanding the government's nebulous (but ultimately unenforceable) concession that Section 26806 will not be enforced at gun shows, that means that home FFLs, gun stores, and gun shows are the only places people can exercise their enumerated right to acquire firearms. *See, e.g.*, *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953 (9th Cir. 2014); *see also Andrews v. State*, 50 Tenn. 165,

15

178 (1871) ("The right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms, and to keep them in repair") (cited favorably in *District of Columbia v. Heller*, 554 U.S. 570, 614 (2008)).

This is why the signage requirement of Section 26806(c) does not cure the defect of making the licensed gun dealer a government surveillance agent. The doctrine being violated, though not labelled as such in *Carpenter*, is known as an "unconstitutional condition." *See generally* Comment, *Another Look at Unconstitutional Conditions*, 117 U. Pa. L. Rev. 144 (1968). The issue was explicitly addressed in *Simmons v. United States*, 390 U.S. 377, 394 (1968) (defendant cannot be compelled to waive Fifth Amendment rights to invoke Fourth Amendment rights); *see also Kaur v. Maryland*, 141 S. Ct. 5, 6 (2020) (Sotomayor, J., concurring) (quoting *Simmons*: "[W]e find it intolerable that one constitutional right should have to be surrendered in order to assert another.").

California's regime of requiring nearly all civilian gun sales and transfers to be conducted under the surveillance and recordation by conscripted state actors imposes an unconstitutional condition on the exercise of an enumerated right. For Plaintiffs to exercise their right to acquire firearms, they must waive their Fourth Amendment right by subjecting themselves to constant and unnecessary warrantless surveillance. This forfeiture of one right for another is intolerable under the unconstitutional condition doctrine affirmed in *Simmons*.

Like the impermissible warrantless collection of cell-site information in *Carpenter v. United States*, Section 26806 creates an audio and video recording scheme that results in an "inescapable and automatic" collection of private conversations and associations. *Carpenter*, 585 U.S. at 320.

Plaintiffs have adequately alleged that Section 26806 inflicts a similar constitutional injury in its automatic collection of their private information on both themselves as well as on their members and customers. The allegations supporting

16

these injuries are all that is needed to state a viable Fourth Amendment violation and survive Defendant's motion to dismiss.

**IV.    SECTION 26806 APPROPRIATES PRIVATE SPACE AND PRIVATE EQUIPMENT SOLELY FOR GOVERNMENT USE WITHOUT COMPENSATION, IN VIOLATION OF THE TAKINGS CLAUSE**

Defendants dispute whether "the [forcible] 'installation of government surveillance equipment' constitutes a per se physical taking warranting compensation," insisting that "[t]his claim is without merit." Mot. at 11:23-25. Of course, *merits* argumentation (which, in fact, comprises the vast majority of Defendant's motion) has no place in a motion to dismiss, which only "tests the legal sufficiency of the claims asserted in the complaint," not their ultimate merit. *Hall v. Mythical Venture, Inc.*, 2024 U.S. Dist. LEXIS 14789, at *2 (C.D. Cal. Jan. 26, 2024). District courts therefore discount such arguments as "premature" at the motion to dismiss stage. *See, e.g.*, *Grady Mem'l Hosp. Corp. v. Grady Baby Co. & Apparel LLC*, 2023 U.S. Dist. LEXIS 236514, at *7 (N.D. Ga. Dec. 5, 2023). Even so, Defendants' premature merits arguments fail.

Section 26806 imposes on licensee Plaintiffs a legal obligation to undertake continuous digital video surveillance of their own private property, and to permit government agents to freely enter their property at will, to access and view, at-will, that perpetual digital video surveillance. This is not a merely prohibitory restriction, but rather a mandatory action that Plaintiffs must take at their own considerable expense. Moreover, Plaintiffs cannot use or enjoy the benefits of the expensive system; only the government or third-party litigants may access the recordings. Cal. Penal Code § 26806(b). In essence, Plaintiffs are forced to install and house equipment in their private buildings and dwellings, and also to pay for that permanent physical recording system *that they are not allowed to use for their own purposes*, and all so that they can be surveilled by the government. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021) ("[w]henever a regulation results in a physical appropriation of property, a per se taking has occurred" and just

17

compensation must be paid.); *see also id.* at 2073 ("a permanent physical occupation constitutes a per se taking regardless whether it results in only a trivial economic loss" and "without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner.").

And while regulatory mandates are nothing new in regulated industries, the law here is entirely unlike mere commercial regulations (fill out this form, keep this record). Section 26806 commandeers business owners—including those who conduct business out of their home—to implement a perpetual government surveillance scheme without any form of compensation. This regulatory scheme is akin to that of *Boise Cascade Corp. v. United States*, 296 F.3d 1339 (Fed. Cir. 2002) except that there, no surveillance of private conversations was involved. *Id.* at 1355 (permanent physical taking when the government "sunk concrete wells on … property to monitor groundwater pollution from a nearby superfund site," and thereafter government "workers … entered to … maintain[] and monitor them.... The permanency of the wells and the quasi-permanent right of entry provided to the government workers who monitored and maintained them led us to apply the per se takings theory of *Loretto*."). Section 26806's surveillance mandate is worse than *Boise Cascade Corp.*; here, the State effectively is forcing Plaintiffs to pay for and build the "wells" on their property and instructing Plaintiffs never to access them except to ensure they are functioning appropriately or to provide access to the government.

Defendants respond by claiming that operators of highly regulated industries have a diminished "expectation of compensation under the Fifth Amendment." Mot. at 12:2. In support, Defendants claim that "firearms dealing" is "an area voluntarily entered into and one which, from the start, is subject to pervasive Government control." Mot. at 12:12-14, 18 (citing *Mitchell Arms v. United States*, 7 F.3d 212, 216 (Fed. Cir. 1993). Thus, Defendants claim, Plaintiffs cannot exclude a government surveillance system from their gun stores (including their private

18

homes). But *Mitchell Arms* does not stand for the proposition that gun stores – real property – lose their private nature and are subject to whatever controls the state wishes to impose, merely because they are put to a certain commercial use. Rather, the court was discussing "the governmentally controlled arena of firearms importation," finding that "the expectation of selling [] assault rifles … could not be said to be a property right…." *Id.* at 216. That decision in no way stands for the proposition that a gun store owner must allow his physical property to be controlled and used by the state to house its surveillance apparatuses.

Next, Defendants claim that *Loretto v. Teleprompter Manhattan CATF Corp*, 458 U.S. 419 (1982) is inapplicable because here Plaintiffs have no "'historically rooted expectation of compensation….'" Mot. at 12:22-2 (citing *California Hous. Sec., Inc. v. United States*, 959 F.2d 955, 958 (Fed. Cir. 1992)). But *California Housing Securities, Inc. v. United States* involved a savings and loan association that subjected itself to an existing "regulatory system," and "did not possess the most valued property right … the right to exclude others, at the time of the alleged taking." In other words, the entity was well aware of the "historically rooted expectation[] that the federal government would take possession of its premises and holdings as conservator or receiver" if certain regulatory conditions were not met. *Id.* Here, by contrast, Section 26806 creates an entirely new and costly regime that was never in place when Plaintiffs entered the marketplace as dealers. Moreover, the FDIC insurance provided the savings and loan at least some theoretical benefit, whereas here, Section 26806's surveillance system's entire purpose is for use by the state. But most importantly, even though subject to temporary administrative inspections by federal and state entities (*see* Mot. at 13:19-20) to inspect firearms and paperwork, gun dealers otherwise have always the right to exclude state agents from conducting 24/7 surveillance of everything that occurs within their stores. Section 26806 upends that historical right, and *Loretto* controls here.

Defendants further argue for dismissal on the basis that Plaintiffs have

19

purportedly failed to "allege that Section 26806 will impose a significant or
prohibitive" enough expense on them. Mot. at 14:3-21. But the significance of the
cost is a quintessential *question of fact* inappropriate for dismissal at the pleading
stage. Plaintiffs have sufficiently alleged that they are facing not only a financial
burden from the requirement, but a significant one, with some alleging they would
have to cease their business because of it. *See* Am. Compl. ¶¶ 11, 13, 159, 165; *see
also id.* at ¶¶ 215-44 (demonstrating that the total cost of implementation to a gun
store would be around $17,000); *cf.* Mot. at 14:18-19 (claiming Plaintiffs'
Complaint "lacks any fact-based showing").

Plaintiffs' allegations of the costs of Section 26806 causing retailers to exit
the market are neither theoretical nor implausible, but they are demonstrably
prohibitive even this early into the law's implementation. Big 5 Sporting Goods,
one of California's largest retail firearms licensees prior to 2024, ceased sales of
rifles and shotguns at all of its California locations in 2024 in lieu of incurring the
cost of compliance with Section 26806. *See* Big 5 Sporting Goods Corp., Annual
Report (Form 10-K) (Feb. 28, 2024) at 17,
https://www.sec.gov/ix?doc=/Archives/edgar/data/1156388/000095017024021829/
bgfv-20231231.htm (last visited June 5, 2024) ("Regulations which took effect
January 1, 2024 contributed to the discontinuation of firearm sales in our California
markets."). Regardless of the unassailable fact that dealers already are exiting the
market due to the costs of compliance with Section 26806, Plaintiffs' plausible
allegations of incurring significant cost are all that is required and must be accepted
as true at this stage of proceedings.

## V.    CONCLUSION

A motion to dismiss is a vehicle for testing the sufficiency of the pleadings.
Rather than use that vehicle for its intended purpose, Defendants have hijacked it to
variously claim that "allegation[s]" and even whole "claim[s]" are simply "without
merit." Mot. at 7:9, 11:25. These quintessential *merits* arguments have no place in a

20

Rule 12(b)(6) motion, and this Court should reject them on their face and without further consideration. It is black-letter law, within this Circuit and without, that asking "the Court to wade into the merits of Plaintiffs' claims … is inappropriate at the motion to dismiss stage" and indeed "premature." *Standard Furniture Mfg. Co. v. LF Prods. Pte. Ltd.*, 2017 U.S. Dist. LEXIS 174293, at *13 (C.D. Cal. June 13, 2017); *Davis v. Magna Int'l of Am., Inc.*, 2021 U.S. Dist. LEXIS 62106, at *19 (E.D. Mich. Mar. 31, 2021); *see also Manigault v. Astrue*, 2012 U.S. Dist. LEXIS 194708, at *6 (N.D. Ga. June 15, 2012); *CSX Transp., Inc. v. Norfolk S. Ry. Co.*, 2019 U.S. Dist. LEXIS 161339, at *27 (E.D. Va. Sept. 9, 2019).

But even if this Court were to consider Defendants' premature merits arguments, they fail. Indeed, Section 26806 necessarily chills the exercise of First Amendment rights, as the Ninth Circuit already has held that knowledge of even the *possibility* of *covert* surveillance will reasonably alter an individual's words and conduct. Section 26806 likewise abridges the individual right to speak anonymously, and Defendants' "public disclosure" obscurantism simply fails to address the substance of the right – anonymity *from the government* itself, which reserves free access to Section 26806 recordings on its own terms.

Defendants' Fourth Amendment merits argument is similarly unavailing, as they simply invoke the "closely regulated industry" exception as a license to commit any and all constitutional abuses – no matter how unprecedented, pervasive, or Orwellian. How a constitutionally protected industry cannot expect privacy from a *novel* mass-surveillance scheme, Defendants never say. Ultimately, Defendants concede that Section 26806 is unparticularized to any sort of criminal activity – a feature of British searches known to the Founders as the "general warrant."

Finally, Section 26806 commands licensees – even homeowners – to purchase at their own cost, install, and maintain for the State's benefit a surveillance infrastructure which they themselves cannot even access. If this sort of

21

physical intrusion – and the demonstrably prohibitive, business-ending costs it entails – do not constitute a "taking" within the meaning of the Fifth Amendment, it is difficult to imagine what would.

For the foregoing reasons, Defendants' motion to dismiss should be denied.

Dated: September 5, 2024            **MICHEL & ASSOCIATES, P.C.**

                                    *s/ Joshua Robert Dale*
                                    Joshua Robert Dale
                                    Attorneys for Plaintiffs Adam Richards,
                                    Jeffrey Vandermeulen, Gerald Clark, Jesse
                                    Harris, On Target Indoor Shooting Range,
                                    LLC, Gaalswyk Enterprises, Inc. (D/B/A
                                    Smokin' Barrel Firearms), Gun Owners of
                                    California, Inc., Gun Owners of America, Inc.,
                                    Gun Owners Foundation, and California Rifle
                                    & Pistol Association, Incorporated


Dated: September 5, 2024            **LAW OFFICES OF DONALD KILMER, APC**

                                    *s/ Donald Kilmer*
                                    Donald Kilmer
                                    Attorney for Plaintiff The Second Amendment
                                    Foundation

PLS.' MEM. OF POINTS & AUTH. IN OPPOSITION TO MOT. TO DISMISS

**ATTESTATION OF E-FILED SIGNATURES**

I, Joshua Robert Dale, am the ECF User whose ID and password are being used to file this PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT. In compliance with Central District of California L.R. 5-4.3.4, I attest that all signatories are registered CM/ECF filers and have concurred in this filing.

Dated: September 5, 2024          *s/ Joshua Robert Dale*
                                   Joshua Robert Dale


**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs Adam Richards, Jeffrey Vandermeulen, Gerald Clark, Jesse Harris, On Target Indoor Shooting Range, LLC, Gaalswyk Enterprises, Inc. (D/B/A Smokin' Barrel Firearms), Gun Owners of California, Inc., Gun Owners of America, Inc., Gun Owners Foundation, and California Rifle & Pistol Association, Incorporated, certifies that this brief contains 6,965 words, which complies with the word limit of Central District of California L.R. 11-6.1.

Dated: September 5, 2024          *s/ Joshua Robert Dale*
                                   Joshua Robert Dale

PLS.' MEM. OF POINTS & AUTH. IN OPPOSITION TO MOT. TO DISMISS

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Richards, et al. v. Newsom, et al.*
Case No.: 8:23-cv-02413 JVS (KESx)

IT IS HEREBY CERTIFIED THAT:

      I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

      I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

Todd Grabarsky
Deputy Attorney General
todd.grabarsky@doj.ca.gov
Christina R.B. Lopez
Deputy Attorney General
christina.lopez@doj.ca.gov
Office of the Attorney General for California
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 269-6044
    *Attorneys for Defendants*


      I declare under penalty of perjury that the foregoing is true and correct.

Executed September 5, 2024.

                                _____
                                  Laura Palmerin