ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
CHRISTINA R.B. LOPEZ
Deputy Attorney General
CAROLYN DOWNS
Deputy Attorney General
TODD GRABARSKY
Deputy Attorney General
State Bar No. 286999
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6044
  Fax:  (916) 731-2124
  E-mail:  Todd.Grabarsky@doj.ca.gov
*Attorneys for Attorney General Rob Bonta in his official capacity*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADAM RICHARDS, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of California,**<br><br>Defendant. | Case No.: 8:23-cv-02413 JVS (KESx)<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date:          October 7, 2024<br>Time:         1:30 p.m.<br>Courtroom:  10C<br>Judge:        The Honorable James V. Selna<br>Action Filed: 12/19/2023 |

# TABLE OF CONTENTS

Page

Introduction ........................................................................................................... 1

Argument ............................................................................................................... 1

I.    Plaintiffs Contort the Legal Standard for Dismissal Under
      Federal Rule of Civil Procedure 12(b)(6) ............................................. 1

II.   Plaintiffs Have Failed to Rebut Defendants' Arguments for
      Dismissal on Each of Their Claims ....................................................... 2

      A.    First Amendment Claim ................................................................ 2

            1.    Plaintiffs Have Failed to Plausibly Establish an
                  Objective Chilling of Speech or Association ..................... 2

            2.    Plaintiffs Have Failed to Plausibly Establish a
                  Violation of Any Right to Anonymity ............................... 6

      B.    Fourth Amendment Claim ............................................................. 7

            1.    Section 26806 Is a Reasonable, Limited Regulation
                  of a Closely Regulated Industry ....................................... 7

            2.    Section 26806 Does Not Violate Fourth
                  Amendment Rights of In-Home Firearms Dealers ........ 11

            3.    Plaintiffs' Contention That Section 26806 Requires
                  Licensed Dealers to Act as Government Agents
                  Fails to Plausibly Establish a Fourth Amendment
                  Claim ............................................................................... 14

      C.    Fifth Amendment Claim .............................................................. 16

            1.    Plaintiffs Fail to Plausibly Establish an
                  Unconstitutional Per Se Physical Taking ....................... 16

            2.    Plaintiffs Fail to Plausibly Establish an
                  Unconstitutional Regulatory Taking ............................... 17

Conclusion .......................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*
    824 F.3d 858 (9th Cir. 2016) .................................................................. 5

*Ashcroft v. Iqbal*
    556 U.S. 662 (2005) ........................................................................... 1, 2

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ........................................................................... 1, 2

*Blount v. Rizzi*
    400 U.S. 410 (1971) .............................................................................. 5

*Cal. Hous. Sec., Inc. v. United States*
    959 F.2d 955 (Fed. Cir. 1992) ............................................................ 17

*Carpenter v. United States*
    585 U.S. 296 (2018) ............................................................................ 15

*CDK Global LLC v. Brnovich*
    16 F.4th 1266 (9th Cir. 2021) ............................................................ 18

*City of Los Angeles v. Patel*
    576 U.S. 409 (2015) .......................................................... 7, 9, 10, 14

*Colony Cove Props., LLC v. City of Carson*
    888 F.3d 445 (9th Cir. 2018) ............................................................. 18

*Florida v. Jardines*
    569 U.S. 1 (2013) ......................................................................... 11, 15

*In re Gilead Scis. Sec. Litig.*
    536 F.3d 1049 (9th Cir. 2008) .............................................................. 2

*Killgore v. City of South El Monte*
    3 F.4th 1186 (9th Cir. 2021) .................................................. 9, 10, 14

*Loretto v. Teleprompter Manhattan CATV Corp.*
    458 U.S. 419 (1982) ..................................................................... 16, 17

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

3
4

*Mendocino Envtl. Ctr. v. Mendocino County*
  192 F.3d 1283 (9th Cir. 1999) ...................................................... 3

5
6

*Penn Central Transportation Co. v. City of New York*
  438 U.S. 104 (1978) ................................................................ 17

7
8

*Printz v. United States*
  521 U.S. 898 (1997) ................................................................ 14

9
10

*Rush v. Obledo*
  756 F.2d 713 (9th Cir. 1985) .................................................. 13, 14

11

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001) ...................................................... 2

12
13

*Starr v. Baca*
  652 F.3d 1202 (9th Cir. 2011) ..................................................... 2

14
15

*The Presbyterian Church (U.S.A.) v. United States*
  870 F.2d 518 (9th Cir. 1989) ................................................. 3, 4, 5

16
17

*Tingley v. Ferguson*
  57 F.4th 1072 (9th Cir. 2023) ..................................................... 4

18
19

*United States v. 4,432 Mastercases of Cigarettes*
  448 F.3d 1168 (9th Cir. 2006) .................................................... 7

20
21

*United States v. Argent Chem. Labs., Inc.*
  93 F.3d 572 (9th Cir. 1996) ....................................................... 7

22

*United States v. Biswell*
  406 U.S. 311 (1972) ............................................................ 7, 11

23
24

*United States v. Manney*
  __ F.4th __, 2024 WL 3853846 (9th Cir. Aug. 19, 2024) ..................... 4

25
26

*Verdun v. City of San Diego*
  51 F.4th 1033 (9th Cir. 2022) ................................................. 7, 8

27
28

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

**STATUTES**

18 U.S.C.
    § 922(a)(6) ..................................................................................... 4
    § 923(a) ............................................................................................ 7
    § 923(c) ............................................................................................ 7
    § 923(g)(1) ..................................................................................... 12

California Health & Safety Code
    §§ 1597.30-1597.65 .................................................................... 12

California Penal Code
    § 16790 ......................................................................................... 12
    § 16810 ......................................................................................... 12
    § 17110 ......................................................................................... 12
    § 26720 ......................................................................................... 10
    § 26806 ................................................................................. *passim*
    § 26840 ......................................................................................... 12
    § 26845 ......................................................................................... 12
    § 26890 ......................................................................................... 12
    § 26892 ......................................................................................... 12
    § 26900 ................................................................................... 10, 12
    § 26905 ......................................................................................... 12
    § 26910 ......................................................................................... 12
    § 28160 ..................................................................................... 7, 12
    § 28175 ..................................................................................... 7, 12
    § 28180 ..................................................................................... 7, 12
    § 28205 ..................................................................................... 7, 12
    § 28210 ..................................................................................... 7, 12
    § 28215 ..................................................................................... 7, 12

**REGULATIONS**

California Code of Regulations, title 4
    § 12372 ......................................................................................... 13
    § 12396 ......................................................................................... 13
    § 15000.3(c) .................................................................................. 12

## TABLE OF AUTHORITIES
### (continued)

Page

California Code of Regulations, title 11
    § 4017(d)............................................................................................12
    § 4018 ...............................................................................................12
    § 4022 ...............................................................................................10
    § 4022(a).......................................................................................7, 12
    § 4032.5 ..............................................................................................7

California Code of Regulations, title 12
    § 326.3 ..............................................................................................13

California Code of Regulations, title 22
    §§ 102351.1-102426..........................................................................12


**COURT RULES**

Federal Rules of Civil Procedure
    Rule 8...................................................................................................1
    Rule 12............................................................................................1, 2

**INTRODUCTION**

Plaintiffs' Opposition to Defendant's Motion to Dismiss the Amended Complaint fails to show a viable challenge to California Penal Code section 26806, a commonsense regulation that requires licensed firearm dealers to maintain digital surveillance systems to ensure the safety and security of the premises and to assist in combating firearms trafficking, thefts, straw purchases, and other gun crimes. Section 26806 neither punishes nor restricts speech or association in any way, and Plaintiffs have not identified facts plausibly demonstrating that the law will objectively chill or suppress speech or assembly in violation of the First Amendment. Plaintiffs' Fourth Amendment claim fails because section 26806 operates in the historically closely regulated firearms industry in which there is little reasonable expectation of privacy, and the law's strict protection of the recordings mitigate any privacy issues or related concerns. That conclusion applies to in-home and storefront dealers alike, both of whom have chosen to operate their business in this closely regulated industry. The law's application to a highly regulated industry also defeats Plaintiffs' claims of a physical or regulatory taking in violation of the Fifth Amendment.

The Court should dismiss the Amended Complaint without leave.

**ARGUMENT**

**I.    PLAINTIFFS CONTORT THE LEGAL STANDARD FOR DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Plaintiffs begin their Opposition by seeking to have the bar lowered on their pleading requirement under Federal Rule of Civil Procedure 8 and raised for the standard for dismissal under Rule 12(b)(6). Opp'n 1 (ECF No. 45). They also contend that dismissal under Rule 12(b)(6) is "very rare" and "*extraordinary*." *Id.* But Plaintiffs support these notions with cases from before the Supreme Court's clarification of the pleading and dismissal standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), and *Ashcroft v. Iqbal*, 556 U.S.

662, 678-79 (2009). Under the correct standard, a complaint is subject to dismissal

if it does not contain sufficient factual matter to plausibly (not merely possibly)

allow the reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678-

79. While well-pleaded factual allegations are accepted as true, a court need not

accept conclusory factual allegations, legal conclusions, unwarranted deductions of

fact, or unreasonable inferences. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055

(9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

2001). Accordingly, dismissal under Rule 12(b)(6), one of the primary tools for

pre-answer motion practice, is hardly "extraordinary."

Plaintiffs also repeatedly argue that a "*merits* argumentation has no place in a

motion to dismiss." *E.g.*, Opp'n 17, 20-21. But this totally contradicts the standard

for a dismissal under Rule 12(b)(6) for failure to state a claim upon which relief

could be granted, which indeed examines whether the *merits* of Plaintiffs' fact-

based allegations, when taken as true, demonstrate a plausible claim for relief.

*Twombly*, 550 U.S. at 555-56. This necessarily requires examination of whether the

facts alleged in the complaint meet the elements for the pleaded cause of action—in

other words, the merits. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Under Plaintiffs' argument, no claim would ever be subject to dismissal under Rule

12(b)(6), an absurd result that this Court should reject.

Under the correct standard on a Rule 12(b)(6) motion, each of Plaintiffs'

claims must be dismissed.

## II.    PLAINTIFFS HAVE FAILED TO REBUT DEFENDANTS' ARGUMENTS FOR DISMISSAL ON EACH OF THEIR CLAIMS

### A.    First Amendment Claim

#### 1.    Plaintiffs Have Failed to Plausibly Establish an Objective Chilling of Speech or Association

Plaintiffs repeat their threadbare allegation that the mere presence of the

surveillance equipment at licensed firearm dealers "'chill[s] [their] ability to speak

freely for fear of retribution by the government.'" Opp'n 4 (quoting Am. Compl.

¶ 12).  But this Court has already observed that section 26806 "does not injure, threaten to injure, threaten to arrest, or threaten Plaintiffs with anything at all for their speech such that their First Amendment right to free speech could reasonably be chilled," and there are likewise "no consequences for assembly that would violate the right to free association."  Order re Prelim. Inj. 8 ("PI Order," ECF No. 28).  And as the Court explained, "Plaintiffs' 'fear of pervasive governmental monitoring' is unfounded, and any chill stemming from it is subjective."  *Id.* at 8.  Nothing in Plaintiffs' Opposition changes that conclusion.

Apparently recognizing that section 26806 neither punishes nor restricts speech or association in any way, Plaintiffs cite *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518 (9th Cir. 1989), for the notion that "express punishment" or "enumerated 'consequences'" are not required to chill speech.  Opp'n 4-5.  But regardless of how it is framed, Plaintiffs must be able to point to something beyond mere speculation that plausibly demonstrates that the law "would chill or silence a person of ordinary firmness from future First Amendment activities."  *Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quotation marks omitted).  Plaintiffs themselves do not deny this standard.  *See* Opp'n 3 ("'Importantly, the test for determining whether the alleged retaliatory conduct chills free speech is objective; it asks whether the retaliatory acts would lead ordinary [persons] in the plaintiffs' position to refrain from protected speech.'" (quoting *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 868 (9th Cir. 2016))).

Accordingly, Plaintiffs' invocation of *Presbyterian Church* is inapposite.  In that case, the court found that church plaintiffs had standing to assert a First Amendment claim after the Immigration and Naturalization Service wore "'body bugs' and surreptitiously recorded church services" in connection with "an undercover investigation of the sanctuary movement," which led to "the criminal prosecution of several individuals who were involved with" that movement.  870

F.2d at 520.  The court premised its holding on the fact that the INS had "confronted" the churches' congregants "with the threat that their prayers and other religious expressions [would] be seen and recorded by the watchful eyes and ears of government and perhaps be kept on file in government records," which in fact "deterred congregants from participating fully in religious observances" and "thereby impaired the churches' ability to carry out their religious missions." *Id.* at 523.  Nothing of the sort is happening here.  The State is not engaged in any "surreptitious recording"; the presence of surveillance equipment is pursuant to a law with well-defined limits and clearly posted notice requirements.  Cal. Penal Code § 26806(b), (c).  Moreover, the surveillance requirements here apply to commercial spaces, within the closely regulated firearms industry, *see infra* pp. 7-10—a far cry from religious worship services and with no tie to any "religious mission" protected by the First Amendment.  Indeed, the analysis in *Presbyterian Church* is grounded in "the free exercise clause of the First Amendment," not free speech or association.  870 F.2d at 521.

Searching for some showing of an objective chilling of First Amendment conduct, Plaintiffs argue that because section 26806 assists law enforcement in combatting and deterring straw purchases, it necessarily "contemplate[s]" chilling "at least *some* speech."  Opp'n 3 & n. 2.  But any fraudulent speech that a would-be straw purchaser is deterred from engaging in is not protected speech—it is a crime outside the bounds of the First Amendment.  *See, e.g.*, *Tingley v. Ferguson*, 57 F.4th 1072, 1081 (9th Cir. 2023) ("It has long been understood that speech which aids and abets criminal conduct is not protected speech."); *see also United States v. Manney*, __ F.4th __, 2024 WL 3853846, at *4 (9th Cir. Aug. 19, 2024) (stating that 18 U.S.C. § 922(a)(6) "regulates statements made by the individual purchasing a firearm to ensure that a purchaser is not lying to a firearms dealer about who is purchasing the firearm").

Plaintiffs also argue that "'intercepting' communications" and "'conducting covert surveillance'" is enough to chill speech. Opp'n 3 (quoting *Ariz. Students' Ass'n*, 824 F.3d at 868). Their examples not only omit key language from the case they cite, *see Ariz. Students' Ass'n*, 824 F.3d at 868 (providing "detaining or intercepting *mail*"[1] and "conducting covert surveillance *of church services*"[2] as two examples of conduct that courts have found "impermissibly interferes with speech" (emphasis added)), but are inapposite on their own terms. Section 26806's own limits expressly forbid disclosure or use of the recordings except in limited circumstances. Cal. Penal Code § 26806(b); *see infra* pp. 7-10 (detailing these limits and constraints). And nothing about the surveillance requirements of the law is covert; it is pursuant to statute and expressly disclosed via notice requirements. *Id.* § 26806(c). Thus, Plaintiffs' claim that section 26806 "allows unfettered access by government 'agent[s]' at any time," Opp'n 5, does not hold water.

Having conceded that firearm purchasing information is "subject to regulation and paperwork" unrelated to section 26806, Opp'n 5; *see also* PI Order at 8, Plaintiffs appear to base the portion of their First Amendment claim pertaining to freedom of association on individuals who visit a firearms dealer (where organizational literature information or membership applications *may* be available, *see* Am. Compl. ¶¶ 74-75), but do not make a purchase. Opp'n 5. Plaintiffs do not dispute that appearing at a commercial firearms establishment, and even browsing such literature or picking up an application, does not actually disclose affiliation with any "protected group[]," *see* Opp'n 5-6; any individual could patronize any firearms dealer and do the same, regardless of affiliation. Instead, Plaintiffs falsely equate "visit[ing] a gun store" under surveillance without "purchas[ing] a firearm" with requiring an advocacy group to turn over its membership list. Opp'n 5-6

---

[1] *See Blount v. Rizzi*, 400 U.S. 410, 412, 417 (1971) (striking down "a scheme of administrative censorship" that allowed the Postmaster General to "halt use of the mails and of postal money orders for commerce in allegedly obscene materials").

[2] *See Presbyterian Church*, 870 F.2d 518 (described *supra* pp. 3-4).

1    (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958)).  Those

2    circumstances are clearly distinguishable, especially given the tight limitations on

3    the government's access to the recordings set forth in section 26806(b).

### 2.    Plaintiffs Have Failed to Plausibly Establish a Violation of Any Right to Anonymity

6        Plaintiffs also fail to demonstrate a violation of any so-called right to "speak

7    anonymously."  Opp'n 6.  Contrary to Plaintiffs' contentions, section 26806 does

8    not "unmask[] . . . gun store patrons to the state."  *Id.*  Again, firearms transactions

9    are closely regulated as part of the comprehensive regulatory scheme of the

10   firearms industry, which includes disclosure of personally identifiable information

11   of prospective purchasers.  And, section 26806's express limitations on disclosure

12   and use of the recordings ensure that neither the State nor the public can unduly

13   collect or use them.  *See infra* pp. 7-10.  These limitations apply regardless of

14   whether an individual chooses to "participat[e] in business transactions in gun

15   stores" or to discuss "gun control, political campaigns, and the current politics of

16   California" during their visit.  Opp'n 6 (quotation marks and alternations omitted).

17       In any event, Plaintiffs have not explained how or why the right to speak

18   anonymously would apply to commercial firearms dealers, and none of their cited

19   cases arise in a commercial context (let alone a closely regulated one).  *See* Opp'n 6

20   (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) (leaflets opposing

21   proposed school tax levy); *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088 (W.D.

22   Wash. 2001) (internet postings critical of corporation)); *see also* PI Order at 9 ("To

23   the extent that Plaintiffs complain of a lack of anonymity of speech made in front of

24   cameras, Plaintiffs invite the disclosure by engaging in such speech during a public

25   and regulated business transaction.").

## B.   Fourth Amendment Claim

### 1.   Section 26806 Is a Reasonable, Limited Regulation of a Closely Regulated Industry

Plaintiffs do not dispute that the firearms sales industry—in which section 26806 is of one of a host of federal, state, and local regulations—is a closely regulated industry in which there is a diminished expectation of privacy. *See* Mot. to Dismiss Am. Compl. 8-9 (ECF No. 41). Nor could they: as this Court has already found, the firearms industry is subject to a "significant regulatory framework" such that "dealers are closely regulated businesses that have at least a diminished expectation of privacy under the Fourth Amendment." PI Order at 19; *see also City of Los Angeles v. Patel*, 576 U.S. 409, 424 (2015); *United States v. Biswell*, 406 U.S. 311, 316 (1972); *Verdun v. City of San Diego*, 51 F.4th 1033, 1039 (9th Cir. 2022), *cert. denied*, 144 S. Ct. 73 (2023); *United States v. Argent Chem. Labs., Inc.*, 93 F.3d 572, 575 (9th Cir. 1996). Many of the regulations in this scheme require the taking of personally identifiable information. To give some examples: FFL applicants must submit their fingerprints and photographs to the licensing authorities, 11 C.C.R. § 4032.5; 18 U.S.C. § 923(a); FFL dealers must obtain personal information from prospective purchasers of firearms, ammunition, and the like, Cal. Penal Code §§ 28160, 28175, 28180, 28205, 28210, 28215; and dealers must submit to state and federal inspections of the premises, 11 C.C.R. § 4022(a); 18 U.S.C. § 923(c); *Biswell*, 406 U.S. at 316 (upholding the constitutionality of such inspections). *See also* Mot. to Dismiss Am. Compl. 8-9 (detailing the regulatory scheme for licensed firearm dealers). Section 26806 is part and parcel of this regulatory scheme.

Plaintiffs also do not dispute that administrative "warrantless searches and seizures on commercial property used in 'closely regulated' industries"—such as the firearms industry—"are constitutionally permissible." *Argent Chem. Labs., Inc.*, 93 F.3d at 575; *see also Biswell*, 406 U.S. at 316; *United States v. 4,432*

*Mastercases of Cigarettes*, 448 F.3d 1168, 1176 (9th Cir. 2006).  Indeed, as this
Court recognized, the "Fourth Amendment's presumption that warrantless searches
are unreasonable is subject to the administrative use or special needs exceptions,
within which is the justification of warrantless searches of 'closely regulated
businesses for specified purposes.'"  PI Order at 19 (quoting *Verdun*, 51 F.4th at
1039).  Plaintiffs, like all other licensed firearm dealers, "[chose] to engage in this
pervasively regulated business . . . with the knowledge that [their] business records,
firearms, and ammunition will be subject to effective inspection." *Id.* (quoting
*Biswell*, 406 U.S. at 316).

Plaintiffs also ignore section 26806's built-in restrictions that ensure that the
law does not act as a "general warrant" or allow for unfettered intrusion by
government agents, refuting their unsupported argument otherwise.  Opp'n 7.  The
law requires monitoring only in certain public spaces that are used to conduct the
business of firearm sales—views of entries and exits, areas where firearms are
displayed, and points of sale.  Cal. Penal Code § 26806(a)(3).  And it strictly
forbids "us[ing], shar[ing], allow[ing] access, or otherwise releas[ing] recordings, to
any person" except in limited circumstances. *Id.* § 26806(b).  These limited
exceptions allow government access to the recordings *only* in compliance with a
warrant or other court order or for licensure inspection purposes to ensure that the
dealer is complying with the recording and data storage requirements.[3] *Id.*
§ 26806(b)(1), (2).  Plaintiffs proffer no fact-based allegations plausibly
demonstrating that these limitations will somehow result in unfettered access to the
recordings by government officials or their agents.[4]

_____

[3] A third exception permits dealers to "allow access to the system or release
recordings to any person in response to an insurance claim or as part of the civil
discovery process, including, but not limited to, in response to subpoenas, request
for production or inspection, or other court order."  Cal. Penal Code § 26806(b)(3).
[4] Plaintiffs appear to argue that Defendant has made an "admission" that
section 26806 constitutes a "general warrant."  Opp'n 7.  That is wrong.  For the
reasons explained above and in their Motion to Dismiss, section 26806's
requirements and built-in limitations tightly limit the surveillance and the
government's access to and use of the recordings.

Instead, Plaintiffs argue, Opp'n 10, that section 26806 fails the test for determining whether searches or inspections of closely regulated industries are reasonable under the Fourth Amendment:  (1) "[T]here must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made"; (2) "the warrantless inspections must be 'necessary' to further [the] regulatory scheme"; and (3) "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant."  *Patel*, 576 U.S. at 426 (quoting *New York v. Burger*, 482 U.S. 691, 702-03 (1987)); *Killgore v. City of South El Monte*, 3 F.4th 1186, 1192 (9th Cir. 2021) (same).  Section 26806 meets all three factors.

*First*, there is no question that the government has a "substantial" interest in regulating the firearm industry, including by placing additional safety and security measures upon dealers.  As the Supreme Court has confirmed, the firearms industry is "intrinsically dangerous" and poses a "clear and significant risk to the public welfare."  *Patel*, 576 U.S. at 424 & n.5.  Plaintiffs assert that they "disagree," but they provide no rationale backing their "disagree[ment]."  Opp'n 10.  Again, section 26806 undoubtedly furthers public safety in helping to secure the premises of firearms dealers and combat firearms trafficking, thefts, straw purchases, and other gun crimes.  *See* Decl. of Todd Grabarsky ISO Def.'s Mot. to Dismiss Am. Compl. Exs. 1-3.

*Second*, by the statute's own terms, government officials may only access the recordings without a warrant if they are "conducting an inspection of the licensee's premises, for the purpose of inspecting the system for compliance with this section, and only if a warrant or court order would not generally be required for that access."  Cal. Penal Code § 26806(b)(1).  These inspections are "necessary" to further the regulatory scheme because they ensure that dealers are complying with the law by, for example, having functioning video-audio surveillance equipment, pointing the cameras and microphones at the requisite points of sales, and

maintaining a one-year backlog of the recordings.  *Id.* § 26806(a).  Requiring inspectors to obtain a warrant each time they seek to ensure compliance with the law would disrupt its purposes considering the "potential ease of concealing violations."  *Killgore*, 3 F.4th at 1192.  Plaintiffs argue that other "federally mandated collection of data for ensuring lawful transactions" is sufficient to protect against gun crimes arising from unlawful transactions.  Opp'n 11.  But this argument ignores the added protections against firearms-related crimes and safety issues that section 26806's surveillance requirement affords—which the Legislature has deemed to be a necessary public safety measure.  *See* Grabarsky Decl. Exs. 1-3.  In addition, adopting Plaintiffs' argument would prevent states like California from bolstering existing federal regulations with additional protections against the scourge of gun violence and other firearms-related crimes.

*And third*, the limits placed on the inspection of firearms dealers—including those of section 26806—serve as a "constitutionally adequate substitute for a warrant."  *Patel*, 576 U.S. at 426.  Inspection is only permitted to ensure compliance with the laws and regulations governing firearms dealers, including section 26806's surveillance requirements, and occurs at certain and regular intervals.  *See, e.g.*, Cal. Penal Code §§ 26720, 26900, Cal. Code Regs. tit. 11, § 4022.  As explained above, section 26806 itself limits inspection so that inspectors can examine the recordings only to ensure that dealers are maintaining the proper recording equipment and complying with the other requirements of the law.  Cal. Penal Code § 26806(b)(1).  There is thus no danger of inspectors engaging in an unlimited viewing of the recordings beyond what is necessary to ensure compliance.  Therefore, as inspectors are "restrained in both the time and purpose of each inspection," *Killgore*, 3 F.4th at 1193, the inspections "provid[e] a constitutionally adequate substitute for a warrant," *Patel*, 576 U.S. at 426.

### 2.    Section 26806 Does Not Violate Fourth Amendment Rights of In-Home Firearms Dealers

Plaintiffs contend that section 26806 is an "especially egregious" Fourth Amendment violation as applied to in-home firearm dealers.  Opp'n 8-10.  But this Court has already found that the "close regulation of firearm transactions applies to home-based dealers just as they do storefronts" and "the same reasoning" why the Fourth Amendment is not violated "applies" in both contexts.  PI Order at 21.  Neither the Amended Complaint nor the Opposition provides reason to depart from this conclusion.

Plaintiffs contend that there is a heightened expectation of privacy or enhanced constitutional protections for in-home dealers that should change the analysis.  Opp'n 8-9.  But the only authority Plaintiffs point to for this proposition concerned an unlawful search of a criminal suspect's home by law enforcement officers using a drug-detection dog—which has nothing to do with regulating business operations in a closely regulated industry.  *Florida v. Jardines*, 569 U.S. 1 (2013) (cited at Opp'n 8-9).  In-home firearm dealers, just like storefront dealers, have chosen to engage in a "pervasively regulated business," and they have done so "with the knowledge that [their] business records, firearms, and ammunition will be subject to effective inspection."  *Biswell*, 406 U.S. at 316.  Thus, in-home dealers—who *choose* to operate their businesses from their homes—are appropriately subject to the same slate of generally applicable regulations, including section 26806.  And, in any event, section 26806(b)'s protections ensure that the government cannot access the recordings—whether for in-home or storefront dealers—except in limited circumstances:  in compliance with a warrant, or as part of an administrative search for which no warrant is otherwise required, both of which comport with the Fourth Amendment.

Moreover, section 26806 is just one of a host of regulations that apply to licensed in-home and storefront firearms dealers alike.  The array of regulations

over firearms dealers applies to anyone who performs firearms transactions on their

"licensed" or "business premises," without making a distinction between storefront

or in-home dealers. *See* Cal. Penal Code § 16810. All dealer applicants must

provide the same information to become licensed (*id.* § 26700; 11 C.C.R. § 4018),

and the definition of "licensed gun dealer" also does not differentiate between in-

home and storefront operations (Cal. Penal Code § 16790; 11 C.C.R. § 4017(d)).

Once in operation, both storefront and in-home dealers must comply with the same

stringent regulations concerning, to give some examples, secure storage of firearms

(*e.g.*, Cal. Penal Code §§ 17110, 26890, 26892), warrantless inspections of the

premises from government officials (*e.g., id.* § 26900; 11 C.C.R. § 4022(a); 18

U.S.C. § 923(g)(1)), the collection and reporting of information on firearms

transactions (*e.g.,* Cal. Penal Code §§ 26840, 26845, 26905, 26910, 28160, 28175,

28180, 28205, 28210, 28215), and conveying various notifications, warning signs,

and labels to patrons (*e.g.*, *id.* §§ 23640, 26835, 26865, 26875, 34205). Section

26806 fits squarely within this scheme that closely regulates the sale of firearms by

both storefront and in-home dealers. Just as the fact that some dealers choose to

operate a business in their home does not diminish the risk of unlawful transactions

or the benefit of surveillance as a law enforcement tool, that fact also does not

exempt them from generally applicable firearms regulations.

The firearms industry is not unique in this respect. In-home operations in

other highly regulated industries are also subject to close government regulation

and inspection. In-home day cares, for example, are subject to extensive regulation

and inspection mandates. *See* Cal. Health & Safety Code §§ 1597.30-1597.65; Cal.

Code Regs. tit. 22, §§ 102351.1-102426. And those conducting commercial

cannabis activity may use a private residence as their licensed premises under

certain circumstances but are subject to the same regulatory requirements regardless

of where they choose to do business. *See* Cal. Code Regs. tit. 4, § 15000.3(c). In

fact, both in-home and storefront commercial cannabis operators are subject to

similar 24/7 digital surveillance requirements. *Id.* §§ 15000.3(c), 15044.[5]

Plaintiffs invoke *Rush v. Obledo*, 756 F.2d 713 (9th Cir. 1985), which held that a law allowing for inspections of homes providing childcare services was "overbroad." Opp'n 9. But there, the court determined that the law was "overbroad" because it permitted general searches of the home at any time (even after working hours) and in any location (even areas that were not used for the childcare services). *Rush*, 756 F.2d at 721-22. Here, by contrast, section 26806 does not require recording of any and all locations in an in-home dealer's home. Again, it limits monitoring only to spaces that are used to conduct the business of firearm sales: views of entries and exits, areas where firearms are displayed, and points of sale. Cal. Penal Code § 26806(a)(3). And, as explained above, inspections are limited in time, place, and scope so that they are used only to ensure compliance with the rules and regulations governing firearm sales. Thus, there is no danger of government monitoring or inspection of an in-home dealer's entire home—just the areas the in-home dealer chooses to use for firearm sales. In fact, although it deemed several of the inspection regulations unconstitutionally overbroad, *Rush* at the same time upheld as "sufficiently precise and restrictive" new regulations that limited the searches to the areas "where the children have access" and "the hours at which searches may be conducted to those during which family day care takes place." *Rush*, 756 F.2d at 722. Section 26806, along with the limitations on inspection of the recordings described above, thus mirrors the regulations that withstood scrutiny in *Rush*.

Further distinguishing *Rush* is the nature of the activity being regulated. The firearm sales industry involves storing and protecting dangerous and expensive weapons, which can be subject to theft and other crimes even after normal business hours. Thus, section 26806's 24-hours-per-day recording requirement fits the needs

---

[5] Video surveillance requirements also apply to other industries, such as banking, 12 C.F.R. § 326.3, and gambling, Cal. Code Regs. tit. 4, §§ 12372, 12396.

of this particular industry and protects against gun crimes that can occur around-the-clock.  That is all the more important for in-home dealers, which do not typically hold the regular business hours that storefront dealers do.  By contrast, children are not present around-the-clock at in-home daycares, which only operate during fixed business hours; thus, as the court in *Rush* explained, there would be no need for after-hours inspections or inspections of areas where children in the daycare would not be present on-site.  *Rush*, 756 F.2d at 721-22.

### 3. Plaintiffs' Contention That Section 26806 Requires Licensed Dealers to Act as Government Agents Fails to Plausibly Establish a Fourth Amendment Claim

Plaintiffs also contend that section 26806 impermissibly requires dealers to serve as government agents to engage in the required surveillance.  Opp'n 11-14.  But even if dealers were to be deemed as government agents in this context, that alone does not establish a Fourth Amendment violation because, as explained above, the law's requirements and limitations comport with the Fourth Amendment.  Similar to government officials and inspectors, dealers are strictly prohibited from using the recordings in any meaningful way beyond the limited exceptions.  They may not "use, share, allow access, or otherwise release recordings, to any person" except in limited circumstances, which effectively only allow disclosure in compliance with a warrant or court order, or for inspection purposes by government officials.  Cal. Penal Code § 26806(b).  Accordingly, there is no danger that the dealers—whether acting as "government agents" or on their own accord—can use, release, or disclose the recordings in an unfettered or general way.  And even if dealers were considered "government agents" in installing and maintaining the surveillance systems, the requirements and limitations of the law would still satisfy the reasonableness test for warrantless administrative inspections articulated in *Patel* and *Killgore*.  *See supra* pp. 7-10.

Plaintiffs invoke several inapposite cases as threadbare support for this argument.  *Printz v. United States*, 521 U.S. 898 (1997) (cited at Opp'n 7), stands

for the principle that the Tenth Amendment prohibits the federal government from commandeering local government law enforcement to perform background checks. It says nothing about state laws regulating the firearms industry by requiring private firearms dealers to maintain security and data collection measures. *Carpenter v. United States*, 585 U.S. 296 (2018) (cited at Opp'n 14-15), held that the government's collection of a criminal suspect's location data maintained by a third-party private wireless carrier for criminal investigation purposes implicated the Fourth Amendment so as to require a warrant. Similar to Plaintiffs' invocation of *Jardines*, *see supra* p. 11, *Carpenter* is not applicable here because it concerned a search as part of a specific criminal investigation of a particular individual, not a regulation of a closely regulated industry. And, in any event, section 26806 *does* require law enforcement to obtain a warrant before accessing recordings in such circumstances. Cal. Penal Code § 26806(b)(2).

Plaintiffs also argue that "the signage requirement of Section 26806(c) does not cure the defect of making the licensed gun dealer a government surveillance agent" because "[f]or Plaintiffs to exercise their right to acquire firearms, they must waive their Fourth Amendment right by subjecting themselves to constant and unnecessary warrantless surveillance." Opp'n 16. But, as explained above, no patron of a firearms dealer must waive his or her rights because, again, section 26806's surveillance requirement is a reasonable, limited regulation of a closely regulated industry that comports with the Fourth Amendment. *See supra* pp. 7-10. To the extent that Plaintiffs are arguing that their "right to acquire firearms" under the *Second* Amendment is violated, the Court should reject that argument because Plaintiffs have chosen to omit that claim from their Amended Complaint.[6]

---

[6] Any Second Amendment challenge to section 26806 would fail on the merits. *See* PI Order at 16; Def.'s Mot. to Dismiss Compl. 9-16 (ECF No. 31).

1

**C.    Fifth Amendment Claim**

2

**1.    Plaintiffs Fail to Plausibly Establish an Unconstitutional Per Se Physical Taking**

3

4

In attempting to show a per se taking under the Fifth Amendment, Plaintiffs

5

argue that firearms dealers have historically had a right to exclude government

6

agents from their property and business dealings.  Opp'n 19-20.  But, as shown in

7

Defendant's Motion to Dismiss, Plaintiffs have not sufficiently pleaded a claim for

8

a physical taking because they have no "historically rooted expectation of

9

compensation" in this context and section 26806 is not "qualitatively more intrusive

10

than" other regulations over the firearms industry.  *Loretto v. Teleprompter*

11

*Manhattan CATV Corp.*, 458 U.S. 419, 441 (1982); *see also* Mot. to Dismiss Am.

12

Compl. 12-13.

13

The regulatory scheme under which the closely regulated firearms sales

14

industry is governed—including the many requirements for obtaining personally

15

identifiable information from dealers and patrons as well as those ensuring the

16

safety and security of dealer premises and inventory—is not new.  *See supra* pp. 7-

17

10; *see also* Mot. to Dismiss Am. Compl. 8-9; PI Order at 2.  Section 26806, which

18

simply adds a requirement to this existing system, does not, as Plaintiffs contend,

19

"create[] an entirely new and costly regime that was never in place when Plaintiffs

20

entered the marketplace as dealers."  Opp'n 19.  Section 26806 is "an alternate

21

manifestation of the recording process that is already injected into firearm

22

transactions by a host of other background check and purchase-tracking

23

regulations."  PI Order at 8.  Plaintiffs have long been subject to such security and

24

reporting requirements, in addition to regular inspections to ensure compliance with

25

those requirements.  *See* Mot. to Dismiss Am. Compl. 8-9 (listing various

26

requirements); Opp'n 19 (conceding that licensed firearms dealers are "subject to

27

temporary administrative inspections by federal and state entities to inspect

28

firearms and paperwork") (citation omitted).  It does not follow that "an alternate

manifestation" of existing requirements grants Plaintiffs a right to exclude agents
ensuring compliance with those requirements.  PI Order at 8.

Plaintiffs' attempt to shoehorn this case into the standards of *Loretto v.
Teleprompter Manhattan CATV Corp.* is unavailing.  Opp'n 19.  There, the
Supreme Court held that where a state law required landlords to permit installation
of cable television equipment on their private property, the plaintiff had "a
historically rooted expectation of compensation" such that interference with her
right to exclude was a taking that warranted compensation.  *Loretto*, 458 U.S. at
436, 441.  However, "*Loretto* simply does not fit cases such as this where the
historically rooted expectations of ownership that underlie *Loretto* do not exist."
*Cal. Hous. Sec., Inc. v. United States*, 959 F.2d 955, 959-60 (Fed. Cir. 1992).  And
Plaintiffs' attempt to distinguish this case from *California Housing Securities, Inc.
v. United States*, 959 F.2d 955, which held that the government's appointment of a
conservator and receiver to manage some affairs of a savings and loan entity did not
constituting a taking, actually shows their similarities.  Opp'n 19.  Like the savings
and loan entity subject to the regulation in *California Housing Securities*, licensed
firearms dealers "voluntarily subject[] [themselves] to an expansive statutory
regulatory system" and do not "possess the most valued property right . . .[,] the
right to exclude others, at the time of the alleged taking."  *Cal. Hous. Sec., Inc.*, 959
F.2d at 958; *see also* PI Order at 12 (identifying the banking industry as closely
regulated industry similar to the firearms sales industry).

## 2.    Plaintiffs Fail to Plausibly Establish an Unconstitutional Regulatory Taking

Plaintiffs' Opposition also fails to show that that they have met any of the
three requirements for a plausible regulatory taking claim under *Penn Central
Transportation Co. v. City of New York*, 438 U.S. 104 (1978):  (1) the "economic
impact of the regulation"; (2) "the extent to which the regulation has interfered with
distinct investment-backed expectations"; and (3) "the character of the

governmental action." *CDK Global LLC v. Brnovich*, 16 F.4th 1266, 1282 (9th Cir. 2021) (quoting *Penn Central*, 438 U.S. at 124).

*First*, Plaintiffs hide behind hypothetical calculations for a hypothetical licensed firearms dealer and yet claim that such hypothetical costs are "demonstrably prohibitive." Opp'n 20. But such hypothetical—indeed, conclusory—statements may not be taken as true and are certainly not enough to sufficiently plead that the economic impact of section 26806 is significant or prohibitive. Plaintiffs' reliance on one chain store's (Big 5 Sporting Goods) decision to stop selling firearms, Opp'n 20—a store that is not a party to this litigation and whose decision to cease sale of firearms could be the result of a host of contributing factors and rationales—does not speak to the costs on the dealers that *are* parties to this lawsuit, or their property's pre-deprivation value as compared to its post-deprivation value. *See Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018). Plaintiffs have not pleaded sufficient facts to show such pre- and post-deprivation values for the parties to this litigation. And, in any event, Plaintiffs entirely ignore the case law showing that diminution in property value as high as 95% is not sufficient to demonstrate a taking. *See* Mot. to Dismiss Am. Compl. 14 (citing cases).

*Second*, Plaintiffs cannot establish that section 26806 upends their investment-backed expectations because, as discussed above, as participants in a highly regulated industry, Plaintiffs have been aware that they operate in a regulatory environment where "new regulation might even render [their] property economically worthless." *CDK Global LLC*, 16 F.4th at 1282.

*And third*, because Plaintiffs are participants in a highly regulated industry, the governmental action at issue here is only a minimal invasion of their business and property interests. Plaintiffs frame their expectation as "the right to exclude state agents from conducting 24/7 surveillance of everything that occurs within their stores." Opp'n 19. But as this Court made clear, "the government does not have

1    persistent access to recordings and may only access them in limited circumstances."

2    PI Order at 8; *see also* Mot. to Dismiss Am. Compl. 10-11; *supra* pp. 7-10.  And as

3    discussed above, Plaintiffs have not historically had the right to exclude the

4    government from inspection or regulation, nor do they suddenly have that right

5    with the enactment of section 26806.

6                                                      **CONCLUSION**

7          Defendant's Motion to Dismiss the Amended Complaint should be granted,

8    and the Court should dismiss this case without leave to amend.

9

10   Dated:  September 26, 2024                    Respectfully submitted,

11                                                          ROB BONTA
                                                            Attorney General of California
12                                                          MARK BECKINGTON
                                                            Supervising Deputy Attorney General
13                                                          CHRISTINA R.B. LOPEZ
                                                            Deputy Attorney General
14                                                          CAROLYN DOWNS
                                                            Deputy Attorney General

15

16                                                          */s/ Todd Grabarsky*
                                                            TODD GRABARSKY
17                                                          Deputy Attorney General
                                                            *Attorneys for Attorney General Rob*
18                                                          *Bonta in his official capacity*

19   SA2023306691

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Attorney General Rob
Bonta, in his official capacities, certifies that this brief contains 5,925 words, which
complies with the word limit of L.R. 11-6.1.


Dated:  September 26, 2024                Respectfully submitted,

                                         ROB BONTA
                                         Attorney General of California
                                         MARK BECKINGTON
                                         Supervising Deputy Attorney General
                                         CHRISTINA R.B. LÓPEZ
                                         Deputy Attorney General
                                         CAROLYN DOWNS
                                         Deputy Attorney General


                                         */s/ Todd Grabarsky*
                                         TODD GRABARSKY
                                         Deputy Attorney General
                                         *Attorneys for Attorney General Rob*
                                         *Bonta in his official capacity*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2024, I electronically filed the foregoing document and any attachments thereto with the Clerk of the Court by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  September 26, 2024          */s/ Todd Grabarsky*
                                                         TODD GRABARSKY