UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | 8:23-cv-02413-JVS-KES | Date  October 16, 2024 |
| Title | Adam Richards et al. v. Gavin Newsom et al. | |

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:    **[IN CHAMBERS]** <u>Order Regarding Motion to to Dismiss [41]</u>

Plaintiff Adam Richards, Jeffrey Vandermeulen, Gerald Clark, Jesse Harris, On Target Indoor Shooting Range, LLC, Gaalswyk Enterprises, Inc. (d/b/a Smokin' Barrel Firearms), Gun Owners of California, Inc. ("GOC"), Gun Owners of America, Inc. ("GOA"), Gun Owners Foundation ("GOF"), California Rifle & Pistol Association ("CRPA"), and The Second Amendment Foundation's ("SAF") (collectively, "Plaintiffs") have filed several constitutional claims against Defendants Gavin Newsom and Rob Bonta (collectively, "Defendants") under the First, Fourth, and Fifth Amendments. (FAC, Dkt. No. 39.)

Before this Court is Bonta's motion to dismiss. (Mot., Dkt. No. 41.) Plaintiffs filed an opposition. (Opp'n, Dkt. No. 45.) Defendants filed a reply. (Reply, Dkt. No. 46.)

For the following reasons, the Court **GRANTS** the motion to dismiss on all claims, with leave to amend within twenty-one (21) days.

## I. BACKGROUND

The following come from Plaintiffs' FAC. Under federal law, the sale, manufacture, or importation of firearms requires a federal firearm license ("FFL"). (FAC ¶ 26.) To obtain an FFL, a person must be at least twenty-one years of age and not prohibited from owning or possessing firearms, not have willfully violated the federal Gun Control Act ("GCA") or its regulations, not willfully failed to disclose material information or have made any false statements on their application, have a premises for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-02413-JVS-KES                    Date    October 16, 2024

Title    Adam Richards et al. v. Gavin Newsom et al.

conducting business, and certify compliance with state and local laws.  (Id. 26–27.)

California law requires that a transfer of firearms be done through an FFL retailer. (Id. ¶ 28.)  Prospective purchasers must submit an application to the FFL, which will electronically transfer purchaser information to the California Department of Justice ("CA DOJ") for confirmation that the purchaser is not disqualified from doing so under state or federal law.  (Id.)  California law also requires a state-issued license to transfer firearms, which itself requires an FFL, regulatory or business license, state seller's permit, or CA DOJ certificate of eligibility.  (Id.)  California cities and counties are free to impose additional licensing requirements.  (Id. ¶ 29.)

Federal law requires all sales of firearms to be recorded in an aquisition and disposition logbook, or "bound book."  (Id. ¶ 31.)  Upon a transfer, both the licensed dealer and purchaser must complete a Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Form 4473 to ensure eligibility and process a federal background check through the National Instant Criminal Background Check System ("NICS").  (Id. ¶ 33.)  California may conduct backgrounds checks in lieu of NICS by instead collecting a Dealer Record of Sale ("DROS") from FFL dealers electronically.  (Id. ¶ 34.)  Cities and counties may impose additional recordkeeping requirements.  (Id. ¶ 35.)

ATF officers are authorized to enter FFL dealers during business hours to inspect or examine records, documents, ammunition, and firearms.  (Id. ¶ 36.)  Such inspections may be done "every 12 months, during a reasonable inquiry, during a criminal investigation of a person or persons other than the FFL, or when such inspections may be required for determining the disposition of one or more firearms during a bona fide criminal investigation."  (Id. ¶ 36.)  Likewise, California authorizes similar inspections by the CA DOJ at least once every three years.  (Id. ¶ 37.)  FFLs are also required to pay an annual fee of $115 to cover the cost of inspections.  (Id. ¶ 38.)  FFL dealers who fail comply with these requirements may be fined or not allowed to conduct business and, thus, most FFLs take these requirements very seriously.  (Id. ¶ 39.)

Senate Bill 1384 added section 26806 to the California Penal Code.  (Id. ¶ 47.) Section 26806 states the following:

(a)    Commencing January 1, 2024, a licensee shall ensure that its business
premises are monitored by a digital video surveillance system that meets all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-02413-JVS-KES                    Date    October 16, 2024

Title    Adam Richards et al. v. Gavin Newsom et al.

of the following requirements:

(1)    The system shall clearly record images and, for systems located inside the premises, audio, of the area under surveillance.

(2)    Each camera shall be permanently mounted in a fixed location. Cameras shall be placed in locations that allow the camera to clearly record activity occurring in all areas described in paragraph (3) and reasonably produce recordings that allow for the clear identification of any person.

(3)    The areas recorded shall include, without limitation, all of the following:

    (A)    Interior views of all entries or exits to the premises.

    (B)    All areas where firearms are displayed.

    (C)    All points of sale, sufficient to identify the parties involved in the transaction.

(4)    The system shall continuously record 24 hours per day at a frame rate no less than 15 frames per second.

(5)    The media or device on which recordings are stored shall be secured in a manner to protect the recording from tampering, unauthorized access or use, or theft.

(6)    Recordings shall be maintained for a minimum of one year.

(7)    Recording images shall clearly and accurately display the date and time.

(8)    The system shall be equipped with a failure notification system that provides notification to the licensee of any interruption or failure of the system or storage device.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-02413-JVS-KES                         Date    October 16, 2024

Title    Adam Richards et al. v. Gavin Newsom et al.

(b)    A licensee shall not use, share, allow access, or otherwise release recording, to any person except as follows:

    (1)    A licensee shall allow access to the system to an agent of the department or a licensing authority conducting an inspection of the licensee's premises, for the purpose of inspecting the system for compliance with this section, and only if a warrant or court order would not generally be required for that access.

    (2)    A licensee shall allow access to the system or released recordings to any person pursuant to a search warrant or other court order.

    (3)    A licensee may allow access to the system or release recordings to any person in response to an insurance claim or as part of the civil discovery process, including, but not limited to, in response to subpoenas, request for production or inspection, or other court order.

(c)    The licensee shall post a sign in a conspicuous place at each entrance to the premises that states in block letters not less than one inch in height:

    "THESE PREMISES ARE UNDER VIDEO AND AUDIO SURVEILLANCE. YOUR IMAGE AND CONVERSATIONS MAY BE RECORDED."

(d)    A licensee shall, on an annual basis, provide certification to the department, in a manner prescribed by the department, that its video surveillance system is in proper working order.

(e)    This section does not preclude any local authority or local governing body from adopting or enforcing local laws or policies regarding video surveillance that do not contradict or conflict with the requirements of this section.

Cal. Penal Code § 26806 (West 2024).

    On December 19, 2023, Plaintiffs filed their Complaint alleging five constitutional

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |

| | |
|---|---|
| Title | Adam Richards et al. v. Gavin Newsom et al. |

claims under 42 U.S.C. § 1983: (1) violation of the First Amendment right to free speech and assembly; (2) violation of the Fourteenth Amendment right to equal protection; (3) violation of the Second Amendment right to keep and bear arms; (4) violation of the Fourth Amendment right to privacy; and (5) violation of the Fifth Amendment right against government taking without just compensation. (Compl., Dkt. No. 1). This Court denied Plaintiffs' application for a temporary restraining order on December 27, 2024, and ordered Defendants to show cause as to why the Court should not grant Plaintiffs' application for a preliminary injunction. (Dkt. No. 15.) On March 1, 2024, the Court denied Plaintiffs' application for preliminary injunction. (Preliminary Injunction Order ("PI Order"), Dkt. No. 28.)

On June 24, 2024, the Parties agreed to a joint stipulation whereby Plaintiffs amended their complaint, dropping their Fourteenth Amendment claim, Second Amendment claim, and all claims against Defendant Gavin Newsom, all without prejudice. (Dkt. No. 38.) On June 28, 2024, Plaintiffs filed their First Amendment Complaint alleging violations of the First Amendment, Fourth Amendment, and Fifth Amendment. (FAC at 1.)

## II. LEGAL STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a Rule 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept "all well-pleaded" factual allegations as true, and construe such allegations "in the light most favorable to the non-moving party." Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Moreover, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

whether they plausibly give rise to an entitlement to relief." Id. at 679.  This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  Id.

### III. DISCUSSION

*A.    First Amendment Claim*

The First Amendment prohibits the Government from "abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble . . . ."  U.S. Const., amend. I.  Plaintiffs' FAC broadly alleges that "Section 26806 violates virtually every right protected by the First Amendment."  (FAC ¶ 268.)  While the First Amendment covers an expansive range of issues, Plaintiffs opposition motion narrows it down to two: (1) chilling protected speech and association and (2) violating the right to speak anonymously.  The Court will take each in turn.

1.    First Amendment Standing

As a threshold matter, to bring a claim in federal court a party must show that they have Article III standing.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  Standing requires a party to show that (1) they have suffered some actual or threatened injury, (2) the injury cause be fairly traced to the challenged action, and (3) is likely to be redressed upon a favorable outcome.  The Presbyterian Church (U.S.A.) v. United States, 870 F.2d 518, 521 (9th Cir. 1989).  "First Amendment challenges . . . present unique standing considerations such that the inquiry tilts dramatically toward a finding of standing."  Libertarian Party of Los Angeles Cnty. v. Bowen, 709 F.3d 867, 870 (9th Cir. 2013) (internal quotations omitted).  This is because "as the Supreme Court has recognized, a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury."  Id. (citing Human Life of Wash. Inc. v. Brumsickle, 624 F.3d 990, 1000 (9th Cir. 2010).

In this case, Plaintiffs have alleged that "[s]uch intrusive surveillance into the realm of political discourse [in gun shops] invariably will have a chilling effect on the associational rights of those who wish to gather and discuss the Second Amendment or criticize politicians who oppose it."  (FAC ¶ 70.)  Some Plaintiffs allege that they

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

distribute literature, including newspapers, fliers, membership applications, and more to hundreds of gun shops, which attract patrons to discuss firearm-related issues. (Id. ¶ 74.) This literature is not only a way for some Plaintiffs to create a dialogue, but also serves as a method for gaining clientele. (Id.) Plaintiffs, as individuals, FFLs, and distributors, allege that surveillance under § 26806 will have a chilling effect on speech and, for some Plaintiffs, effect membership rates and donations, constituting a direct financial harm. (Id. ¶ 77.) In another example, Plaintiffs cite an article detailing the story of a gun owner who closed his San Francisco shop after new city measures "would require the store to videotape gun purchases and report ammunition sales to the police . . . regulations[] which have already upset customers." (Id. ¶ 71.)

The Court agrees with Plaintiffs that the threat of chilling speech and loss of membership is a specific and "well-founded" threat of future harm to satisfy standing. See The Presbyterian Church (U.S.A.), 870 F.2d at 522 (finding standing where threats of surveillance did not just threaten to chill worship service, but threatened to chill "*individual congregants* from attending worship services," effecting the churches ability to carry out ministry services).[1] If Plaintiffs are able to show an injury, then such injury can be traced to the government's surveillance and a favorable outcome would redress the chilling effect. Therefore, the Plaintiffs have standing.

2.    Chilling of Protected Speech and Association

The Supreme Court has long established an "overriding duty to insulate all individuals from the 'chilling effect' upon the exercise of First Amendment freedoms generated by vagueness, overbreadth and unbridled discretion to limit their exercise." Walker et al. v. City of Birmingham, 388 U.S. 307, 345 (1967). A First Amendment violation exists where "an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Mendocino Env't Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). A party need not allege express punishment to establish the chilling of speech. The Presbyterian Church (U.S.A.) v.

---

[1] While Defendants correctly note that The Presbyterian Church (U.S.A.) primarily concerned free exercise under the First Amendment, its holding on standing centrally relied on First Amendment speech case law, distinguishing Laird v. Tatum, 408 U.S. 1 (1972) (finding against standing in a surveillance case where the complaint failed to set forth a "claim of specific present objective harm or a threat of specific future harm").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

United States, 870 F.2d 518 (9th Cir. 1989).  Rather, the Supreme Court and Ninth Circuit have recognized "a wide variety of conduct that impermissibly interferes with speech."  See Ariz. Students' Ass'n v. Ariz. Bd. of Regents, 824 F.3d 858, 868 (9th Cir. 2016) (referencing threats of pecuniary harm, withholding a license, right, or benefit, detaining or intercepting mail, or conducting covert surveillance).  The test for chilling speech is an objective one.  Id.

### a.    Chilling Effect on Speech

Plaintiffs argue that § 26806 violates their First Amendment right to free speech and assembly because "[s]uch intrusive surveillance into the realm of political discourse [occurring in gun shops] invariably will have a chilling effect on the associational rights of those who wish to gather and discuss the Second Amendment or criticize the politician who oppose it."  (FAC ¶ 70.)  In knowing that they are under constant surveillance, customers and owners will be less likely to speak their minds and seek out information about pro-gun groups.  (Id. ¶ 76.)  Eventually, Plaintiffs allege, this will result in a loss of business.  (Id. ¶ 74.)

To support these conclusory assertions, some of the Plaintiffs allege that they distribute literature, including fliers, newsletters, and membership applications to hundreds of gun shops, which tend to attract patrons to discuss fire-arm related issues.  (Id. ¶¶ 74–75.)  Specifically, patrons "frequently visit their stores not only to purchase firearms, but also to discuss firearms-related issues."  (Id. ¶ 74.)  These discussions about Second Amendment issues can turn into new members and clientele for pro-gun groups.  (Id.)  Oftentimes, these conversations veer into the politics of gun control in the state.  (Id.)  Plaintiffs provide a story of the last gun-shop in San Francisco which closed, in part, because "new measures the city is currently considering would require the store to videotape gun purchases and report ammunition sales to the police . . . regulations[] which have already upset customers."  (Id. ¶ 71.)

Assuming the truth of these allegations, as this Court is required to do, Plaintiffs have failed to demonstrate an *objective* fear that § 26806 will impermissibly interfere with or chill speech.  First, Plaintiffs' assertion that the government will intentionally target their protected communications to retaliate against disfavored speech is speculative.  (See id. (suggesting that gun-owners outward animus towards certain politicians may result in retaliation from those politicians).)  Plaintiffs have provided no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

allegations to support an objective belief that such targeting has or will occur. Rather Plaintiffs allege subjective beliefs about California's "war on the Second Amendment," and conclusory statements that targeting "is probable (if not certain)" given California's climate towards guns. (See id. ¶¶ 68–70.) Thus, unlike the actual interception of mail in Blout v. Rizzi, 400 U.S. 410, 417–18 (1971), or the direct threat to members of the churches congregation that they would be recorded by watchful eyes and perhaps kept on government file, as in The Presbyterian Church (U.S.A.), 870 F.2d at 522–23, there is no such objective allegation in the instant FAC.

Second, Plaintiffs' allegations that people may no longer discuss Second Amendment issues is unavailing in light of § 26806(b), which strictly prohibits "us[ing], shar[ing], or access[ing]" recordings or audio unless pursuant to a warrant, administrative search, or civil discovery process. A person of ordinary firmness, in light of § 26806(b)'s limitations on usage, would not think that "the Governor and the Attorney General or other powerful California politicians" (see id. ¶ 70) have the ability to surveil or are listening to lawful conversations. Indeed, § 26806 neither punishes nor restricts speech.

Plaintiffs rebut that the fear is objectively reasonable because "26806(b) plainly allows unfettered access by government 'agent[s]' at any time to ensure 'compliance,'" without restriction on what can be copied or seized. (See Opp'n at 5.) The Court disagrees. The access is not unfettered because § 26806(b)(1) specifically limits inspection "for the purpose of inspecting the system *for compliance with this section, and only if a warrant or court order would not generally be required for that access*." (See Cal. Penal Code § 26806(a) (emphasis added). Plaintiffs' allegation that the government can broadly seize and copy recordings without restriction is not well-pleaded in light of clear language to the contrary. Thus, Plaintiffs allegations of a chilling affect are objectively unfounded and fail to demonstrate a plausible claim.

Third, Plaintiffs' contention that some speech will "certainly" be chilled, such as straw purchases, is misplaced. Indeed, as the case law reiterates, the inquiry into chilling speech asks whether the government's action would chill a person of ordinary firmness from "continuing to engage in the *protected* activity . . . ." See Ariz. Students' Ass'n v. Ariz. Bd. of Regents, 824 F.3d at 867 (emphasis added). Here, whether or not § 26806 chills unprotected, unlawful speech, such as a straw purchase, is not relevant to the inquiry of whether protected activity is being chilled. See Tingley v. Ferguson, 57 F.4th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

1072, 1081 (9th Cir. 2023) ("It has long been understood that speech which aids and abets criminal conduct is not protected speech.")

Finally, Plaintiffs allege that at-home FFLs would be subject to 24/7 speech surveillance inside their protected homes. (See, e.g., FAC ¶ 10.) Not so. While § 26806 requires 24-hour surveillance, it only requires recording and audio in "all entries or exits," and "[a]ll areas where firearms are displayed," and "[a]ll points of sale." Cal. Penal Code § 26806(a). In other words, it requires that "business premises are monitored by a digital video surveillance system." Id. If an individual seeks to sell firearms out of their home, they are choosing to do so with the knowledge that their home will be subject to various restrictions and limitations on such dealings, including record keeping requirements and inspections. Surveillance is merely another regulation that an at-home FFL should reasonably expect. Thus, to the extent that an individual chooses to sell firearms in a location where they may engage in other protected activities, such is the sacrifice they choose to make dealing in the industry.

This Court does not take lightly its overriding duty to protect individuals from the chilling effect of free speech. However, Plaintiffs must allege that such chilling effect be objectively reasonable in order to state a plausible and survive a motion to dismiss. In this case, given the plain limitations of § 26806, the allegations in the FAC that *reasonable* patrons may fear retribution is merely speculative. Accordingly, the Court finds that Plaintiffs have not plead a plausible claim for relief under the chilling of speech under the First Amendment.

### b.    Chilling Effect on Assembly

"It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action . . . ." NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 462 (1958). The "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." Id. at 460. Disclosure requirements may be said to chill association, even if there is no disclosure to the general public. See Ams. for Prosperity Found., 594 U.S. 595, 616 (2021); see also Shelton v. Tucker, 364 U.S. 479, 486 (1960) (finding unconstitutional a requirement that teachers disclose associations to their schools); Bates v. City of Little Rock, 361 U.S. 516 (1960) (prohibiting the forced disclosure of membership lists to city

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

officials pursuant to an occupational license tax ordinance).  Thus, "state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny."  Alabama ex rel. Patterson, 357 U.S. at 460–61.

Plaintiffs allege that § 26806 compels disclosure of affiliation with groups engaged in protected advocacy.  (FAC ¶ 78.)  Specifically, Plaintiffs state that "section 26806 quite literally will result in California's creation of a partial list of members of GOA, GOC, CRPA and SAF as everyone who signs up as a member of either organization will be monitored and surveilled by the state . . . ."  (Id.)  Further, Plaintiffs allege that § 26806 would require the "images, likenesses, and utterances of all who may seek to purchase a firearm or even just explore the options of firearms within the state." (Id. ¶ 80.)

Plaintiffs' allegations fail to state a claim for which relief can be granted under the freedom of association.  Section 26806 has no requirement that individuals, gun shops, or organizations such as GOA, GOC, CRPA, and SAF, submit a membership list to the government.  The mere fact that an individual is videotaped entering a gun store does not amount to a forced disclosure of membership lists.  This is because an individual who enters a gun shop to potentially purchase a firearm is not a member of any organization or association engaged in advocacy—they are simply a potential customer.  (See Mot. (recognizing that some people may "just explore the options of firearms within the state").)  To be sure, even if a particular customers *is* a member of GOA or similar groups engaged in advocacy, there is no requirement that GOA submit their name to the government or that a gun shop identify to the government who is, and who isn't, a member of such a group.  Finally, notwithstanding that every individual who enters the premise is videotaped and audio recorded, the government cannot access the video or audio absent limited exceptions that do not correspond with an individuals association to a group engaged in protected advocacy.

The closest analogous case cited by Plaintiffs is Bates.  In Bates, municipalities were authorized to levy a license tax on any individual engaging in a "trade, business, profession, vocation or calling."  Bates, 361 U.S. at 517.  Two cities amended their occupational license tax ordinance to require any organization in the city to provide the names of officers and employees, subject to inspection.  Id. at 518.  The NAACP protested under fear of harassment and convictions resulted.  Id. at 521.  Plaintiffs' reliance on Bates is misplaced.  Here, Plaintiffs do not allege that § 26806 requires

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |

| | |
|---|---|
| Title | Adam Richards et al. v. Gavin Newsom et al. |

disclosure of the identities of individuals who belong to an organization or association. The FAC likewise fails to allege how the government would accomplish such a goal using § 26806 in light of the very limited circumstances that the government could access recordings. Instead, the FAC is replete with threadbare allegations that California will create Orwellian membership lists based on surveillance image of every individual entering every gun shop in California. Accordingly, Plaintiffs' allegations fail to create a plausible claim for relief under the right to association.

    2.    Right to Anonymous Speech

The Supreme Court has recognized the importance of the right to speak anonymously. See McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 341 (1995). "The decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible." Id. at 341–42. While most cases of anonymity concern the publication or dissemination of pamphlets, leaflets, art, and brochures, "[t]he freedom to publish anonymously extends beyond the literary realm." Id. at 342 (explaining that the rationale for anonymity extends beyond the *type* of advocacy and focuses on the *tradition* of anonymity). In the political sphere, "the most effective advocates have sometimes opted for anonymity." Id. at 343.

Plaintiffs argue that § 26806 "eviscerates" the right to speak anonymously by "unmask[ing] Plaintiffs and all manner of gun store patrons to the state, not the public generally." (See Opp'n at 6.) Specifically, Plaintiffs allege that customers at gun stores are motivated to speak critically of public officials. (FAC ¶ 91.) When patrons know that their identity is known and monitored, they are less likely to engage in protected political speech. (Id.) The FAC alleges that 24/7 facial and audio recordings are a method for the government to observe political dissidents, whom officials can later retaliate against. (Id.)

Defendants rebut that there is nothing anonymous about appearing in public to engage in a business interaction. (Mot. at 7.) Defendants posit that a gun shop is a highly regulated industry where there is little expectation to privacy. (Id.) In fact, as Defendants point out, identity verification is a requirement for firearm purchases. (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

The Court finds that Plaintiffs have failed to allege a plausible claim on the basis of the right to speak anonymously. First, while Plaintiffs may view a gun shop akin to a 19th- and early 20th-century General Store where Americans discussed political issues, it does not make it so. Indeed, a cannabis store may find its fair share of persons with like-minded political opinions, yet storefronts and in-home shops are subject to a similar 24-hour digital surveillance requirement. See Cal. Code Regs. tit. 4, § 15000.3(c), 15044. Such too is the case with banking, 12 C.F.R. § 326.3, and gambling, Cal. Code Regs. tit. 4, §§ 12372, 12396. This is because such regulations are created to surveil transactions and deter crimes, not to monitor or criminalize speakers engaged in lawful activities. If people incidentally choose to engage in protected speech inside such a shop, just as they would in public, with the knowledge that they are being recorded, such is their choice to make. To be sure, the identity of a speaker who chooses to engage in speech at a gun shop may even remain entirely anonymous given the very limited exceptions under § 26806(b) in which their identity can be released and the destruction of a record after one year.

Second, firearm transactions have a long history of being conditioned upon the disclosure of the identifies of dealers and purchasers. Indeed, federal law requires persons who engages in a business involving the sale of firearms to apply for and obtain an FFL. See 18 U.S.C. § 922(a). California DOJ checks state and federal records to determine whether an prospective purchaser is disqualified, which inherently looks at their identity and the identity of the seller. (Opp'n at 12–13.) Moreover, the sale of any firearm by a licensed dealer requires both the FFL and the individual to jointly complete an ATF Form 4473, which includes a background check on the purchaser. See 18 U.S.C. § 922(t); 27 C.F.R. § 478.124. Section 26806 is simply another facet of the comprehensive regulatory scheme, which aims to record the video and audio of transactions that are already subject to disclosure to the government.

Third, Plaintiffs' argument for anonymity and references to McIntyre and 2TheMart.com fail to capture the tradition behind the policy for anonymity. In McIntyre, the Supreme Court explained that an important interest in having anonymity is to encourage the marketplace of ideas, which "unquestionably outweighs any public interest in requiring disclosure as a condition of entry." 514 U.S. at 342. Yet, Plaintiffs provide no explanation for how the marketplace of ideas is meaningfully hindered by the inclusion of video and audio recording that cannot be released absent limited exceptions. Further, in Doe v. 2TheMart.com Inc., the court found that "[t]he ability to speak one's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |

| | |
|---|---|
| Title | Adam Richards et al. v. Gavin Newsom et al. |

mind on the internet without the burden of the other party knowing all the facts about one's identity can foster open communication and robust debate." 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001) (internal quotations omitted) (citing Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578 (N.D. Cal. 1999). Such a policy concern is absent in the instant case. The parties alleged to being frequently conversing inside Plaintiffs' gun stores are all face-to-face and any individual, not just like-minded ones, can enter the gun store to listen and join. If individuals seek anonymity to create robust debate, they would know to avoid visiting a public business in person that is highly regulated by the government.

Given that people choose to engage in public-facing discussions and know that they have little expectation of privacy in a gun shop, Plaintiffs' FAC fails to allege a plausible violation of the First Amendment's right to anonymity in speech.

> 3.   Content-Based and Viewpoint Based Discrimination

Plaintiffs also briefly allege in the FAC that § 26806 "constitutes nefarious viewpoint discrimination." (FAC ¶ 117.) Specifically, Plaintiffs plead that "it punishes only those individuals exercising the right—those with a favorable view of the Second Amendment—with 24/7 surveillance, and not those who disagree with, criticize, or decline to exercise the right themselves." (Id.)

The Court is not required to accept conclusory allegations as true and therefore, it will not take for truth value the allegation that § 26806 is "nefarious viewpoint discrimination" or that it only punishes individuals with a favorable view of the Second Amendment. See Matal v. Tam, 582 U.S. 218, 248 (2017) (Kennedy, J., concurring) ("The test for viewpoint discrimination is whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed.").

Even so, nothing within the FAC demonstrates that the government targeted specific individuals because of their speech or singled out messages for disfavor while enacting § 26806. Section 26806 is strikingly silent as to speech and mandates the recording of all persons who enter a gun shop, whether they are a pacifist, solider, gun-supporter, gun-protestor, or otherwise. Indeed, an individual protesting the purchase of guns inside a gun store would fall under § 26806(a)(3). Likewise, the same California

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:23-cv-02413-JVS-KES                    Date   October 16, 2024

Title   Adam Richards et al. v. Gavin Newsom et al.

politicians whom Plaintiffs claim target them, may themselves, be subject to the recording and identification requirements of § 26806 should and when they find themselves in a gun shop.  The law neither punishes those with a "favorable viewpoint" on the Second Amendment, nor rewards those without.  Therefore, plaintiffs conclusory allegation has no support to establish that it is viewpoint discrimination within the meaning of the First Amendment.

### 4.   Overbreadth

Finally, Plaintiffs briefly allege an overbreadth challenge.  (FAC ¶ 271.)  In its entirety, the FAC claims:

> Section 26806 is unconstitutionally overbroad because, in an effort to "catch a criminal," the law seriously and deliberately burdens a vast amount of speech that does not constitute such a communication and is fully protected by the First Amendment.

(Id.)  This allegation is a legal conclusion couched as a factual allegation and thus, the Court need not accept it for its truth value.  Even so, Section 26806 is entirely devoid of any regulation of speech.  Rather, Section 26806 requires that every licensed firearm dealer have a digital audio/visual surveillance system on their business premises.  As discussed above, such regulation does not burden speech nor constitute viewpoint discrimination.  Therefore, the FAC fails to state a claim for overbreadth under the First Amendment.

Accordingly, the Court **GRANTS** the motion to dismiss on the First Amendment claim with leave to amend within twenty-one (21) days.

### B.   Fourth Amendment Claim

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  City of Los Angeles v. Patel, 576 U.S. 409, 419 (2015).  The Supreme Court has established that a search without a warrant is *per se* unreasonable, subject to "a few specifically established and well-delineated exceptions."  Id. (listing certain exceptions such as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

exigent circumstances, consent, and administrative searches).  "This rule 'applies to commercial premises as well as to homes." Id. at 419–20.

> 1.     Are Both Home FFLs and Brick & Mortar FFLs Subject to the "Closely Regulated Industry" Standard

The Supreme Court has identified four industries that "have such a history of government oversight that no reasonable expectation of privacy . . . could exist for a proprietor over the stock of such an enterprise." City of Los Angeles v. Patel, 576 U.S. 409, 424 (2015).  Firearms dealings are one of those industries.  Id. (citing United States v. Biswell, 406 U.S. 311, 311–12 (1972)).  This Court has likewise recognized in this case the extent of California's comprehensive regulatory framework for firearm dealers. (See PI Order at 19.)

Plaintiffs briefly appear to contest this finding by arguing that § 26806 does not "remotely resemble[]" similar regulations and thus cannot be considered part of the closely regulated scheme.  (See Opp'n at 8.)  The Court disagrees.  Whether a given statute within a closely regulated industry exceeds its reasonableness is not relevant in determining whether an industry is closely regulated.  See Patel, 576 U.S. at 432 (Scalia, J., dissenting) (explaining the factors often used to determine whether an industry is closely regulated).  Accordingly, both home-FFLs and brick and mortar FFLs are subject to the closely regulated industry standard under the Fourth Amendment.

> 2.     Does Section 26806 Constitute an Unreasonable Search on Commercial Businesses

The Fourth Amendment applies to commercial premises just as it applies to private homes.  United States v. Argent Chem. Labs., Inc., 93 F.3d 572, 575 (1996).  It is well-established under the Colonnade-Biswell exception that "warrantless searches and seizures on commercial property used in 'closely regulated' industries are constitutionally permissible." Id.; see also United States v. Biswell, 406 U.S. 311 (1972).  "Persons engaging in pervasively regulated industries have a diminished expectation of privacy." Argent Chem. Labs., 93 F.3d at 575.  Moreover, in these areas, the government has broad authority to determine standards of reasonableness for searches and seizures.  Colonnade Catering Corp. v. United States, 397 U.S. 72, 77 (1970); see also Biswell, 406 U.S. at 316 (holding that there was no constitutional

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-02413-JVS-KES              Date    October 16, 2024

Title    Adam Richards et al. v. Gavin Newsom et al.

violation where a firearm business was subjected to inspections upon probable cause and without a warrant).

In this case, Plaintiffs, whether in their homes or in a brick and mortar shop, have chosen to engage in this highly regulated business either by selling firearms, purchasing firearms, or distributing to firearm sellers.  Plaintiffs engaged in this business knowing that business records, firearms, and even identities used for background checks, would be subject to inspection.  See Biswell, 406 U.S. at 316 ("When a dealer chooses to engage in this pervasively regulated business . . . he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection."). Thus, there is a diminished expectation of privacy. See Patel, 576 U.S. at 431 (Scalia, J., dissenting) ("'[W]hen an entrepreneur embarks upon [a closely regulated] business, he has voluntarily chosen to subject himself to a full arsenal of government regulation,' and so a warrantless search to enforce those regulations is not unreasonable.")

Nevertheless, Plaintiffs are correct that while there is a diminished expectation of privacy, it is not without limitation.  Indeed, a warrantless search of a closely regulated business may became unreasonable if arbitrarily conducted.  See id. (citing New York v. Burger, 482 U.S. 691, 702–03 (1987)).  In Burger, the Court established a three element test for determining whether searches of closely regulated industries are reasonable: (1) there must be a "substantial government interest that informs the regulatory scheme pursuant to which the inspection is made," (2) "the warrantless inspections must be necessary to further [the] regulatory scheme," and (3) "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant."  Argent Chem. Labs., 93 F.3d at 575.

### a.    Substantial Government Interest

Plaintiffs dispute that there is a substantial government interest.  (See Opp'n at 10.)  However, Plaintiffs provide no argument for why they disagree, besides noting that this question should not be resolve at the motion to dismiss stage.  (See id.)  While Plaintiffs' FAC is replete with allegations that § 26806 will not prevent crime and thefts or protect people, it misses the mark on what this element examines.  This first element asks whether the government has a substantial interest in regulating the industry and not whether there is such interest in enacting the statute.  See Donovan v. Dewey, 452 U.S. 594, 602 (1981) (finding a substantial interest in improving the health and safety

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |

| | |
|---|---|
| Title | Adam Richards et al. v. Gavin Newsom et al. |

conditions in surface mines); <u>Biswell</u>, 406 U.S. at 315 (finding a substantial interest in firearm regulations meant to prevent violent crime and firearm trafficking within borders). Therefore, Plaintiffs have not alleged a lack of government interest to defeat this element.

### b.    Necessary to Further Regulatory Scheme

Plaintiffs argue that the necessary element is not satisfied because surveillance is duplicative of the several other ways that the government monitors firearms. (Opp'n at 11.) Given that the government already requires paper records, electronic records, photo ID, and all bookkeeping records, surveillance is unnecessary. (<u>Id.</u>) Moreover, Plaintiffs allege in the FAC that § 26806 will not prevent crime because many stores already have security cameras, which have failed to deter crime. (FAC ¶ 53.) Moreover, Plaintiffs note that "the rate of gun store thefts seems to have tapered slightly in recent years," while theft across the board has increased in California. (FAC ¶ 54.)

Plaintiffs again misunderstand the nature of this element. The inquiry is not whether the statute permitting inspection will be necessary to deter firearm theft, crime, or even enhance firearm safety. Rather, the question is whether the warrantless administrative inspections *into FFLs compliance with the statute* is necessary to advance the scheme. As the Supreme Court explained in <u>Burger</u>, compliance inspections into closely regulated businesses, even unannounced and frequent, may be essential because without inspection, the businesses might not comply with the regulations and thereby thwart the entire "regulatory scheme aimed at remedying this major social problem." Thus, the administrative inspections in § 26806(b)(1) are not intended to deter gun thefts, but rather, to deter dealers from failing to comply with a statute otherwise meant to deter gun thefts and regulate firearms.

Here, as Defendants point out, government officials may only access recordings without a warrant if they are "conducting an inspection of the licensee's premises, for the purpose of inspecting the system for compliance with [§ 26806]." (<u>See</u> Reply at 9 (citing Cal. Penal Code § 26806(b)(1)).) Such inspections are necessary because if dealers are not utilizing functioning audio-video surveillance, it defeats the entire purpose of the statute. Therefore, Plaintiffs have failed to overcome this element.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

### c.    Inspection Program Must Provide Constitutionally Adequate Substitute for a Warrant

With respect to this third element, Plaintiffs only contend that § 26806 "fails to comport with the Constitution." (Opp'n at 11.) Defendants rebut that inspectors are "restrained in both the time and purpose of each inspection." (See Reply at 10 (citing Killgore v. City of South El Monte, 3 F.4th 1186, 1193 (9th Cir. 2021)).) Indeed, Plaintiffs could not allege that the inspection does not place "appropriate restraints upon the discretion of inspecting officers," Burger, 482 U.S. at 711, in light of § 26806(b), which plainly limits inspections to only review recording equipment for compliance with § 26806. Moreover, inspections governed by 26806 occur at certain and regular intervals. See Cal. Penal Code § 26720, 26900, Cal. Code Regs. tit. 11, § 4022. Accordingly, Plaintiffs cannot overcome the third element.

### d.    Conclusion

Therefore, Plaintiffs have failed to allege a plausible claim that the warrantless searches violate the Fourth Amendment as an unreasonable search.

### 3.    Are In-Home Sellers Entitled to Heightened Protection Under the Fourth Amendment

Plaintiffs contend that even if the statute permissibly authorizes warrantless administrative searches, that these searches are "susceptible to overbreadth challenges if they sweep to far." (Opp'n at 9. (citing Rush v. Obledo, 756 F.2d 713, 719 (9th Cir. 1985)).) One such way that a search can be overbroad is when it reaches into the home—a traditionally protected domain. See Rush, 756 F.2d at 719.

In Rush, the California Legislature enacted a regulatory scheme governing child day care facilities to ensure the health and safety of children. Id. at 716. Day care facilities include institutional centers as well as many "family day care homes." Id. The Court held that warrantless inspections of family day care homes did "not offend the Fourth Amendment" because family day care homes are heavily regulated. Id. at 720. However, the Court continued, where the legislature "has authorized inspection but made no rules governing the procedures that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." Id. Thus, the Court held that because the statute

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-02413-JVS-KES                    Date    October 16, 2024

Title    Adam Richards et al. v. Gavin Newsom et al.

permitted searches at any time of day or night, and in areas that were only used for private purposes, it was invalid.  Id. at 721.

The Court has already found that Plaintiffs failed to allege that the firearm industry is not a closely regulated industry and have not plead a plausible claim that § 26806 is overly broad.  The mere fact that some Plaintiffs may be at-home FFLs does not change that finding.  Indeed, while the court in Rush noted the peculiar nature of at-home facilities, the crux of its holding in this area was that warrantless searches cannot extend beyond *the time* when the at-home business is operating as a business and *the places* where business is conducted.  Id. at 721.  Thus, a warrantless search of a care providers home after business hours or in rooms where children were not allowed, could not be justified under the Fourth Amendment.

However, unlike in Rush, Section 26806 does not risk crossing into the private domain of at-home FFLs.  Stated most concisely in the California Code of Regulations, "[t]he DOJ may conduct on-site inspections at a dealer's *business premises* to determine compliance with firearms laws pursuant to Penal Code § 16575."  Cal. Code. Regs. tit. 11, § 4022(a) (emphasis added).  Section 16575(20) incorporates § 26806 into this protection.  Likewise, § 26900 requires that inspections take place by a peace officer during business hours.  Cal. Penal Code § 26900.

Moreover, § 26806 incorporates these protections itself by stating that any inspection must be "for the purpose of inspecting the system for compliance with this section, and only if a warrant or court order would not generally be required for that access."  Cal. Penal Code § 26806(b)(1).  Compliance with the section would mean installing a camera that can clearly record "activity occurring in all areas described in paragraph (3)," which includes:

(A) Interior views of all entries or exits to the premises.
(B) All areas where firearms are displayed.
(C) All Points of sale, sufficient to identify the parties involved in the transaction.

Id.  As § 26806(a) illustrates, inspections could not cross into a purely private area, such as where gun buyers are not allowed, because the only area where a recording is required for compliance is an area where customers would be present.  See id. ("[A] licensee shall ensure that its business premises are monitored . . . .").  If the government sought to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |
|----------|------------------------|------|------------------|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|-------|---------------------------------------------|

invade the private spaces of an at-home FFL, it would require a warrant and thus, be impermissible under § 26806. Therefore, Plaintiffs' attempt to distinguish at-home from brick and mortar shops is unavailing.

Defendants additionally point out that § 26806 is distinct from the nature of the activity in <u>Rush</u>, such that it justifies 24/7 recording inside the business. As the court explained in <u>Rush</u>, children eventually leave the at-home day care, transforming it back into private residence. By contrast, a gun shop does not change to a private residence when the business day has concluded. Indeed, theft and other crimes occur even after regular business hours and to fulfill the purpose of the regulatory scheme, there must be deterrence and identification of stolen weapons day and night.

> 4.  <u>Is an FFL a Government-Mandated Actor in Violation of the Fourth Amendment</u>

Plaintiffs claim that § 26806 turns FFLs into government-mandated actors. (Opp'n at 12–13.) In such case, Plaintiffs aver, all FFLs become 24/7 surveillance operatives for the government. (<u>Id.</u> at 13.) Thus, Plaintiffs allege that there are no safeguards to protect "an FFL and his customers . . . [from] the panopticon mandated by Section 26806." (<u>Id.</u>)

The Court need not analyze whether § 26806 turns FFLs into government actors, nor does the answer appear as clear-cut as Plaintiffs may suggest. (<u>See</u> Opp'n at 12.) Even if the Court assumes, *arguendo,* that FFLs are government actors under § 26806, the statute's requirements would still fit neatly within the confines of the Fourth Amendment. Thus, Plaintiffs have no plausible claim.

Section 26806 specifically states that "the information collected by the FFL shall not be used, shared, or accessed except as specified as follows . . . ." Cal. Penal Code § 26806(b) (citing the limited exceptions for usage). In this respect, FFLs and government agents are held to the same standard for usage.[2] Because the Court has already addressed

---

[2] Indeed, it is worth noting that Plaintiffs' FAC identifies in several places how limited section 26806 reaches with regard to at-home FFLs. (<u>See, e.g.</u>, FAC ¶ 158 (describing how a gun store owner could not even examine video and audio recordings after a burglary to attempt to identify the perpetrators).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-02413-JVS-KES                    Date    October 16, 2024

Title    Adam Richards et al. v. Gavin Newsom et al.

and determined that Plaintiffs could not state a plausible claim for relief where government agents were alleged to have access, the same holds true for FFLs.

Accordingly, the Court **GRANTS** the motion to dismiss on the Fourth Amendment claim with leave to amend within twenty-one (21) days.

C.    *Fifth Amendment Claim*

The Takings Clause of the Fifth Amendment provides that: "[N]or shall property be taken for public use, without just compensation."  U.S. Const., amend. V.  Plaintiffs allege that § 26806 is both a per se physical taking and an unconstitutional regulatory taking.  (Opp'n at 17.)

1.    Per Se Taking

When the "character of the government action is a permanent physical occupation of property," the Supreme Court has uniformly found a taking "without regard to whether the action achieves an important public benefit or has a minimal economic impact on the owner."  Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 434–35 (1982).  The power to exclude the government from ones property has "traditionally been considered one of the most treasured strands in an owner's bundle of property rights."  Id. at 435.  However, "Loretto simply does not fit" in a closely regulated industry, where the historically rooted expectations of ownership such as possession, use and compensation do not exist. Cal. Hous. Sec., 959 F.2d 955, 959 (Fed. Cir. 1992).  Thus, the crux of the inquiry in such cases becomes whether, in such a closely regulated industry, "the government took actions that reasonably should have been expected by plaintiffs."  Id. at 960.

Plaintiffs have failed to allege a plausible per se takings claim.  As discussed at length, the firearm industry is closely regulated, subjecting both at-home FFLs and brick and mortar businesses to a comprehensive network of record keeping, recording, and safety precautions.  See supra Section III.B.1.  Accordingly, the question becomes whether Plaintiffs have alleged enough to create a plausible claim that they should not have reasonably expected such an imposition on their property rights.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |
|---|---|---|---|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|---|---|

Plaintiffs' FAC is abound with threadbare and conclusory allegations that "at-will surveillance" violates Plaintiffs' property rights to freely use, dispose, exclude, possess, and receive compensation for a government taking. Such allegations fall short of alleging a takings claim in light of the closely regulated industry in which Plaintiffs knowingly operate within. Moreover, Plaintiffs' FAC repeatedly demonstrates that Plaintiffs would, and indeed did, expect such regulations upon entering the industry. The FAC alleges, in detail, the myriad of regulations in place in California. (See FAC ¶¶ 25–39.) It goes on to explain that FFLs are required to pay annual fees to cover the cost of inspections. (Id. ¶ 37.) Further, most FFLs "take these requirements very seriously, as this is their livelihood." (Id. ¶ 39.) The FAC takes great lengths to explain the "assault" on the Second Amendment in California, "unparalleled in scope and duration," (id. ¶ 63), and that California has made such attack "no secret." (Id. ¶ 68.) Indeed, the FAC concedes that the inception and founding of at least one Plaintiff was the result of the "volume and duration of the attacks." (Id. ¶ 66.) Finally, as the FAC alleges, news articles describing "nearly identical" surveillance laws have been circulating since at least 2015, (Id. ¶ 71.), which predates the FFL status of at least one Plaintiff in this case. (Id. ¶¶ 10–20.)[3]

The allegations in the fact, assumed to be true and taken in a light most favorable to the Plaintiffs, demonstrate that they were either actually aware of the possibility of such a law when they entered the closely regulated firearm industry, or reasonably should have been aware that such government action may occur without compensation. Accordingly, the Plaintiffs have not alleged a plausible claim of per se taking contained within the FAC.

Plaintiffs attempt to distinguish Cal. Hous. Sec. on the basis that the plaintiff "subjected itself to an existing 'regulatory system,' and 'did not possess the most valued property right . . . the right to exclude others, at the time of the alleged taking." (Opp'n at 19.) Indeed, Plaintiffs accurately describe the holding of Cal. House. Sec. but fail to see that the same is true of them. Plaintiffs either are, or reasonably should be, aware that their property rights can be diminished in such a heavily regulated industry in light of historically rooted expectations.

---

[3] Plaintiff Richards became an FFL in 2021, two Plaintiffs were founded in 1976 and 1974, and all other Plaintiffs information contained in the FAC is silent with regard to when they were founded or became an FFL.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-02413-JVS-KES                          Date    October 16, 2024

Title    Adam Richards et al. v. Gavin Newsom et al.

Plaintiffs cite Boise Cascade Corp. v. United States , 296 F.3d 1339 (Fed. Cir. 2002) for the proposition that there is a permanent physical taking when the government "sunk concrete wells on . . . property to monitor groundwater pollution . . . ." Id. at 1355.  Plaintiffs' reliance on Boise Cascade is not just misplaced, but incorrect.  The quote Plaintiffs lift from Boise Cascade (a case about "owl easements") was actually from Hendler v. United States, 952 F.2d 1364 (Fed. Cir. 1991) (a case about concrete wells).  In fact, in Boise Cascade, the Federal Circuit distinguished Hendler, stating:

> Putting its dicta to one side, Hendler's holding was unremarkable and quite narrow: it merely held that when the government enters private land, sinks 100-foot deep steel reinforced wells surrounded by gravel and concrete, and thereafter proceeds to regularly enter the land to maintain and monitor the wells over a period of years, a per se taking under Loretto has occurred.

Boise Cascade, 296 F.3d at 1357.  The distinctions between Hendler and the case at hand are numerous in light of the aforementioned limitations and thus, Hendler's "unremarkable and quite narrow" holding does is unavailing to Plaintiffs.

Accordingly, Plaintiffs have failed to plead a per se taking in such a closely regulated industry.

    2.    Regulatory Taking

A regulatory taking occurs when the government restricts an owner's ability to use his own property.  Cedar Point Nursery v. Hassid, 594 U.S. 139, 148 (2021).  In order to state a plausible claim for a regulatory taking, a party must allege that they can satisfy the flexible balancing test developed in Penn Central, which includes: (1) the economic impact of the regulation, (2) its interference with reasonable investment-backed expectations, and (3) the character of the government action.  Id. (citing Penn Central, 438 U.S. 104, 124 (1978)).

    a.    **Economic Impact of the Regulation**

Plaintiffs provide a detailed hypothetical economic impact of § 26806 in the FAC.  Plaintiffs allege that the necessary cameras would cost roughly $4,144.00.  (FAC ¶ 223.)  Additionally, the recording costs, including the network video recorder ("NVR") and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |
|----------|----------------------|------|------------------|

| Title | Adam Richards et al. v. Gavin Newsom et al. |
|-------|---------------------------------------------|

other necessary recording devices to comply with § 26806, would cost roughly $6,197.92 total. (Id. ¶¶ 227–229.) Moreover, accessories, such as cooling fans, lockable racks, and anti-theft devices, would cost $1,039.45. (Id. ¶ 232.) Installation costs could be as much as $3,200. (Id. ¶ 237.) Thus, Plaintiffs estimate that the total cost of § 26806 would be approximately $17,058.32. Plaintiffs claim that big gun retailers, such as Big 5 Sporting Goods, have stopped dealing to avoid such high costs. (Id. ¶ 153.)

Defendants argue that Plaintiffs "hide behind hypothetical calculations" that are conclusory and insufficient on a motion for summary judgment. (Reply at 18.) Defendants aver that the specific Plaintiffs in this case cannot show pre- and post-deprivation values. (Id.) Finally, Plaintiffs argue that diminution in property value as high as 95% has been held as insufficient to demonstrate a taking. (Id.)

The Court finds that this factor tilts strongly in Plaintiffs' favor. Plaintiffs have alleged in a non-conclusory fashion that they would suffer an economic impact under § 26806. Indeed, where the current existing regulatory scheme requires a $115 annual fee to be an FFL, it is difficult to conceive how an alleged $17,058.32 new and additional cost would not serve as a large impact on, particularly, at-home FFLs. Plaintiffs have alleged enough to plausibly allege an economic impact.

### b. Interference with Reasonable Investment-Backed Expectations

Plaintiffs provide little argument in the way of interference with reasonable investment-backed expectations. It is unsurprising then that Defendants, too, have little to say in this area, considering that Plaintiffs are aware that they operate in a highly regulated industry. (See Reply at 18.) Thus, this factor tilts in favor of Defendants because Plaintiffs have not plausibly alleged any interference with a reasonable, investment backed-expectation.

### c. Character of Government Action

Likewise, Plaintiffs do not concisely allege the character of the government action. Rather, the FAC contains voluminous conclusory allegations that the government action is a "government eavesdropping device" (FAC ¶ 154) and a "Bentham[] Panopticon," (Id. ¶ 163) intended only to "target, marginalize, and drive from the market dissenters

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |

| | |
|---|---|
| Title | Adam Richards et al. v. Gavin Newsom et al. |

wishing to exercise the right to keep and bear arms." (Id. ¶ 96.) On the face of the FAC, it is apparent that Plaintiffs allege this device to be a 24/7 way for government officials to listen and observe political dissidents. (See, e.g., id. ¶¶ 13, 51, 72, 96, 154, 248.)

Defendants argue that Plaintiffs participate in a highly regulated industry and that § 26806 is a limited intrusion on commercial businesses, whether or not they operate in the home. (Reply at 18.) Defendants aver that given there is no historical expectation to exclude the government from the inspection or regulation of firearms, this factor cannot lean in favor of Plaintiffs. (Id. at 18–19.)

The Court finds that this factor leans in favor of Defendants. As discussed, Section 26806 has clearly defined limitations that prohibit the "Bentham Panopticon" in which Plaintiffs fear. While there is 24-hour surveillance of dealers, Plaintiffs have failed to state a claim given the closely regulated industry in which they choose to operate within. In light of the historical expectation of high regulation, the nature of the government action leans towards serving a public good rather than "a physical invasion by the government." See CDK Global LLC v. Brnovich, 16 F.4th 1266, 1283 (9th Cir. 2021).

### d.    Totality of Factors

The Supreme Court has clarified that the Penn Central test is a flexibile balancing test. Cedar Point Nursery v. Hassid, 594 U.S. 139, 148 (2021). Here, the first factor, economic impact, leaned strongly in favor of Plaintiffs on the basis of their pleading. The second and third factors tilted in favor of Defendants        given the absence of allegations in the FAC. Accordingly, the Court finds that Plaintiffs have not alleged enough to demonstrate a plausible claim for regulatory taking.

Accordingly, the Court **GRANTS** the motion to dismiss on the Fifth Amendment claim with leave to amend within twenty-one (21) days

### IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion on all claims with leave to amend within twenty-one (21) days.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-02413-JVS-KES | Date | October 16, 2024 |

| | |
|---|---|
| Title | Adam Richards et al. v. Gavin Newsom et al. |

**IT IS SO ORDERED.**